## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **REPAIRIFY, INC.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **6:21-cv-00819** |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **KEYSTONE AUTOMOTIVE** | § | |
| **INDUSTRIES, INC. d/b/a ELITEK** | § | |
| **VEHICLE SERVICES, and DOES 1 through** | § | |
| **20, inclusive,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

### COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Plaintiff, Repairify, Inc., for its complaint against defendants, Keystone Automotive

Industries, Inc. ("Keystone") and the DOES, alleges as follows:

### THE PARTIES

1.      Plaintiff Repairify, Inc. ("Repairify" or "Plaintiff"), is a Delaware corporation, with

its principal place of business at 2600 Technology Drive, Suite 900, Plano, TX 75074.

2.      Upon information and belief, defendant Keystone Automotive Industries, Inc. is

a California corporation doing business in this District under the assumed business name of

Elitek Vehicle Services ("Elitek").

3.      Repairify is presently unaware of the true names or capacities, whether they are

individuals or business entities, of the defendants identified in the Complaint under the fictitious

names Does 1 through 20 (collectively, "Doe Defendants"). Plaintiff will amend its Complaint to

identify the names of the Doe Defendants as they and/or the facts underlying their liability are

discovered.

4.      At all times mentioned herein, Elitek and the Doe Defendants (collectively, "Defendants"), each and all of them, were authorized and empowered by each other to act, and did so act, as agents of each other, and all of the things herein alleged to have been done by them were done in the capacity of such agency. Upon information and belief, all Defendants are responsible for the events described herein and are liable to Repairify for the damages it has incurred.

## JURISDICTION AND VENUE

5.      This is an action for infringement of a United States Patent, arising under the patent laws of the United States, Title 35 of the United States Code. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a).

6.      United States Patent No. 8,688,313 (the '313 patent issued from the United States Patent and Trademark Office on April 1, 2014 based upon an application (Serial No. 12/977,830, filed December 23, 2010. A true and correct copy of the '313 patent is attached hereto as Exhibit 1 and incorporated by reference.

7.      Repairify, Inc. is the owner by assignment of all right, title and interest in and to the '313 patent.

8.      United States Patent No. 9,684,500 (the '500 patent issued from the United States Patent and Trademark Office on June 20, 2017 based upon an application (Serial No. 14/219,187, filed March 19, 2014. A true and correct copy of the '500 patent is attached hereto as Exhibit 2 and incorporated by reference.

9.      Repairify, Inc. is the owner by assignment of all right, title and interest in and to the '500 patent.

10.      United States Patent No. 10,528,334 (the '334 patent issued from the United States Patent and Trademark Office on January 7, 2020 based upon an application (Serial No. 15/619,743,

filed June 12, 2017. A true and correct copy of the '334 patent is attached hereto as Exhibit 3 and incorporated by reference.

11.     Repairify, Inc. is the owner by assignment of all right, title and interest in and to the '334 patent.

12.     On information and belief, defendant Keystone Automotive Industries, Inc. is a California corporation doing business in this District under the assumed business name of Elitek Vehicle Services ("Elitek"). Upon information and belief, Elitek has at least offered for sale the goods and/or services that Repairify alleges infringe the '313 patent, '500 patent, and '334 patent (collectively the "Asserted Patents") within this District and in this Division.

13.    On information and belief, Elitek owns and/or controls multiple vans that are physically present in this District and regularly conduct Elitek's business, as indicated on its website:



14.    Elitek's business includes the provision of mobile diagnostic services in this District, including from locations in Austin, San Antonio, and El Paso. Elitek, on its website, invites customers and potential customers to "find an Elitek service location near [them]":



15.     On information and belief, Elitek offers its products and services for sale in this District on its website (www.elitekauto.com). That website has a "Location Finder" (https://elitekauto.com/location-finder/) that lists Elitek's regular and established places of business including, inter alia, the following locations: Austin, Texas (offering delivery within 30 miles); San Antonio, Texas (offering delivery within 30 miles); and El Paso, Texas (offering delivery within 30 miles). Elitek's website also lists "Dallas/Fort Worth" as a location offering delivery within 34 miles.

16.     Using the "Location Finder," customers and potential customers can find the following locations, illustrations, and information for Elitek Vehicle Services in El Paso, Texas:



17.    Using the "Location Finder," customers and potential customers can find the following locations, illustrations, and information for Elitek in San Antonio, Texas:



18.    Using the "Location Finder," customers and potential customers can find the following locations, illustrations, and information for Elitek Vehicle Services in Austin, Texas:



19.    On information and belief, Elitek is operating multiple vans in this District, providing mobile scanning and calibration services. Each such van is regularly operated in the conduct of its business by an employee of Elitek and/or agent of Elitek over whom Elitek has significant control and authorizes to conduct business using Elitek's branding and trademarks.

20.     On June 22, 2021, LKQ Corporation and Elitek issued a press release (the "Press Release"). A copy of the Press Release can be read on Elitek's website at: https://elitekauto.com/wp-content/uploads/sites/5/2021/06/Elitek-Remote-Press-Release.pdf.

21.     The Press Release explains that "[s]ince 2019, under the Elite Electronics and VeTech Automotive Electronics brands, LKQ's diagnostic services business, now branded Elitek Vehicle Services ("Elitek"), has grown to become the largest independent provider of mobile, on-site vehicle services to automotive collision repairers, mechanical repairers, and national fleets in the U.S."

22.     Below is a true and correct picture of an Elitek owned and/or controlled van in Austin, Texas, with Texas license plates and listing a telephone number with a 214 area code:



23.    The map provided by the Texas Public Utilities Commission on its website (https://www.puc.texas.gov/industry/maps/areacodes/Dallas.aspx), while indicating that the illustration is "not exact," shows that the (214) area code embraces Dallas and a portion of Hill County, within this District and Division:



24.    Elitek's website lists its "HEADQUARTERS" as: 1910 Crown Road, Farmers Branch, TX 75234.

25.    On or about January 21, 2021, Keystone Automotive Industries, Inc. ("Keystone") filed an Assumed Business Name Certificate with the Secretary of State, Corporations Division, in Austin, Texas. In that Assumed Business Name Certificate, Keystone indicated that it was or would be doing business under the Assumed Business Name of "Elitek Vehicle Services." The Assumed Business Name Certificate requires a filer to state "[t]he county or counties where business or professional services are being or are to be conducted or rendered under such assumed name;" in response, Keystone indicated "ALL COUNTIES."

26.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Elitek has committed acts of infringement in this District, and has at least a regular and established place of business in this District.

### BRIEF BACKGROUND OF THE PATENTED TECHNOLOGY

27.     Repairify, including its predecessors in interest, developed technology relating to remote automotive diagnosis and repair.

28.     Most modern automobiles have computerized modules controlling and/or processing and passing data along for a variety of systems and sub-systems in the vehicle. These modules can be accessed via an on-board diagnostic port ("OBD" or "OBD II"). Although the configuration of the OBD port is standardized, the system that various manufacturers, and even certain years, makes, and/or models, utilize to communicate is not. There are currently a variety of communication protocols utilized.

29.     To diagnose and/or repair automobiles, a technician can connect a vehicle scan tool to the automobile, via a cable to the OBD port. That technician can then utilize the scan tool to read various codes from the modules on the vehicle to perform a diagnosis, via bi-directional communication. If necessary, the technician can also utilize the scan tool connected to the vehicle to re-program and/or re-flash certain modules on the vehicle, using bi-directional communication, as a part of the repair process as a part of the repair process.

30.     Because of the varying communication protocols, it was often necessary for a technician to purchase several different scan tools, each compatible with a particular OBD signal protocol, and in some cases, additional security protocols as well. For example, a technician might need one scan tool for cars manufactured by the Ford Motor Company, and another scan tool for cars manufactured by General Motors. Thus, if a technician wished to service a wide variety of

vehicle makes and models, he would often have to make a substantial investment in scan tools. Moreover, because many scan tools are handheld devices that connect directly to a vehicle's data link connector ("DLC"), the technician had to carry out service directly next to, or inside of, the vehicle itself.

31.     Additionally, there were typically two principal types of scan tools known in the art at the time of the invention. A typical "aftermarket" scan tool had limited capability, only being capable of interfacing with certain modules and sub-systems, such as the engine control module and transmission control module, for purposes of maintaining proper fuel efficiency and emissions, and often lacked coverage of the newest vehicles.

32.     A manufacturer-specific scan tool, on the other hand, is a scan tool designed to interface with all of the modules and sub-systems found within a vehicle and provides the ability to read, analyze, manipulate, program and reprogram such modules and sub-systems. Of course, the manufacturer-specific scan tools are much more expensive to own and maintain. For one, the scan tool hardware and software themselves were more expensive, but also, the manufacturer-specific scan tools required daily, weekly, or monthly software updates in order to take advantage of the latest programming software. Accordingly, if a technician wished to offer a full range of services for a particular vehicle manufacturer, he would have to purchase the expensive manufacturer-specific scan tool and a subscription so that he can obtain the latest software updates.

## REPAIRIFY'S DEVELOPMENT OF THE PATENTED TECHNOLOGY

33.     Repairify, including its predecessors, saw a need in the art for a system and method that allowed a technician to service and program a vehicle, through its ODB interface, from a remote location. And the benefits of a system and method for programming a vehicle that does not

require a shop or garage to purchase numerous expensive scan tools for each specific vehicle make and/or model.

34.     Repairify, including its predecessors, therefore developed such a system, including a remote call center that has the capabilities to diagnose and program a wide variety of vehicles implementing a wide variety of OBD communication protocols using the most recent scan tool software for a wide variety of vehicle manufactures and model years.

35.     Repairify therefore developed and commercially deployed just such a system.

36.     Repairify also filed patent applications, seeking to protect its innovations, including U.S. Patent Application Serial No. 12/977,830, filed December 23, 2010. That application issued as the '313 patent which, like all of the Asserted Patents, claims priority to that initial patent application.

37.     All of the Asserted Patents were properly and duly issued by the United States Patent and Trademark Office. All of the asserted patents have been duly maintained and remain in full force and effect.

38.     Repairify has expended substantial resources researching and developing its patented technologies, technical strategies, and business plans related to its remote automobile scanning and programming business, through the expenditure of considerable employee work hours and company resources. This research and development has led to numerous innovative products in the remote automobile scanning and programming market. The United States Patent and Trademark Office has recognized Repairify's achievements by awarding several patents to Repairify and its inventors as a result of these innovations. Repairify has also been granted additional patents on its technology, including foreign counterparts to the Asserted Patents, which have been properly and duly issued in Canada, Mexico, Brazil, Japan, and Australia.

## SOME OF DEFENDANT'S ACTIVITIES GIVING RISE TO THIS ACTION

39.    The title of the Press Release reads, in part: "Elitek® Vehicle Services Business Announces Further Expansion into Remote Automotive Diagnostics and Programming" (emphasis in original).

40.    The Press Release states: "Effective today, Elitek is expanding its services beyond on-site mobile diagnostics and repair to also include remote automotive diagnostics and remote programming" (emphasis in original). It continues, in part "Shop technicians can plug-in an OBDII device that remotely connects the vehicle to Elitek's call center. The technician, with support from a centralized Elitek diagnostician, conducts the diagnostic scan(s), produces a scan report, enables remote programming where applicable, and invoices for the service."

41.    On information and belief, LKQ North America sales and marketing Vice President Terry Fortner has stated that "the device can connect to either a remote OEM or aftermarket scan tool," and written "we use OEM tooling as the recommended and primary tool."

42.    On information and belief, Fortner has stated that the addition of mobile services is intended to reach "customers, including those outside of our current mobile servicing locations. . . . [w]ith the addition of remote services, we can be more responsive to a broader range of customers." On information and belief, Fortner has indicated that Elitek's remote service will "give [collision repair shops] the option of plugging an 'EVS' device into their customer's OBD-II port and having Elitek examine the vehicle at an offsite call center."

43.    As of July 30, 2021, Elitek's website had a page explaining its "Services," including "Remote," at: https://elitekauto.com/services/remote/ (the "Elitek Remote Services Webpage").

44.    The Elitek's Remote Services Webpage provides, in part, the below image showing the Elitek Vehicle Services remote device ("EVS Plug-in Device") and information:



45.    The Elitek Remote Services Webpage provides, in part, the below image and information:



46.   The Elitek Remote Services Webpage includes a short video, entitled "Elitek Remote Device Breakdown" (the "Video").   The Video below screen image is taken from the Video:



47.   The Video shows that the board of Elitek's EVS Plug-in Device is nearly identical to that of Repairify's asTech Remote Diagnostic Device.

48.     The Video includes the below image, advertising that Elitek's EVS Plug-in Device is capable of transmitting data over the internet via a wired option or WiFi:



49.     DoIP, in the automotive industry, stands for Diagnostics over Internet Protocol.

The Video includes the below image, advertising that Elitek's EVS Plug-in Device is

DoIP Ready:"



**COUNT I**
**Infringement of U.S. Patent No. 8,688,313**
*Against Elitek and DOES 1 to 20*

50.     Plaintiff realleges Paragraphs 1 through 49, inclusive.

51.     Defendants have directly infringed and are currently directly infringing, induced

others to infringe and continued to induce others to infringe, and/or have committed and continue

to commit acts of contributory infringement, literally or under the doctrine of equivalents, one or

more claims of the '313 patent. Defendants' infringing activities in the United States and this

District include importing, making, using, selling, and/or offering for sale, and/or importing into

the United States and this District, without license, permission, and/or authority, products,

equipment and/or services, including but not limited to Elitek's EVS Plug-in Device and

Remote Service, that infringe one or more claims of the '313 patent, including but not limited to the below identified claims, and contributing to, and inducing consumers and users to make and/or use the patented invention(s) and/or to practice the claimed system and/or methods.

52.     Specifically, on information and belief, Elitek induces others, including its customers and end-users, to infringe at least claim 1 of the '313 patent by encouraging and facilitating them to perform actions known by Elitek to infringe and with the intent that performance of the actions will infringe. Elitek has been aware of the '313 patent since at least the filing of this complaint.

53.     On information and belief, Elitek induces consumers, including its customers and end-users, to make and use the claimed inventions and to practice the claimed methods by: (i) providing customers with the EVS Plug-in Device; (ii) instructing consumers to plug the EVS Plug-in Device into the OBD port of a vehicle to be scanned/reprogrammed; and (iii) instructing customers to then contact Elitek and utilize Elitek's equipment and/or services such that the combination as intended practices each of the elements of at least one claim of the '313 patent, including but not limited to those specifically discussed below.

54.     On information and belief, consumers make and use the claimed inventions and practice the claimed methods by using Elitek's products and/or services, including but not limited to those identified above, that incorporate Elitek's EVS Plug-in Device, the Elitek Remote Service, and/or actions taken by the customers that assist in establishing communication, thereby directly infringing at least the claims of the '313 patent discussed below.

55.     Elitek also contributes to the infringement of the'313 patent because Elitek knows that Elitek's EVS Plug-in Device and Remote Service are made for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing uses. Elitek's

EVS Plug-in Device and/or the Elitek Remote Service, which it offers for sale and sells directly to its customers are designed to be used (and are used by customers and end-users) in an infringing manner.

56.     On information and belief, Elitek's EVS Plug-in Device and Remote Service are especially designed, made, or adapted for use in an infringing manner. Elitek's EVS Plug-in Device and Remote Service have no substantial non-infringing uses and are material to the claimed inventions.

57.     As just one non-limiting example, set forth below are the elements of Claim 1 of the '313 patent, which is an exemplary claim, followed by narrative and/or illustrative information regarding Elitek's EVS Plug-in Device and Remote Service presently available from publicly available information. The claims have not yet been construed, nor has Repairify been provided with detailed information it expects to obtain in discovery. Repairify reserves the right to amend and/or modify this information.

58.     The preamble of Claim 1 of the '313 patent recites: "A system for remotely programming one or more sub-systems of a vehicle, comprising:"

59.     Elitek's EVS Plug-in Device and Remote Service comprise a system for, inter alia, remotely programming one or more sub-systems of a vehicle.

60.     The first element of Claim 1 of the '313 patent recites: "a vehicle connector having a plurality of pins, said pins in communication with a said one or more sub-systems;"

61.     Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a vehicle connector having a plurality of pins, and those pins are in communication with one or more sub-systems of a vehicle, as illustrated in part by the below image from the Elitek Remote Services Webpage:



62.     The next portion of Claim 1 of the '313 patent recites: "a vehicle communication device connected to said vehicle connector;"

63.     Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a vehicle communication device connected to the vehicle connector, as illustrated in part by the below image from the Elitek Remote Services Webpage:



64.     The next portion of Claim 1 of the '313 patent recites: "a bi-directional communication link between said vehicle communication device and a remote communication device;"

65.     Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a bi-directional communication link between the vehicle communication device and a remote communication device, such as an OEM or after market scan tool, such that the vehicle communication device can send communications to the scan tool, and the scan tool can send communications to the vehicle communication device.

66.     The next portion of Claim 1 of the '313 patent recites: "a computer system connected to said remote communication device;"

67.     Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a computer system connected to said remote communication device, as illustrated in part by the below image from the Elitek Remote Services Webpage:



68.     The next portion of Claim 1 of the '313 patent recites: "wherein said vehicle communication device is configured to: receive one or more outgoing pin signals present on said pins, said pin signals containing data corresponding to one or more said sub-systems;"

69.     On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a vehicle communication device that is configured to receive one or more outgoing pin signals present on the pins, and those pin signals contain data corresponding to one or more sub-systems of a vehicle.

70.     The next portion of Claim 1 of the '313 patent recites: "convert said one or more outgoing pin signals to a network-compatible vehicle packet;"

71.     On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a vehicle communication device that is configured to convert one or more outgoing pin signals to a network-compatible vehicle packet.

72.     The next portion of Claim 1 of the '313 patent recites: "transmit said vehicle packet to said remote communication device over said bi-directional communication link;"

73.     On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a vehicle communication device that is configured to transmit a network-compatible vehicle packet over a bi-directional communication link.

74.     The next portion of Claim 1 of the '313 patent recites: "wherein said remote communication device is configured to: re-convert said vehicle packet to said one or more outgoing pin signals;"

75.     On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a remote communication device that is configured to re-convert said vehicle packet to said one or more outgoing pin signals.

76.     The next portion of Claim 1 of the '313 patent recites: "and transmit said one or more outgoing pin signals to said computer system;"

77.     On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a remote communication device configured to transmit one or more outgoing pin signals to the computer system.

78.     The next portion of Claim 1 of the '313 patent recites: "and wherein said computer system and said vehicle connector are engaged in continuous bi-directional communication using a standard OBD communications protocol;"

79.     On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a computer system and a vehicle connector that engage in continuous bi-directional communication using a standard OBD communications protocol.

80.     The next portion of Claim 1 of the '313 patent recites: "and wherein said computer system is enabled by said continuous bi-directional communication using a standard OBD communications protocol to actively and continuously communicate with, scan and program said sub-systems as if it were located proximate to said vehicle."

81.     On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a computer system that is enabled by continuous bi-directional communication using a standard OBD communications protocol to actively and continuously communicate with, scan and program a vehicle's sub-systems as if it were located proximate to that vehicle.

82.     Claim 5 of the '313 patent recites: "The system of claim 1, wherein said computer system is a vehicle scan tool."

83.     Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a computer system that is a vehicle scan tool, either OEM or after market.

84.     Claim 6 of the '313 patent recites: "The system of claim 1, wherein said bi-directional communication link is carried over the Internet."

85.     Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system in which the bi-directional communication link between the vehicle communication device and the remote device is carried over the Internet.

86.     On information and belief, Defendants' direct, induced, and/or contributory infringement of the '313 patent has caused and continues to cause substantial damage to Repairify.

**COUNT II**
**Infringement of U.S. Patent No. 9,684,500**
*Against Elitek and DOES 1 to 20*

87.     Plaintiff realleges Paragraphs 1 through 86, inclusive.

88.     Defendants have directly infringed and are currently directly infringing, induced others to infringe and continued to induce others to infringe, and/or have committed and continue to commit acts of contributory infringement, literally or under the doctrine of equivalents, one or more claims of the '500 patent. Defendants' infringing activities in the United States and this District include importing, making, using, selling, and/or offering for sale, and/or importing into the United States and this District, without license, permission, and/or authority, products, equipment and/or services, including but not limited to Elitek's EVS Plug-in Device and Remote Service, that infringe one or more claims of the '500 patent, including but not limited to the below identified claims, and contributing to, and inducing consumers and users to make and/or use the patented invention(s) and/or to practice the claimed system and/or methods.

89.     Specifically, on information and belief, Elitek induces others, including its customers and end-users, to infringe at least claim 1 of the '500 patent by encouraging and facilitating them to perform actions known by Elitek to infringe and with the intent that performance of the actions will infringe. Elitek has been aware of the '500 patent since at least the filing of this complaint.

90.     On information and belief, Elitek induces consumers, including its customers and end-users, to make and use the claimed inventions and to practice the claimed methods by: (i) providing customers with Elitek's EVS Plug-in Device; (ii) instructing consumers to plug the EVS Plug-in Device into the OBD port of a vehicle to be scanned/reprogrammed; and (iii) instructing customers to then contact Elitek and utilize Elitek's equipment and/or services such that the combination as intended practices each of the elements of at least one claim of the '500 patent, including but not limited to those specifically discussed below.

91.     On information and belief, consumers make and use the claimed inventions and practice the claimed methods by using Elitek's products and/or services, including but not limited to those identified above, that incorporate Elitek's EVS Plug-in Device, the Elitek Remote Service, and/or actions taken by the customers that assist in establishing communication, thereby directly infringing at least the claims of the '500 patent discussed below.

92.     Elitek also contributes to the infringement of the '500 patent because Elitek knows that Elitek's EVS Plug-in Device and Remote Service are made for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing uses. Elitek's EVS Plug-in Device and/or the Elitek Remote Service, which it offers for sale and sells directly to its customers are designed to be used (and are used by customers and end-users) in an infringing manner.

93.     On information and belief, Elitek's EVS Plug-in Device and Elitek Remote Service are especially designed, made, or adapted for use in an infringing manner. Elitek's Remote Device and Remote Service have no substantial non-infringing uses and are material to the claimed inventions.

94.     As just one non-limiting example, set forth below are the elements of Claim 1 of the '500 patent, which is an exemplary claim, followed by narrative and/or illustrative information regarding Elitek's EVS Plug-in Device and Remote Service presently available from publicly available information. The claims have not yet been construed, nor has Repairify been provided with detailed information it expects to obtain in discovery. Repairify reserves the right to amend and/or modify this information.

95.     The preamble of Claim 1 of the '500 patent recites: "A system for remotely programming a subsystem of a subject vehicle, comprising:"

96.     Elitek's EVS Plug-in Device and Remote Service comprise a system for, inter alia, remotely programming a sub-system of a vehicle.

97.     The first portion of Claim 1 of the '500 patent recites: "a first communication device located proximate to a subject vehicle comprising:"

98.     Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a first communication device located proximate to the vehicle to be scanned/programmed, as illustrated in part by the below image from the Elitek Remote Services Webpage:



99.     The next portion of Claim 1 of the '500 patent recites: "a first interface that interfaces with a vehicle computer system for the subject vehicle and providing bi-directional

communication with the vehicle computer system using a standard OBD communications protocol;"

100.   Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device that has an interface that interfaces with a vehicle computer system for the vehicle to be scanned and/or programmed that provides bi-directional communication with the vehicle computer system using a standard OBD communications protocol.

101.   The next portion of Claim 1 of the '500 patent recites: "a second interface that interfaces with a communication network;"

102.   Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device that has a number of interfaces other than the cable that connects it to the vehicle, that interface with a communication network, including but not limited to the wired internet connection and the WiFi connection.

103.   The next portion of Claim 1 of the '500 patent recites: "and a first communication processor that controls communications over the first and second interfaces;"

104.   Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device that has a communication processor that controls communications over the interface that communicates with the vehicle and the interface(s) that communicate with the remote device.

105.   The next portion of Claim 1 of the '500 patent recites: "and a second communication device located remotely from the subject vehicle comprising;"

106.   On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be scanned/programmed.

107.    The next portion of Claim 1 of the '500 patent recites: "a third interface that interfaces with the communication network, the communication network providing a bi-directional communication link between the first communication device and the second communication device;"

108.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be scanned/programmed ("Remote Device") that has an interface that interfaces with the communication network, and that communication network provides a bi-directional communication link between the communication device connected to the vehicle and the Remote Device.

109.    The next portion of Claim 1 of the '500 patent recites: "a fourth interface that interfaces with a vehicle scan tool located proximate to the second communication device;"

110.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be scanned/programmed that has an interface that interfaces with a vehicle scan tool located proximate to the second communication device.

111.    The next portion of Claim 1 of the '500 patent recites: "and a second communication processor that controls communications over the third and fourth interfaces,"

112.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be scanned/programmed ("Remote Device") that has a communication processor that controls communications over that device's interfaces with both: a) the communication network connecting Remote Device to the communication device located proximate to the vehicle to be

scanned/programmed; and b) the interface that permits it to communicate with the vehicle scan tool.

113.    The next portion of Claim 1 of the '500 patent recites: "wherein the second communication processor is enabled to: Request, from the vehicle computer system over the bi-directional communication link, one or more outdoing pin signals the vehicle sub-system;"

114.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be scanned/programmed that has a communication processor that is enabled to request, from the computer system of the vehicle to be scanned/programmed, over the bi-directional communication link, one or more outgoing pin signals from a vehicle sub-system.

115.    The next portion of Claim 1 of the '500 patent recites: "Receive, over the bi-directional communication link, a network-compatible vehicle packet corresponding to the outgoing pin signal;"

116.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be scanned/programmed that has a communication processor that is enabled to receive, over the bi-directional communication link, a network-compatible vehicle packet corresponding to the outgoing pin signal.

117.    The next portion of Claim 1 of the '500 patent recites: "Convert the vehicle packet to said one or more outgoing pin signals;"

118.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be

scanned/programmed that has a communication processor that is enabled to convert a vehicle packet received over the internet to one or more outgoing pin signals.

119.   The next portion of Claim 1 of the '500 patent recites: "and Transmit the one or more outgoing pin signals to the vehicle scan tool;"

120.   On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be scanned/programmed that has a communication processor that is enabled to transmit the one or more outgoing pin signals to the vehicle scan tool.

121.   The next portion of Claim 1 of the '500 patent recites: "wherein the first communication device and the second communication device provide communication between the vehicle scan tool and the vehicle computer system to enable the vehicle scan tool to scan and program a vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle."

122.   On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a communication device located remotely from the vehicle to be scanned/programmed ("Remote Device") and another communication device located proximate to the vehicle and connected to it via a cable to its on-board diagnostics port that provide communication between a vehicle scan tool and the vehicle's computer system to enable the vehicle scan tool to scan and program a vehicle sub-system of that vehicle as if the vehicle scan tool were located proximate to the that vehicle.

123.   Claim 3 of the '500 patent recites: "The system of claim 1, wherein the bi-directional communication link comprises the Internet."

124.     Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system in which the bi-directional communication link between the vehicle-proximate communication device and the remote communication device is carried over the Internet.

125.     On information and belief, Defendants' direct, induced, and/or contributory infringement of the '500 patent has caused and continues to cause substantial damage to Repairify.

**COUNT III**
**Infringement of U.S. Patent No. 10,528,334**
***Against Elitek and DOES 1 to 20***

126.     Plaintiff realleges Paragraphs 1 through 125, inclusive.

127.     Defendants have directly infringed and are currently directly infringing, induced others to infringe and continued to induce others to infringe, and/or have committed and continue to commit acts of contributory infringement, literally or under the doctrine of equivalents, one or more claims of the '334 patent. Defendants' infringing activities in the United States and this District include importing, making, using, selling, and/or offering for sale, and/or importing into the United States and this District, without license, permission, and/or authority, products, equipment and/or services, including but not limited to Elitek's EVS Plug-in Device and Remote Service, that infringe one or more claims of the '334 patent, including but not limited to the below identified claims, and contributing to, and inducing consumers and users to make and/or use the patented invention(s) and/or to practice the claimed system and/or methods.

128.     Specifically, on information and belief, Elitek induces others, including its customers and end-users, to infringe at least claim 1 of the '334 patent by encouraging and facilitating them to perform actions known by Elitek to infringe and with the intent that performance of the actions will infringe. Elitek has been aware of the '334 patent since at least the filing of this complaint.

129.    On information and belief, Elitek induces consumers, including its customers and end-users, to make and use the claimed inventions and to practice the claimed methods by: (i) providing customers with Elitek's EVS Plug-in Device ; (ii) instructing consumers to plug the EVS Plug-in Device into the OBD port of a vehicle to be scanned/reprogrammed; and (iii) instructing customers to then contact Elitek and utilize Elitek's equipment and/or services such that the combination as intended practices each of the elements of at least one claim of the '334 patent, including but not limited to those specifically discussed below.

130.    On information and belief, consumers make and use the claimed inventions and practice the claimed methods by using Elitek's products and/or services, including but not limited to those identified above, that incorporate Elitek's EVS Plug-in Device, the Elitek Remote Service, and/or actions taken by the customers that assist in establishing communication, thereby directly infringing at least the claims of the '334 patent discussed below.

131.    Elitek also contributes to the infringement of the '334 patent because Elitek knows that Elitek's EVS Plug-in Device and Remote Service are made for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing uses. Elitek's EVS Plug-in Device and/or the Elitek Remote Service, which it offers for sale and sells directly to its customers are designed to be used (and are used by customers and end-users) in an infringing manner.

132.    On information and belief, Elitek's EVS Plug-in Device and Elitek Remote Service are especially designed, made, or adapted for use in an infringing manner. Elitek's EVS Plug-in Device and Remote Service have no substantial non-infringing uses and are material to the claimed inventions.

133.    As just one non-limiting example, set forth below are the elements of Claim 1 of the '334 patent, which is an exemplary claim, followed by narrative and/or illustrative information regarding Elitek's EVS Plug-in Device and Remote Service presently available from publicly available information. The claims have not yet been construed, nor has Repairify been provided with detailed information it expects to obtain in discovery. Repairify reserves the right to amend and/or modify this information.

134.    The preamble of Claim 1 of the '334 patent recites: "A method for remotely programming a sub-system of a subject vehicle, comprising:"

135.    Elitek's EVS Plug-in Device and Remote Service comprise a system and method for, inter alia, remotely programming a sub-system of a vehicle.

136.    The first element of Claim 1 of the '500 patent recites: "establishing, by a first communication device located proximate to a vehicle scan tool and comprising a first communication device processor, a bi-directional communication link with a second communication device over a communication network, the second communication device located proximate to a subject vehicle and remote from the first communication device;"

137.    Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system that includes a communication device located proximate to a vehicle scan tool that has a processor and establishing a bi-directional communication link between that communication device and another communication device located remotely from the first device, proximate to the vehicle to be scanned/programmed.

138.    The next portion of Claim 1 of the '500 patent recites: "requesting, by the first communication device, over the bi-directional communication link and via the second communication device, an outgoing pin signal from a vehicle sub-system for the subject vehicle;"

139.    Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system that practices the method including the step of the communication device located proximate to a vehicle scan tool requesting, over the bi-directional communication link and via the second communication device located proximate to the vehicle, an outgoing pin signal from a vehicle sub-system for the subject vehicle.

140.    The next portion of Claim 1 of the '500 patent recites: "receiving, by the first communication device, over the bi-directional communication link, a network-compatible vehicle packet corresponding to the outgoing pin signal; converting, by the first communication device, the vehicle packet to the outgoing pin signal;"

141.    Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system that practices the method including the step of the communication device located proximate to the vehicle scan tool receiving, over the bi-directional communication link, a network-compatible vehicle packet corresponding to the outgoing pin signal.

142.    The next portion of Claim 1 of the '500 patent recites: "converting, by the first communication device, the vehicle packet to the outgoing pin signal;"

143.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system that practices the method including the step of the communication device located proximate to the vehicle scan tool converting a network compatible vehicle packet it has received to an outgoing pin signal.

144.    The next portion of Claim 1 of the '500 patent recites: "and communicating, by the first communication device, the outgoing pin signal to the vehicle scan tool;"

145.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system that practices the method including the step of the communication

device located proximate to the vehicle scan tool communicating the outgoing pin signal to the vehicle scan tool.

146.    The next portion of Claim 1 of the '500 patent recites: "wherein the first communication device and the second communication device provide communication between the vehicle scan tool and the vehicle sub-system to enable the vehicle scan tool to scan and program the vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle."

147.    On information and belief, Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system that practices the method including the step of the communication device located proximate to the vehicle scan tool and the second communication device located proximate to the vehicle to be scanned/programmed providing communication between a vehicle scan tool and vehicle sub-systems to enable the vehicle scan tool to scan and program the vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle.

148.    Claim 2 of the '334 patent recites: "The method of claim 1, wherein the bi-directional communication link comprises the Internet."

149.    Elitek's EVS Plug-in Device and Remote Service comprise, inter alia, a system in which the bi-directional communication link between the communication device proximate the vehicle scan tool and the communication device located proximate the vehicle is carried, at least in part, over the Internet.

150.    On information and belief, Defendants' direct, induced, and/or contributory infringement of the '334 patent has caused and continues to cause substantial damage to Repairify.

## **PRAYER**

WHEREFORE, plaintiff prays for:

1.  Judgment be entered that Defendants infringe the '313 patent, literally, directly, indirectly, and/or under the doctrine of equivalents;

2.  Judgment be entered that Defendants infringe the '500 patent, literally, directly, indirectly, and/or under the doctrine of equivalents;

3.  Judgment be entered that Defendants infringe the '334 patent, literally, directly, indirectly, and/or under the doctrine of equivalents;

4.  Elitek and all affiliates, employees, agents, officers, directors, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined, in accordance with 35 U.S.C. § 283, from:

    a.  infringing the '313 patent;

    b.  infringing the '500 patent;

    c.  infringing the '334 patent; and

    d.  making, using, selling, and/or offering for sale

        Elitek's EVS Plug-in Device and Remote Service.

5.  Damages in an amount subject to proof, consistent with 35 U.S.C. § 284;

6.  A finding and declaration, pursuant to 35 U.S.C. § 285, that this case is exceptional, and an award of up to treble damages and attorneys' fees;

7.  Costs and expenses;

8.  Pre and post-judgment interest as permitted under the law; and

9.  Such other and further relief, in law or equity, as this Court deems just and proper.

Dated:  August 9, 2021

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
Debby Gunter
State Bar No. 24012752
FINDLAY CRAFT, P.C.
102 N. College Ave. Suite 900
Tyler, Texas 75702
Tel: (903) 534-1100
Fax: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com
Email: dgunter@findlaycraft.com

Arthur Wellman (*pro hac vice forthcoming*)
PRANGER LAW PC
88 Guy Place, Suite 405
San Francisco, CA 94105
Tel: (415) 885-9800
Fax: (415) 944-1110
Email: awellman@prangerlaw.com

**Counsel for Plaintiff, Repairify, Inc.**

## DEMAND FOR JURY TRIAL

Plaintiff Repairify, Inc. demands trial by jury of all causes of action herein pursuant to and consistent with Federal Rule of Civil Procedure 38.

Dated:  August 9, 2021                          Respectfully submitted,

                                                By: */s/Eric H. Findlay*
                                                Eric H. Findlay
                                                State Bar No. 00789886
                                                Brian Craft
                                                State Bar No. 04972020
                                                Debby Gunter
                                                State Bar No. 24012752
                                                FINDLAY CRAFT, P.C.
                                                102 N. College Ave. Suite 900
                                                Tyler, Texas 75702
                                                Tel: (903) 534-1100
                                                Fax: (903) 534-1137
                                                Email: efindlay@findlaycraft.com
                                                Email: bcraft@findlaycraft.com
                                                Email: dgunter@findlaycraft.com

                                                Arthur Wellman (*pro hac vice forthcoming*)
                                                PRANGER LAW PC
                                                88 Guy Place, Suite 405
                                                San Francisco, CA 94105
                                                Tel: (415) 885-9800
                                                Fax: (415) 944-1110
                                                Email: awellman@prangerlaw.com

                                                ***Counsel for Plaintiff, Repairify, Inc.***