**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| REPAIRIFY, INC., and | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:21-cv-00819-ADA |
| | ) | |
| v. | ) | |
| | ) | |
| KEYSTONE AUTOMOTIVE | ) | |
| INDUSTRIES, INC. d/b/a ELITEK | ) | |
| VEHICLE SERVICES, and DOES 1 | ) | |
| through 20, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

## TABLE OF CONTENTS

*I.*      *INTRODUCTION*................................................................................................ *1*

*II.*     *BACKGROUND*................................................................................................ *2*

      **A.**      **Overview Of the Prosecution History Of The Asserted Patents.** ...................... **2**

      **B.**      **Prior Art Distinguished In The Prosecution History**.......................................... **8**

*III.*    *LEGAL STANDARD* ......................................................................................... **10**

*IV.*     *ARGUMENT* ........................................................................................................ *12*

      **A.**      **The Complaint Fails to Plausibly Plead Direct Infringement.** ...................... **12**

      **B.**      **The Complaint Fails To Plausibly Plead Indirect Infringement.** ................... **16**

*V.*      *CONCLUSION*.................................................................................................... *19*

# TABLE OF AUTHORITIES

**CASES**

*Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019)...................................... 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 11

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ......................................... 11, 12

*Brandywine Communs. Techs., LLC v. T-Mobile USA, Inc.*,
   940 F.Supp.2d 1260 (M.D. Fl. 2012)....................................................................................... 18

*Cleveland Clinic Foundation v. True Health Diagnostic LLC*,
   859 F.3d 1352 (Fed. Cir. 2017)........................................................................................... 17, 18

*Ferring B.V. v. Watson Labs., Inc.-Fla*, 764 F.3d 1401 (Fed. Cir. 2014)........................................ 2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002).................... 10

*Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993) ......................................................... 16

*Laitram Corp. v. Rexnord*, 939 F.2d 1533 (Fed. Cir. 1991) ......................................................... 16

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) ................................................... 12

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342 (Fed. Cir. 2007)................. 17, 18

*Rotor Blade, LLC v. Signature Util. Servs., LLC*, 2021 WL 2581280 (N.D. Ala. Jun. 23, 2021) 18

*TMC Fuel Injection System, LLC v. Ford Motor Co.*, 682 Fed. App'x 895 (Fed. Cir. 2017) ...... 10

*Uship Intellectual Properties, LLC v. U.S.*, 714 F.3d 1311 (Fed. Cir. 2013) ............................... 10

*Western Express Bancshares LLC v. Green Dot Corp.*,
   2019 WL 4857330 (S.D.N.Y. Oct. 2, 2019) ............................................................................ 17

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6) Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services ("Elitek") moves to dismiss Plaintiff Repairify Inc.'s ("Repairify") Complaint for Patent Infringement asserting United States Patent Nos. 8,688,313 ("the '313 Patent"), 9,684,500 ("the '500 Patent"), and 10,528,334 ("the '334 Patent") (collectively, "the Asserted Patents"), which relate to systems and methods for programming a vehicle remotely, because the Complaint fails to state a claim upon which relief can be granted.

Repairify's infringement claims are not plausible.  The patentee expressly narrowed the claimed invention to require a form of continuous communication (between a vehicle and a remote tool) distinct from that used by the prior art, which allegedly only used sequential or intermittent communication of messages between a vehicle and a remote tool.  This was a critical limitation that was added into the claims and repeatedly relied upon by the patentee in an effort to distinguish the claimed invention from the prior art.  The Complaint, however, does not allege facts from which it could be plausibly concluded that the accused product communicates in such a continuous manner.  Indeed, the Complaint all but ignores this key limitation.  More importantly, what is alleged in the Complaint regarding the communication between the vehicle and remote tool demonstrates that the infringement allegations are implausible.  And because direct infringement has not been plausibly pled, the indirect infringement claims, which require an underlying act of direct infringement by another, are not plausible either.   For an independent reason, the Complaint's allegations of contributory infringement are also implausible.  The Complaint relies upon Elitek's actions of providing a service to assert contributory infringement, but contributory infringement cannot be based upon providing services.

For these reasons, Elitek respectfully requests that the Court dismiss the Complaint with prejudice for failure to state a claim.

## II.    BACKGROUND

The Asserted Patents are related, claiming priority to the same application and having an identical specification.  Dkt. Nos. 1-1, 1-2, 1-3 at Cover Page ("Related Applications").  And, again, the Asserted Patents relate to systems and methods for remotely programming a vehicle. *Id.*  The Complaint identifies one independent claim (claim 1) from each of the three patents that is allegedly infringed.  Dkt. No. 1 at ¶¶ 57, 94, 133.  The other three claims identified in the Complaint are dependent on one of the aforementioned independent claims and therefore cannot be infringed if the independent claims are not infringed.  *See Ferring B.V. v. Watson Labs., Inc.- Fla,* 764 F.3d 1401, 1411 (Fed. Cir. 2014) ("Because we hold that the asserted independent claims [of the patents-at-issue] are not infringed, the asserted dependent claims are likewise not infringed.").  Each of the asserted independent claims (and all of the other independent claims of the Asserted Patents) require the key limitation noted above -- a **local communication device** associated with a vehicle ***continuously communicating*** with a **remote communication device** associated with a computer/tool ***in such a way that the computer/tool can scan and program the vehicle <u>as if the computer/tool were located proximate to the vehicle</u>***.  *See* Declaration of Joseph Saltiel ("Saltiel Decl."), Exs. A-C (highlighting the pertinent limitations in each of the independent claims in yellow).  Indeed, as shown below, this key limitation was added during prosecution to overcome prior art rejections.

### A.    OVERVIEW OF THE PROSECUTION HISTORY OF THE ASSERTED PATENTS.

When deciding a motion to dismiss in patent cases, it is appropriate for the court to consider the prosecution history of a patent. *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019) (considering the prosecution history when granting a motion to dismiss on the basis that the infringement claim under the doctrine of equivalents was barred in light of statements made by the patentee distinguishing a key limitation that was not found in the prior art).  Of the

Asserted Patents, the '313 Patent was filed first.  Dkt. No. 1-1.  The claim that eventually became

claim 1 of the '313 Patent, was originally filed as follows:

> 1. A system for remotely programming one or more subsystems of a vehicle, comprising:
>
>> a vehicle connector having a plurality of pins, said pins in communication with a said one or more subsystems;
>>
>> a vehicle communication device connected to said vehicle connector;
>>
>> a bi-directional communication link between said vehicle communication device and a remote communication device;
>>
>> a computer system connected to said remote communication device;
>>
>> wherein said vehicle communication device is configured to:
>>
>>> receive one or more outgoing pin signals present on said pins, said pin signals containing data corresponding to one or more said Sub-systems;
>>>
>>> convert said one or more outgoing pin signals to a network-compatible vehicle packet;
>>>
>>> transmit said vehicle packet to said remote communication device over said bi-directional communication link;
>>
>> wherein said remote communication device is enabled to:
>>
>>> re-convert said vehicle packet to said one or more outgoing pin signals; and
>>>
>>> transmit said one or more outgoing pin signals to said computer system.

Saltiel Decl., Ex. D.  The USPTO rejected this claim (and the other pending claims) as being

unpatentable over U.S. Patent Appl. No. 2011/0313593 ("Cohen") and further in view of U.S.

Patent No. 6,728,603 ("Pruzan").  Saltiel Decl., Ex. E at 2-5.  The USPTO explained that Cohen

(described in more detail below) disclosed all of the limitations of claim 1 except that "Cohen

might not explicitly disclose" converting the pin signals to a packet, transmitting the packet over

a bi-directional communication link, and re-converting the packet back to pin signals to transmit

to a computer.  *Id.*  The USPTO stated that "if that interpretation [of Cohen] is taken," Pruzan (also

described in more detail below) disclosed those limitations, and it would have been obvious to

modify Cohen to include the converting, transmitting, and re-converting taught by Pruzan.  *Id.*

In an attempt to overcome this rejection, the patentee amended claim 1 as shown below (in pertinent part), adding the requirements that the local communication device ***continuously communicate*** with the remote communication device such that the computer/tool can scan and program the vehicle ***as if the computer/tool were located proximate to the vehicle***:

> wherein said remote communication device is ~~enabled~~ <u>configured</u> to:
>> re-convert said vehicle packet to said one or more outgoing pin signals; and
>> transmit said one or more outgoing pin signals to said computer system; and
>
> <u>wherein said computer system and said vehicle connector are engaged in continuous bi-directional communication using a standard OBD communications protocol; and</u>
>
> <u>wherein said computer system is enabled by said **continuous bi-directional communication** using a standard OBD communications protocol to **actively and continuously communicate with, scan and program said subsystems as if it were located proximate to said vehicle.**</u>

Saltiel Decl., Ex. F at 2-3 (emphasis added).  The other pending independent claim was amended to include the bolded language as well.  *Id.* at 5.  The patentee argued that the amended claims were not obvious in view of the combination of Cohen and Pruzan.  Specifically, the patentee explained that:

> The present claims, as amended provide a system and method for continuous bi-directional communication between a localized vehicle sub-system and a remote diagnostic/programming tool . . . . *[T]he remote tool is able to program the sub-system as if it were located locally and directly connected to the sub-system* through the OBD port.  Using the described system, from the standpoint of the remote tool and the sub-system, they are connected directly to each other and are unaware that they may actually be located miles away.  ***The only way to achieve this type of functionality is to provide a continuous connection . . . [that,] in essence inserts the diagnostic tool as a node in the vehicle's diagnostic data bus.***  In absence of such a ***continuous connection***, the signal to and from the remote tool would fail to meet the latency and integrity requirements required to perform most of the functions of the tool.
>
> ***This requires that a continuous bi-directional communication to exist*** . . . What is primarily exchanged between a vehicle and a scan tool ***is a stream of continuous data.***  A communication link between the vehicle bus and the scan tool that is not continuous or bi-directional in nature would therefore severely limit the usefulness of any scan connected tool.  Useful communication between a scan tool and a

vehicle only takes place when ***the scan tool is "on the bus"*** with the other vehicle modules and is in ***continuous bidirectional conversation with them***, not through . . . sequential transmission thereof.

*Id.* at 8-9 (emphasis added). The patentee then compared Cohen's communication to a "walkie-talkie" in that although it communicates between a vehicle and a remote device, it only does so "in one direction at a time and intermittently." *Id.* at 9-10. Because of that, the patentee argued that Cohen did not disclose the continuously bi-directional communication required by the invention. *Id.* In other words, Cohen "interrogates the vehicle and transmits information to the remote site . . . the remote system then sends an instruction or command to the vehicle." *Id.*

In a similar manner, the patentee distinguished Pruzan. The patentee described the system of Pruzan as transmitting messages between a vehicle bus and a remote system where the remote system interprets the message, and then if the message is understood and a command response can be implemented, generating the command and transmitting it to the vehicle. *Id.* at 10-11. The patentee argued that

> Pruzan does not, and cannot, transmit a continuous stream of data to a remote location. Like Cohen, Pruzan does not communicate with the vehicle continuously and bi-directionally. It simply shuttles messages and commands back and forth between the vehicle and the remote system.

*Id.* at 11. Regarding the limitation of continuous communication, the patentee distinguished two other prior art references that were cited by the USPTO with respect to dependent claims. The first reference described a system that was physically connected to the vehicle. *Id.* For the other reference, the patentee stated that it disclosed a system where reprogramming data was transmitted wirelessly to a device for storage, and then later, when instructed, the device would reprogram a locally connected vehicle, which the patentee argued was not relevant because such a system did not disclose "a device or process that communicates continuously and bi-directionally with the vehicle's network." *Id.*

5

The USPTO responded by issuing a final rejection of claims arguing that the claims were unpatentable over Cohen, Pruzan, and further in view of U.S. Patent No. 6,928,349 ("Namaky"), and, specifically, that Namaky disclosed the added limitations.  Saltiel Decl., Ex. G at 3-6.  The patentee did not further amend the claims, but instead, the patentee responded by repeating verbatim the aforementioned description of its invention requiring continuous communication and its argument as to why Cohen and Pruzan did not meet that limitation.  Saltiel Decl., Ex. H at 8-11.  The patentee then added that Namaky merely disclosed a device that was directly connected to a vehicle and automatically determined what protocol to use to communicate with the vehicle. *Id.* at 11-12.  According to the patentee, Namaky did not disclose "continuous bi-directional transmission of vehicle data to or from a remote location," and therefore, could not be combined with Cohen or Pruzan to render the claims unpatentable.  *Id.*  After considering this argument, the USPTO allowed the claims and issued the '313 Patent.  Saltiel Decl., Ex. I.

The '500 Patent is a divisional of the '313 Patent sharing the same specification.[1]  Dkt. No. 1-2.  Claim 1 of the '500 Patent is similar in scope to claim 1 of the '313 Patent and contains the following limitation, which is essentially the same language added to the claims of the '313 Patent to overcome Cohen and Pruzan:

> wherein the first communication device and the second communication device provide **communication** between the vehicle scan tool and the vehicle computer system **to enable the vehicle scan tool to scan and program a vehicle sub-system**

---

[1] The patentee filed a second divisional of the '313 Patent, U.S. Patent Appl. No. 14/219,183 ("the '183 application") that was analyzed at the USPTO by a different examiner than the Asserted Patents.  Saltiel Decl., Exs. J, K.  That examiner rejected the claims of the '183 application based upon prior art references that were not considered during the prosecution of the Asserted Patents. *Id.*  The patentee abandoned that application without disclosing that prior art or rejections by that examiner to the examiner considering the Asserted Patents. *Id.*, Ex. L; Dkt. Nos. 1-1, 1-2, 1-3 (*see* References Cited).  To the extent this matter survives this Motion, Elitek will demonstrate at the appropriate time that the Asserted Patents are invalid based upon this prior art, that the Asserted Patents are unenforceable for failure to disclose this prior art, and that Rule 11 sanctions as well as an award of fees under 35 U.S.C. § 285 is appropriate.

> **of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle.**

Saltiel Decl., Ex. M at 2-3 (emphasis added).  Again, as the patentee argued above, "*the only way to achieve this type of functionality is to provide a* **continuous connection . . . [that,] in essence inserts the diagnostic tool as a node in the vehicle's diagnostic data bus."**  Saltiel Decl., Ex. F at 8-9.  While the '500 Patent claims were initially rejected based on different prior art disclosing a portable system that could scan and program the vehicle, the patentee distinguished that prior art by asserting that system needed to be located proximate to the vehicle because it directly interfaced with the vehicle (not through a network), and therefore, did not disclose a remote computer that was configured to scan and program a vehicle as if the computer was located proximate to the vehicle. *Id.,* Ex. M at 5-9.  Hence, the USPTO eventually allowed the claims and expressly stated in the Notice of Allowance that the claims were being allowed because none of the cited references disclose a system that allowed a "vehicle scan tool to scan and program a vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle."  Saltiel Decl., Ex. N.

The '334 Patent is a continuation of the '500 Patent.  Dkt. No. 1-3.  Claim 1 of the '334 Patent is a method claim that recites essentially the same functions as the aforementioned claims of the '313 and '500 Patents.  For example, claim 1 of the '334 Patent includes the limitation:

> wherein the first communication device and the second communication device provide **communication** between the vehicle scan tool and the vehicle sub-system **to enable the vehicle scan tool to scan and program the vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle.**

Saltiel Decl., Ex. O at 2 (emphasis added).  While the USPTO initially rejected the claims of the '334 Patent for reasons unrelated to the aforementioned prior art, after the patentee addressed those issues, the USPTO allowed the claims.  *Id.* at 5-7; Ex. P.  In the Notice of Allowance, the USPTO

again found that the closest prior art of record did not teach or make obvious the limitation of "the vehicle scan tool to scan and program the vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle." *Id.* at 2.

### B.   PRIOR ART DISTINGUISHED IN THE PROSECUTION HISTORY.

To put the patentee's attempts to distinguish the prior art in context, a review of the primary prior art references discussed during the prosecution is set forth below.  As noted, the primary reference relied upon by the USPTO in its initial rejection of the '313 Patent was Cohen.  Cohen discloses the use of a transceiver device **120** connected to a vehicle through its OBD port **110** to send to, and receive and interpret data transmitted from a wireless router **210** connected to a computer through a wireless network **215,** such as the Internet.  Saltiel Decl., Ex. Q at ¶¶ 13-21, 30-37, Fig. 2.



**Figure 2**

The OBD port **110** has a standard 16 pin connector that allows transceiver device **120**, with a complementary connector, to interact with the vehicle's systems, thus, transceiver device **120** is capable of obtaining diagnostic information and other information from the vehicle.  *Id.*  The remote computer can form a connection through a wireless network with the transceiver device

connected to the vehicle to obtain information about the vehicle.  *Id.*  The remote computer can also issue commands to the vehicle through the device, *e.g.,* turn off the vehicle.  *Id.* at ¶ 44.

As also noted above, the USPTO also relied upon Pruzan in combination with Cohen to initially reject the claims of the '313 Patent to the extent Cohen was interpreted as not disclosing converting pin signals to packets and reconverting them back to pin signal when they were received.  Pruzan discloses a protocol converter **30** connected to the vehicle's data bus that communicates with a remote diagnostic system **40** via a wireless link **32**.  Saltiel Decl., Ex. R at 3:37-4:39; Fig. 1.



Protocol converter **30** is able to receive the electrical signals from bus **24** and is able to insert electrical signals onto bus **24** representing messages.  *Id.* at 3:50-53.  Protocol converter **30** is able to exchange messages with diagnostic system **40** by converting messages from the bus **24** into appropriate format for transmission over the wireless link **32** and by converting messages received from the diagnostic system **40** into an appropriate format for communication on the bus **24**.  *Id.* at 3:53-60.  "Thus, protocol converter **30** allows diagnostic system **40** to 'listen' to the messages on bus **24**, send messages to the controllers **22**, and/or receive messages from controllers **22**."  *Id.* at 3:60-63.  The remote diagnostic system **40** can request/receive data from the device, analyze it, and send messages to the device to be implemented on the vehicle.  *Id.* at 3:37-4:39.

As seen, both Cohen and Pruzan disclose (or at least render obvious) the key limitations of each of the independent claims: a vehicle connector, in communication with a said one or more

vehicle subsystems; a vehicle communication device connected to said vehicle connector, configured to receive pin signals, convert them to packets, and transmit the packets; a bi-directional communication link between said vehicle communication device and a remote communication device; and a computer system connected to said remote communication device. The only means by which the patentee could attempt to distinguish its invention from this prior art is to claim a difference between the extent of communication between the vehicle communication device and the remote communication device, specifically continuous communication so as to enable the scan tool to scan and program a vehicle *as if the scan tool was located proximate to the vehicle*. While the meaning of this added limitation is unclear, two things are clear: (1) the claims cannot be interpreted to cover the prior art such as the systems disclosed in Cohen and Pruzan; and (2) the patentee expressly stated that "*[t]he only way to achieve this type of functionality is to provide a* **continuous connection . . . [that,] in essence inserts the diagnostic tool as a node in the vehicle's diagnostic data bus**." *See Uship Intellectual Properties, LLC v. U.S.*, 714 F.3d 1311, 1315 (Fed. Cir. 2013) (patentee's statements to the PTO characterizing its invention limited the scope of the claims); *TMC Fuel Injection System, LLC v. Ford Motor Co.*, 682 Fed. App'x 895, 899 (Fed. Cir. 2017) (claims excluded prior art feature that patentee argued during prosecution was not part of the invention). Further, Repairify cannot rely upon the doctrine of equivalents as it pertains to this limitation to assert infringement. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002) (patentee cannot assert doctrine of equivalents to recapture subject matter surrendered when claim scope was narrowed during prosecution to avoid a rejection).

### III.   *LEGAL STANDARD*

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

complaint, however, must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555-56 (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court must strip away threadbare recitals and conclusory allegations before considering any remaining factual allegations. *Id.* The remaining factual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true. *Twombly*, 550 U.S. at 545, 555-56. That is, the asserted claims must be plausible based on the factual allegations. *Iqbal,* 556 U.S. at 678-79.

The Federal Circuit recently explained what these pleading requirements mean in the context of a claim for direct patent infringement, stating: "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent." *Id.* As applied to the allegations in *Bot M8*, this legal requirement led to the Federal Circuit affirming dismissal of two infringement claims. The first claim dismissed required that the accused device store game and authentication programs be on the same board but separate from the motherboard. *Id.* at 1353-54. The plaintiff alleged that the accused device's hard drive stored both programs

separate from the motherboard, but that the motherboard also stored the authentication program upon execution.  *Id.*  As such, *Bot M8* held that the plaintiff pled itself out of court because this later allegation defeated the requirement that the two programs to be stored separately from the motherboard.  *Id.*  The other dismissed claim required that the accused device store game information together with a mutual authentication program on a removable storage medium.  *Id.* The plaintiff alleged that several components could possibly store the game information and authentication program, but because the plaintiff never alleged which device stored both the game information and the authentication program, facts from which the court could determine whether the claim was plausible had not been properly alleged.  *Id.* at 1354-55.  *Bot M8* found that other claims requiring that the accused device detect faults before a game started were plausibly alleged because the plaintiff had specifically alleged facts asserting that the accused device generated specific error codes upon booting up before any game started.  *Id.* at 1355-56.  In other words, there must be specific factual allegations regarding the accused device from which it can be concluded that the accused device plausibly meets the claim limitations.

## IV.   ARGUMENT

### A.   THE COMPLAINT FAILS TO PLAUSIBLY PLEAD DIRECT INFRINGEMENT.

The Complaint's allegations of direct infringement are not plausible because it does not identify any facts from which one could infer that the vehicle communication device and the remote communication device continuously communicate so as to enable the scan tool to scan and program a vehicle ***as if the scan tool was located proximate to the vehicle***.[2]  As discussed above,

---

[2] The term "as if located proximate" does not refer to the physical location of the device but refers to a device that operates as if it were physically close.  Nowhere does the specification or the prosecution history inform, how to or what simulates this proximity.  Therefore, this limitation is indefinite.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014) (A claim is invalid for indefiniteness if its claims, read in light of the specification and the prosecution history, fail to inform those skilled in the art about the scope of the invention with reasonable certainty.).

during prosecution the patentee argued that in order for a remote tool to scan and program a vehicle as if it were proximate to the vehicle, the remote tool has to communicate using a continuous connection such that the remote tool is in essence inserted as a node on the vehicle's bus. *See supra* § II.

The Complaint identifies the accused product as the combination of Elitek's EVS Plug-in Device and Elitek's Remote Services. Dkt. No. 1 at ¶ 39-49. The Complaint shows an image of the EVS Plug-in Device from Elitek's webpage that includes a description of its features. *Id*. The Complaint also refers to several marketing statements that mention remote diagnostic and programming of vehicles, but the Complaint relies primarily on a snapshot of Elitek's website entitled "Service Experience" to allegedly show the implementation of the accused EVS Plug-in Device and Remote Services. *Id*.



Per the snapshot, service initiation begins when a customer plugs in the EVS Plug-in Device and then the customer, not the device, contacts Elitek. *Id*. at ¶ 45. The EVS Plug-in Device captures the vehicle information. *Id*. A call center technician then starts/completes the pre-post/remote

---

Although Elitek contends that the term "as if located proximate" is indefinite, at the very least, based on the prosecution history, the claims cannot cover prior art distinguished as not having this feature.

scan procedure of the EVS Plug-in Device.  *Id.*   Later, the Complaint alleges, parroting the language of the claims of the Asserted Patents, that the EVS Plug-in Device and Remote Service comprise a device that scans and programs a vehicle's sub-systems as if it were located proximate to the vehicle.  *Id.* at ¶¶ 81, 122, 147.  Other than also alleging that this procedure occurs over the Internet (just like the prior art), that is the totality of what is arguably alleged regarding the key limitation requiring that a remote computer/tool continuously communicate so as to **"scan and program said subsystems as if it were located proximate to said vehicle**."

    The Complaint does not allege (or even suggest) facts that the EVS Plug-in Device and Remote Services meet the "as if it were located proximate to said vehicle" limitation required by the claims of the Asserted Patents.  As discussed above, the patentee stated that the "only way to achieve this type of functionality is to provide a continuous connection . . . [that,] in essence inserts the diagnostic tool as a node in the vehicle's diagnostic data bus."  The Complaint, however, does not allege anywhere that the accused product includes a continuous connection.  As a preliminary matter, paragraphs 39-49 of the Complaint that provide the factual basis for the infringement allegations do not refer to a remote device.[3]  *Id.* at ¶¶ 39-49.  More importantly, the Complaint does not allege any facts that the vehicle has a continuous connection, *i.e.,* stream of continuous data, with a remote device such that the remote device is scanning and programming the vehicle as if it were located proximate to the vehicle.  At best, the Complaint identifies that there is some type of communication when it identifies that the call center technician starts/completes the pre-post/remote scan procedure of the EVS Plug-in Device, but there are no allegations as to how

---

[3] In later paragraphs, the Complaint generically refers to a "Remote Device," but it provides no further information, identification, or description of the "Remote Device" or how that component relates to the EVS Plug-in Device and Remote Services identified therein.  *See, e.g., id.* at ¶¶ 108, 112.

information is communicated, and, more specifically, whether it is through a continuous connection with the vehicle.  Without such an allegation, the Complaint has failed to plead facts sufficient to determine if its allegation of infringement is plausible.  *Bot M8*, 4 F.4th at 1354-55.

If anything, the facts alleged in the Complaint suggest that this limitation is not met.  For example, the Complaint alleges that the EVS Plug-in Device captures information from the vehicle.  Dkt. No. 1 at ¶ 45.  The call center technician then starts/completes pre/post scans of the EVS Plug-in Device.  *Id.*  Moreover, the Complaint alleges that this communication is carried over the Internet.  *Id.* at ¶¶ 85, 124, 149.  The Complaint's factual allegations regarding the accused product are analogous with how the prior art, which the patentee distinguished as outside the scope of the invention, operated.  Cohen discloses the use of a transceiver device connected to a vehicle through its OBD port to send to, and receive and interpret data transmitted from a wireless router connected to a computer through a wireless network**,** such as the Internet.  Saltiel Decl., Ex. Q at ¶¶ 13-21, 30-37, Fig. 2.  Similarly, Pruzan discloses a protocol converter connected to the vehicle's data bus that communicates with a remote diagnostic system via a wireless link such as the Internet.  *Id.*, Ex. R at 3:37-4:39; Fig. 1.  These prior art systems, like the accused product, all have a local device connected to a vehicle and a remote device that "interrogates" the vehicle and then shuttles messages back and forth with the local device over the Internet.  The patentee made clear that these types of systems do not meet the limitation of having a continuous connection that in essence inserts the remote tool as a node on the vehicle's bus to scan and program a vehicle.  Because the Complaint alleges that the accused product operates in the same way using the same components as the distinguished prior art, the Complaint's allegations are not plausible.  *See Bot M8*, 4 F.4th at 1353-54.

15

In addition, other factual allegations in the Complaint further suggest that the accused product does not meet the "as if it were located proximate to said vehicle" limitation as required by the claims of the Asserted Patents.  Specifically, the Complaint has factual allegations requiring human interaction as part of the Remote Services.  A customer needs to contact Elitek and then the call center technician starts/completes the procedure, communicates with the customer, emails results, and sends someone for an appointment. Dkt. No. 1 at ¶ 45.  With a person involved, the Remote Services cannot be considered to be "on the bus" simulating a direct and continuous connection with a vehicle as if it were located proximate to said vehicle.  Therefore, the facts alleged in the Complaint render the assertions implausible.  *See Bot M8*, 4 F.4th at 1353-54.

The Complaint does not allege that the accused product has the features that the patentee stated were the critical part of the invention such as a continuous and bi-directional communication between a vehicle and a remote device.  Instead, the Complaint alleges that the accused product has the same type of connection and communication depicted in the prior art and that was distinguished by the patentee during prosecution.  Therefore, the Complaint's allegations that the accused product has the limitation of "as if it were located proximate to said vehicle" has not been plausibly pled.  And because the allegations regarding the accused product are missing at least this limitation, which is required for all of the claims of the Asserted Patents, the Complaint's allegations of direct infringement are not plausible.  *See Laitram Corp. v. Rexnord,* 939 F.2d 1533, 1535 (Fed. Cir. 1991) (absence of a single claim element is sufficient to negate infringement of a claim).

### B.   THE COMPLAINT FAILS TO PLAUSIBLY PLEAD INDIRECT INFRINGEMENT.

There can be no induced or contributory infringement without an underlying act of direct infringement by a third party.  *Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 774 (Fed. Cir. 1993).  Because the Complaint fails to plausibly plead direct infringement, there can be no

plausible claim of indirect infringement either.  For that reason, the claims of induced and contributory infringement should be dismissed.  *See e.g., Western Express Bancshares LLC v. Green Dot Corp.*, 2019 WL 4857330, at *4 (S.D.N.Y. Oct. 2, 2019) (dismissing induced and contributory infringement claims because complaint failed to plausibly plead direct infringement).

For an additional reason, the contributory infringement should be dismissed.  35 U.S.C. § 271(c) ("Contributory Infringement") provides that whoever offers to sell or sells "a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process" may be liable as a contributory infringer.  The Federal Circuit has held that, per the statute, selling (or otherwise providing) services cannot be the basis of a contributory infringement allegation.  *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,* 491 F.3d 1342, 1357 (Fed. Cir. 2007) (affirming JMOL overturning jury verdict finding contributory infringement of a method claim based on the offering of services used to perform the allegedly infringing method).  *PharmaStem* explained that contributory infringement is limited to the sale or offer for sale of components of an infringing product, or the sale or offer for sale of a material or apparatus used in an infringing method.  *Id.*  "Under the plain language of the statue, a person who provides a service that assists another in committing patent infringement may be subject to liability under section 271(b) for active inducement of infringement, but not under 271(c) for contributory infringement."  *Id.  PharmaStem* stated that the legislative background of section 271(c) makes this clear.  *Id.*  Moreover, the Federal Circuit confirmed that identifying services as the basis of a contributory infringement allegation in a complaint is grounds for dismissal of that allegation at the pleading stage.  *Cleveland Clinic Foundation v. True Health Diagnostic LLC,* 859 F.3d 1352, 1363 (Fed. Cir. 2017) (affirming dismissal of allegations of contributory infringement of a method

claim because a "party that provides a service, but no 'material or apparatus' cannot be liable for contributory infringement").

Furthermore, courts have held that vague allegations of "products and services" with no particularized allegation as to what component or apparatus is the basis of the contributory infringement allegation is insufficient. *See e.g.*, *Brandywine Communs. Techs., LLC v. T-Mobile USA, Inc.,* 904 F.Supp.2d 1260, 1271-72 (M.D. Fl. 2012) (finding that plaintiff's explanation on reply that the alleged "Accused Services and Products" in the complaint referred to software installed on telephones for services like voicemail and not the services themselves was insufficient to cure the implausible allegation of contributory infringement identifying services provided); *Rotor Blade, LLC v. Signature Util. Servs., LLC*, 2021 WL 2581280, at *9 (N.D. Ala. Jun. 23, 2021) (holding that even if defendant did use the allegedly infringed patented helicopter saw in providing landscaping services, that was insufficient to plead contributory infringement because the complaint did not allege that the defendant sold the apparatus or a component used to provide the accused services).

Here, the Complaint identifies "EVS Plug-in Device and Remote Services" as the component or apparatus that is the basis of its contributory infringement allegation. Dkt. No. 1 at ¶¶ 55-56, 92-93, 131-132. As the Federal Circuit has made abundantly clear, services cannot be the basis of a contributory infringement allegation. *PharmaStem,* 491 F.3d at 1357; *Cleveland Clinic,* 859 F.3d at 1363. The fact that Repairify's contributory infringement allegation also references a device (EVS Plug-in Device) does not save the allegation because it does not allege the sale of a specific component, material, or apparatus, but instead generically refers to both a device and all of the services that Elitek allegedly provides. Dkt. No. 1 at ¶ 45; *see also Brandywine,* 904 F. Supp. 2d at 1272. Indeed, Repairify's contributory infringement allegations

mirror those of *Brandywine* and *Rotor Blade* in identifying "products and services" because they focus on the service provided through the device, not the device itself.  Dkt. No. 1 at ¶ 45.  Because the Complaint alleges contributory infringement based on services, it fails to plausibly plead contributory infringement, and, as such, for this independent reason, these allegations should be dismissed.

## V.    CONCLUSION

For the forgoing reasons, the Complaint fails to plausibly plead infringement of the Asserted Patents.  Therefore, Elitek respectfully requests that the Court dismiss the Complaint with prejudice for failure to state a claim.

Dated:  December 6, 2021

Respectfully submitted,

*/s/ Barry F. Irwin, P.C.*
Barry F. Irwin, P.C. (admitted *pro hac*)
Joseph Saltiel (admitted *pro hac*)
Daniel Sokoloff (admitted *pro hac*)
**IRWIN IP LLC**
180 N Wacker Dr, Ste 400
Chicago, Illinois  60606
(312) 667-6080
birwin@irwinip.com
jsaltiel@irwinip.com
dsokoloff@irwinip.com

Barry K. Shelton
Texas State Bar No. 24055029
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
bshelton@sheltoncoburn.com
(512) 263-2165 (Telephone)
(512) 263-2166 (Facsimile)

*Attorneys for Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on all counsel of record via the Court's ECF system.

*/s/ Barry F. Irwin, P.C.*
Barry F. Irwin