# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **REPAIRIFY, INC.,**<br>a Delaware corporation,<br><br>    **Plaintiff,**<br><br> **v.**<br><br>**KEYSTONE AUTOMOTIVE**<br>**INDUSTRIES, INC.,**<br>a California corporation<br>d/b/a Elitek Vehicle Services, and<br>DOES 1 through 20, inclusive,<br><br>   **Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **6:21-cv-00819-ADA**<br><br>**JURY TRIAL DEMANDED** |

## REPAIRIFY'S OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ......................................................................................................... 2

    A.   The Parties ....................................................................................................... 3

    B.   Background of the Patented Technology ......................................................... 3

    C.   Repairify's Development of the Patented Invention ........................................ 4

    D.   Relevant Excerpts of the Specification, Prosecution History, and Claims of the Asserted Patents. ............................................................................................. 5

    E.   Elitek's Infringing Conduct ............................................................................ 8

      1.   Elitek Directly Infringes the Asserted Patents ........................................ 8

      2.   Elitek Induces Infringement of the Asserted Patents .............................. 8

      3.   Elitek Contributes to the Infringement of the Asserted Patents .............. 9

III.   LEGAL STANDARD ................................................................................................. 9

IV.   ARGUMENT ............................................................................................................ 11

    A.   The Complaint Sufficiently Pleads Direct Infringement. ............................. 11

      1.   The Complaint Sufficiently Sets Out Facts to Meet the Pleading Standard for Patent Infringement ............................................................................ 11

      2.   The Complaint Sufficiently Alleges Facts Giving Rise to a Plausible Inference of Direct Infringement. ......................................................... 13

      3.   The Claims, Specification, and Prosecution History Support Plaintiff's Well Pled Allegations. ......................................................................... 14

    B.   The Complaint Sufficiently Pleads Indirect Infringement. ........................... 17

      1.   The Complaint Sufficiently Alleges Facts Showing Induced Infringement. .............. 17

      2.   The Complaint Sufficiently Alleges Facts Showing Contributory Infringement. ...... 18

    C.   Defendant's Far-Reaching Assertions of Inequitable Conduct, Indefiniteness, and Invalidity Set Out in Footnotes Are Not Properly Before the Court. ......................... 19

V.    CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Amgen Inc. v. Coherus BioSciences Inc.*,
 931 F.3d 1154 (Fed. Cir. 2019).......................................................................... 15, 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................. 10

*Blackbird Tech v. Lyft, Inc.*,
 No. CV 19-566, 2020 WL 58535 (D. Del. Jan. 6, 2020)...................................... 11

*Bot M8 LLC v. Sony Corp. of Am.*,
 4 F.4th 1342 (Fed. Cir. 2021) ......................................................................... 12, 13

*Brandywine Comm. Techs., LLC v. T-Mobile USA, Inc.*,
 904 F. Supp. 2d 1260 (M.D. Fl. 2012)................................................................. 18

*Canon, Inc. v. TCL Electronics Holdings Ltd.*,
 2020 WL 1478356 (E.D. Tex. 2020).................................................................... 17

*Conley v. Gibson*,
 355 U.S. 41 (1957)............................................................................................... 10

*CoreBrace LLC v. Star Seismic LLC*,
 566 F.3d 1069 (Fed. Cir. 2009)............................................................................ 10

*DermaFocus LLC v. Ulthera, Inc.*,
 201 F. Supp. 3d 465 (D. Del. 2016)..................................................................... 13

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
 888 F.3d 1256 (Fed. Cir. 2018)........................................................................ 1, 11

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*,
 No. SA-18-CV-1335, 2019 WL 2601347 (W.D. Tex. June 25, 2019)................... 11

*Frac Shack Inc. v. AFD Petroleum (Texas) Inc.*,
 No. 7:19-CV-00026, 2019 WL 3818049 (W.D. Tex. June 13, 2019) .................... 17

*GS Cleantech Corporation v. Adkins Energy LLC*,
 951 F.3d 1310 (Fed. Cir. 2020)............................................................................ 19

*Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*,
 No. 6:20-CV-00317, 2021 WL 4555608 (W.D. Tex. Oct. 4, 2021)....................... 10

*Liqui-Box Corp. v. Scholle IPN Corp.*,
   449 F. Supp. 3d 790 (N.D. Ill. 2020) ........................................................ 16

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ..................................................................... 10

*Lowrey v. Texas A&M Univ. Sys.*,
   117 F.3d 242 (5th Cir. 1997) ..................................................................... 10

*MAZ Encryption Techs. LLC v. BlackBerry Ltd.*,
   No. 6:15-CV-1167, 2016 WL 9275008 (E.D. Tex. June 7, 2016) ........................... 13

*Motiva Patents, LLC v. Sony Corporation HTC Corporation*,
   2019 WL 4737051 (E.D. Tex. 2019) ........................................................... 17

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018) ................................................................. 16

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ................................................................................. 19

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
   491 F.3d 1342 (Fed. Cir. 2007) ................................................................. 18

*Proxense, LLC v. Target Corporation*,
   2021 WL 3824690 (W.D. Tex., Jul. 28, 2021) .............................................. 17

*Rotor Blade, LLC v. Signature Util. Servs., LLC*,
   2021 WL 2581280 (N.D. Ala. Jun. 23, 2021) ............................................... 18

*Skinner v. Switzer*,
   562 U.S. 521 (2011) ................................................................................. 10

*Unification Techs. LLC v. Dell Techs., Inc.*,
   No. 6:20-CV-00499-ADA, 2021 WL 1343188 (W.D. Tex. Jan. 28, 2021) ................ 2

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
   2017 WL 3721064 (E.D. Tex. 2017) ........................................................... 17

**Rules**

Fed. R. Civ. Proc. 8(a)(2) ............................................................................. 9

Fed. R. Civ. Proc. 12(b)(6) ............................................................. 1, 10, 11, 15

## I.    INTRODUCTION

Repairify's Complaint meets every requirement for adequately pleading claims for direct and indirect infringement, including induced and contributory infringement. Defendant's motion should be denied as a factually unsupported and legally improper claim construction prosecution history estoppel argument that is inappropriate on a motion to dismiss.

Repairify's Complaint identifies the accused products—the EVS Plug-in Device and Remote Service (*e.g.*, Compl. [Dkt. 1] ¶¶ 44-49, 51, 88, 127); and sets forth detailed allegations that these products meet each and every element of claims 1, 5, and 6 of the '313 Patent (*id.*, ¶¶ 51-85); claims 1 and 3 of the '500 Patent (*id.* ¶¶ 88-124); and claims 1-2 of the '334 Patent (*id.* ¶¶ 127-149).[1] Additionally, the Complaint identifies marketing materials showing Defendant's intent to induce the accused product that Defendant sells to its third-party customers for use in the infringing method. *E.g.*, Compl. ¶¶ 44-45, 61, 63, 67. And the Complaint identifies the accused product sold to and used by third parties, identifying those parties in the Complaint. *E.g.*, *id.* ¶¶ 44-45, 61, 63, 89, 90, 91). This is more than sufficient to state claims for direct and indirect infringement.[2]

Defendant incorrectly argues that Plaintiff has failed to plead that the accused product operates "as if it were proximate to" a vehicle and that the accused product "continuously communicate" with the vehicle. Mot. at 14. Defendant further argues that "the meaning of this

---

[1] Plaintiff's Preliminary Infringement Contentions are being served concurrently with the filing of this Opposition and allege infringement of claims 1-17 of U.S. Patent Nos. 8,688,313 ("the '313 Patent"); claims 1, 2, 3, 6, 7, 8, 9, and 10 of U.S. Patent No. 9,684,500 ("the '500 Patent"); and claims 1, 2, 5, and 6 of U.S. Patent No. 10,528,334 ("the '334 Patent") (collectively, the "Asserted Claims" and "Asserted Patents").

[2] *See, e.g.¸ Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing dismissal under Rule 12(b)(6) and remanding where, as here, the complaint specifically identified the accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents either literally or equivalently").

added limitation ["as if the scan tool was located proximate to the vehicle"] is unclear," Mot. at 10.[3]  And while Defendant's entire argument purportedly rests on this Court's construction of "continuous connection" and "as if it were proximate to," Defendant fails to provide a proposed construction of either term or indication of how the accused instrumentalities operate such that this Court could clearly conclude, on this record, that Defendant does not meet those limitations.

Plaintiff respectfully submits that claim construction is inappropriate at this phase on this record, as well as being unnecessary, as Plaintiff has properly pled infringement and does not need unclaimed "equivalents" to plead infringement. The Complaint more than plausibly alleges that Defendant's EVS Plug-in Device and Remote Service directly and indirectly infringes the Asserted Claims of the Asserted Patents.[4]  Defendant's motion should be denied.

## II.    BACKGROUND

On August 9, 2021, Repairify filed the instant Complaint against Keystone Automotive Industries, Inc., d/b/a/ Elitek Vehicle Services ("Defendant" or "Elitek") for direct and indirect infringement of United States Patents No. 8,688,313 ("the '313 Patent"); No. 9,684,500 ("the '500 Patent"); and No. 10,528,334 ("the '334 Patent), (collectively the "Asserted Patents"). The Parties Stipulated to additional time for Defendant to respond to the Complaint, and on December 6, 2021, rather than filing an Answer, Defendants filed the instant motion.

---

[3] Yet Defendant simultaneously argues that however construed, it (a) doesn't read on the accused product and (b) was disclaimed during the prosecution history of the patent. *See* Mot at 12-16.

[4] Moreover, Plaintiff cannot reasonably argue that it is unaware of the allegations against it, especially in light of Plaintiff's concurrent service of its Preliminary Infringement Contentions. To the extent Defendant believes Plaintiff's Preliminary Infringement Contentions are insufficient, "a 12(b)(6) motion is not the appropriate procedure for identifying inconsistent direct infringement contentions. Those are premature assertions that are best addressed in claim construction or non-infringement positions." *Unification Techs. LLC v. Dell Techs., Inc.*, No. 6:20-CV-00499-ADA, 2021 WL 1343188, at *3 (W.D. Tex. Jan. 28, 2021).

The '500 Patent is a divisional of the '313 Patent, and the '334 Patent is a continuation of the '500 Patent. *See* Compl. Exs. 1, 2, and 3 [Dkt. 1, 1-1, 1-2, and 1-3]. Although the '500 Patent is a divisional, all three Asserted Patents substantively share the same specification (absent the claims); all citations herein are to the specification of the '313 Patent (Compl. Ex. 1 [Dkt. 1-1]), but apply to each of the Asserted Patents.

### A.    The Parties

Plaintiff Repairify is a Delaware corporation, with its principal place of business in Plano, Texas. Repairify, including its predecessors developed, and continues to develop, technology relating to remote automotive diagnosis and repair. *See* Compl. [Dkt. 1], ¶ 27. Repairify is the owner by assignment of all right, title, and interest in and to the Asserted Patents. *Id.* ¶¶ 7, 9, 11.

Defendant Keystone Automotive Industries, Inc. is a California corporation doing business in this District under the assumed business name of Elitek Vehicle Services. Compl. [Dkt. 1], ¶ 12. Elitek's website lists its "Headquarters" as: 1910 Crown Road, Farmers Branch, Texas. *Id.*, ¶ 24. Elitek markets its services as: "The premier industry provider for mobile and remote diagnostic services."  *Id.* Elitek's business includes the provision of mobile diagnostic services from locations across the country, including Austin, San Antonio, and El Paso. *Id.* According to a June 22, 2021, press release, Elitek claims to be "the largest independent provider of mobile, on-site vehicle services to automotive collision repairers, mechanical repairers, and national fleets in the U.S." *Id.*, ¶¶ 20-21.

### B.    Background of the Patented Technology

Most modern automobiles have computerized modules controlling and/or processing and passing data along for a variety of systems and sub-systems in the vehicle. These modules can be accessed via an on-board diagnostic port ("OBD" or "OBD II"). Although the configuration of

the OBD port is standardized, the system that various manufacturers, and even certain years, makes, and/or models, utilize to communicate is not. Currently, a variety of communication protocols are utilized. Compl. [Dkt. 1], ¶ 28.

In order to diagnose and/or repair automobiles, a technician connects a vehicle scan tool to an automobile, via a cable to the OBD port. *Id.* ¶ 29. The technician can then use the scan tool to read various codes from the modules on the vehicle to perform a diagnosis, via bi-directional communication over the cable. If necessary, the technician can also utilize the scan tool to re-program and/or "re-flash" certain modules on the vehicle, using bi-directional communication, during the repair process. *Id.*

Prior to Repairify's invention, because of the varying communication protocols used, it was often necessary for a technician to purchase several different scan tools, each compatible with a particular OBD signal protocol, and in some cases, additional security protocols as well. *Id.* ¶ 30. Thus, if a technician wanted to service a wide variety of vehicle makes and models, he would often have to make a substantial investment in scan tools. *Id.* Moreover, because many scan tools are handheld devices that connect directly to a vehicle's OBD port, the technician had to carry out service, including running diagnostics and/or reprogramming, directly next to, or inside of, the vehicle itself. *See id.* ¶¶ 29-30.

### C.    Repairify's Development of the Patented Invention

Repairify recognized the need for a system that allowed a technician to service and program a vehicle from a remote location. Compl. [Dkt. 1], ¶ 33. And Repairify recognized that the system would benefit from being able to program a vehicle without requiring a shop to purchase numerous expensive scan tools for each specific vehicle make and/or model. *Id.* Repairify developed and deployed just such a system, including a remote call center that has the capabilities to diagnose and program a wide variety of vehicles implementing a variety of

communication protocols using the most recent scan tool software for a wide variety of vehicle manufactures and model years. *Id.* ¶¶ 33-35.

> **D.     Relevant Excerpts of the Specification, Prosecution History, and Claims of the Asserted Patents.**

Defendant incorrectly states: "[n]owhere does the specification or the prosecution history inform, how to [sic] or what simulates this proximity." Mot at 12 n.2. Contrary to Defendant's assertion, the claims, specification, and the prosecution history of the Asserted Patents—even those portions cited by Defendants—inform the meaning of the claim language "as if it were proximate to" and "continuous communication," more than sufficiently to allow this Court to construe the claims. The specification informs the meaning of the challenged limitation "as if it were proximate to," consistent with proper canons of claim construction. For example, the specification states that "proximate to the vehicle," includes "a wireless communication link for transmitting vehicle information to a terminal proximate to the vehicle, *i.e. at a fuel station*." '313 Patent (Compl. Ex. 1 [Dkt. 1-1]) at col. 3, ll. 30-35 (describing Kitson) (emphasis added). The specification also distinguishes other references as "only allow[ing] the transmission of vehicle data to a location proximate, *i.e., next to*, the vehicle."  *Id.* at col. 3, ll. 42-43 (emphasis added). "Kitson fails to provide for a system or method that enables a technician to program a vehicle's systems from a location *substantially remote* from the location of the vehicle." *Id.* at col. 3, ll. 43-46 (emphasis added).

Additionally, the specification indicates that in the prior art "the scan tool or computing device usually *must be located proximate to the vehicle* for data analysis and programming, *because it must be connected by a data cable* in order for "the scan tool to receive vehicle data corresponding to the various vehicle sub-systems." *Id.* at col. 7, ll. 1-6. The specification distinguishes the invention from existing systems which required the scan tool to be located

proximate to the vehicle so that it can be connected by a cable stating: "The bi-directional communication link between the vehicle and the remote location allows a technician at the remote location to program a vehicle via a scan tool or computing system *as if he were standing proximate to the vehicle*." *Id.* at col. 7, ll. 11-16 (emphasis added).

Defendant's argument also ignores portions of the prosecution history discussing the challenged limitations. For example, the patentee added the phrase "as if it were located proximate to said vehicle" to claims 1 and 23 of the '313 Patent in response to a non-final rejection of all claims based on 35 U.S.C. 103(a). *See* Saltiel Decl., Ex. F [Dkt. 24-6] at 2-3, 8. The Applicant distinguished the references, describing the "the present claims, as amended," in relevant part, as follows:

> [T]he remote tool is able to program the sub-system *as if it were located locally and directly connected to the sub-system through the OBD port* using the described system, from the standpoint of the remote tool and the sub-system, they are connected directly to each other and are unaware that they may actually be located miles away.

*See* Saltiel Decl., Ex. F [Dkt. 24-6] at 8-9 (emphasis added). As the Applicant explained, providing "continuous communication" enables the patented system and method to meet the latency and integrity requirements necessary for the scan tool to perform its functions. *Id.*

And the language of the claims themselves inform the meaning of "as if it were located proximate to." Reading, for example, Claim 1 of the '313 patent as a whole demonstrates the irrelevance of Defendant's argument regarding the customer calling the remote technician (*see* Mot. at 16): the continuous bi-directional communication is between the remote computer system and the vehicle, which allows the remote computer system "to actively and continuously communicate with, scan and program said Sub-systems, as if it were" locally connected to the vehicle. *See* '313 Patent (Compl., Ex. 1 [Dkt 1-1], claim 1.

6

Defendant's characterizations of the distinguished prior art are improper in this Motion, and do not contradict the informed definition of the challenged limitations. More telling than what Defendant included is what Defendant left out. For example, in distinguishing Cohen, the Applicant noted that the continuous bi-directional communication, "which could exist across whatever medium is employed (Ethernet, Wi-Fi, cellular, etc.), between the vehicle and the remote tool," was necessary. Specifically, the explanation provided to the Examiner, but omitted by Defendant, is that "[t]he vast majority of scan tool activity consists of monitoring timing and latency dependent data on the targeted sub-system." *See* Saltiel Decl., Ex. F [Dkt. 24-6] at 9. Thus the "continuous bi-directional communication" was what was missing from the references to solve the problem of maintaining the connection between the vehicle sub-system and the scan tool, such that it was feasible to perform scans and reprogramming from a remote location. *Id.*

This reasoning similarly applied to the other prior art cited by Defendant (Pruzan, Ban) that were not distinguished on the basis that the scan tool of those prior art systems was proximate and physically connected to the vehicle by a cable (Namaky, Chinnadurai), which Defendant cannot plausibly argue is true of the accused product. *See* Mot. at 3-6 & Saltiel Decl., Ex. F [Dkt. 24-6] at 10-11, Ex. G [Dkt. 24-7] at 3-6. The prosecution history does not constitute a clear and unmistakable relinquishment of claim scope which Repairify is seeking to reclaim via the doctrine of equivalents to make its case against Defendant.

### E.      Elitek's Infringing Conduct

As alleged in the Complaint, Defendant directly infringes at least claims 1, 5, and 6 of the

'313 patent, claims 1 and 2 of the '500 Patent, and claims 1 and 3 of the '334 Patent.[5]  As further

alleged, Defendants' infringing activities include importing, making, using, selling, and/or

offering for sale, and/or importing into the United States and this District, without license,

permission, and/or authority, products, equipment and/or services, including but not limited to

Elitek's EVS Plug-in Device and Remote Service, that infringes at least claim 1 of each Asserted

Patent. Compl. [Dkt. 1], ¶ 114.

### 1.      Elitek Directly Infringes the Asserted Patents

As just one non-limiting example, the Complaint sets forth each of the elements of

Claims 1 and 3 of the '500 patent, which are exemplary claims, followed by narrative and/or

illustrative information regarding Elitek's EVS Plug-in Device and Remote Service presently

available from publicly available information. *See* Compl. [Dkt. 1], ¶¶ 94-122. The Complaint

further includes images of the interior of the accused device and images and descriptions of

Elitek's available products and services taken from Elitek's Remote Services Webpage. *See, e.g.*,

*id.* ¶¶ 44-49, 61, 63, and 98. The Complaint sets forth similarly detailed allegations with respect

to the asserted claims of the '313 and '334 Patents. *See id.* ¶¶ 51-85, and 127-149.

### 2.      Elitek Induces Infringement of the Asserted Patents

As alleged in the Complaint, Elitek induces consumers, including its customers and end-

users, to make and use the claimed inventions and to practice the claimed methods by:

(i) providing customers with the EVS Plug-in Device; (ii) instructing consumers to plug the EVS

---

[5] As noted, Plaintiff's Preliminary Infringement Contentions served concurrently with the filing of this Opposition allege infringement of claims 1-17 the '313 Patent; claims 1, 2, 3, 6, 7, 8, 9, and 10 of the '500 Patent; and claims 1, 2, 5, and 6 of the '334 Patent.

Plug-in Device into the OBD port of a vehicle to be scanned/reprogrammed; and (iii) instructing customers to then contact Elitek and utilize Elitek's equipment and/or services such that the combination as intended practices each of the elements of at least one claim of the Asserted Patents. *See* Compl. [Dkt. 1], ¶¶ 52, 53, 89, 90, 91, 128, 129. The Complaint further alleges that customers make and use the claimed inventions and practice the claimed methods by using Elitek's products and/or services, including but not limited to those identified above, that incorporate Elitek's EVS Plug-in Device, the Elitek Remote Service, and/or actions taken by the customers that assist in establishing communication, thereby directly infringing at least one claim of the Asserted Patents. *See*, *e.g.*, Compl. [Dkt. 1] ¶¶ 54, 91, 130.

### 3.      Elitek Contributes to the Infringement of the Asserted Patents

The Complaint also alleges that Elitek contributes to the infringement of the Asserted Patents because Elitek knows that Elitek's EVS Plug-in Device and Remote Service are made for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing uses. *See* Compl. [Dkt. 1], ¶¶ 55, 91, 131. Specifically, the Complaint alleges that Elitek's EVS Plug-in Device and/or the Elitek Remote Service, which it offers for sale and sells directly to its customers are designed to be used (and are used by customers and end-users) in an infringing manner. *Id.* As alleged in the Complaint, Elitek's EVS Plug-in Device and Elitek Remote Service are especially designed, made, or adapted for use in an infringing manner. Elitek's Remote Device and Remote Service have no substantial non-infringing uses and are material to the claimed inventions. *Id*. ¶¶ 57, 93, 133.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alterations omitted). Rule 12(b)(6) requires a complaint to set forth sufficient factual matter, if accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly.*, 550 U.S. at 570). "To meet this factual plausibility standard, the plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' based on 'more than a sheer possibility that a defendant has acted unlawfully.'" *Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*, No. 6:20-CV-00317, 2021 WL 4555608, at *1 (W.D. Tex. Oct. 4, 2021) (citing *Iqbal*, 556 U.S. at 678).

While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," a plaintiff is not required to prove his case at the pleading stage. *See Iqbal*, 556 U.S. at 678. "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the ground upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (ellipsis and internal quotation marks omitted). "[I]n resolving a motion to dismiss for failure to state a claim, the question is not whether the plaintiff will ultimately prevail, but whether the complaint was sufficient to cross the federal court's threshold.'" *Kirsch*, 2021 WL 4555608, at *1 (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)) (alterations omitted).

The Federal Circuit applies the law of the regional circuit to procedural motions, including motions to dismiss. *E.g.*, *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009). The Fifth Circuit views motions to dismiss under Rule 12(b)(6) with disfavor and they are rarely granted. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

IV.    **ARGUMENT**

A.    **The Complaint Sufficiently Pleads Direct Infringement.**

Defendant argues that the Complaint's "allegations of direct infringement are not plausible because it does not identify any facts from which one could infer that the vehicle communication device and the remote communication device continuously communicate so as to enable the scan tool to scan and program a vehicle *as if the scan tool was located proximate to the vehicle*." Mot. at 12. This argument improperly requires Repairify to set forth its claim constructions *and* prove its infringement case at the pleading stage and ignores the proper standards for pleading patent infringement, all of which are met here. *See, e.g.*, *Disc Disease*, 888 F.3d at 1258-60. Moreover, it is incorrect because the Complaint does plead facts giving rise to a reasonable inference that Elitek's scan tool and vehicle communication device "continuously communicate so as to enable the scan tool to scan and program a vehicle as if the scan tool was located proximate to the vehicle."

1.    **The Complaint Sufficiently Sets Out Facts to Meet the Pleading Standard for Patent Infringement.**

For purposes of Rule 12(b)(6) a plaintiff need only allege facts giving rise to a plausible inference and fair notice of infringement by identifying the accused products and alleging that the accused products meet "each and every element of at least one claim" of the asserted patents. *See Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335, 2019 WL 2601347, at *4 (W.D. Tex. June 25, 2019) (quoting *Disc Disease*, 888 F.3d at 1258-60); *Blackbird Tech v. Lyft, Inc.*, No. CV 19-566, 2020 WL 58535, at *3 (D. Del. Jan. 6, 2020) (denying Defendant Lyft's motion to dismiss).

Repairify's Complaint more than satisfies this standard by identifying the accused products—the EVS Plug-in Device and Remote Service (*e.g.*, Compl. ¶¶ 44-49, 51, 88, 127); and

setting forth detailed allegations that these products meet each and every element of claims 1, 5, and 6 of the '313 Patent (*id.* ¶¶ 51-85); claims 1 and 3 of the '500 Patent (*id.* ¶¶ 88-124); and claims 1-2 of the '334 Patent (*id.* ¶¶ 127-149), based on information presently available in the public domain. The Complaint further provides images of the interior of the accused device and images and descriptions of Elitek's available products and services taken from Elitek's Remote Services Webpage, identifying where certain features of the Asserted Claims are found in the accused product and service. *See, e.g.*, *id.* ¶¶ 44-49, 61, 63, and 98.

Defendant relies on platitudes, citing caselaw that is easily distinguishable. *See*, *e.g.*, Mot. at 11 (citing *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). For example, Defendant cites *Bot M8* for the proposition that "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Id*. Defendant relies on *Bot M8* for the assertion that "there must be specific factual allegations regarding the accused device from which it can be concluded that the accused device plausibly meets the claim limitations." Mot. at 12. Additionally, Defendant asks this Court to read *Bot M8* as requiring a plausible inference that each limitation of each asserted claim is met based on the court's construction of the limitations as informed by the specification and the prosecution history. *See, e.g.*, Mot. at 12, 14.

Defendant's reliance on *Bot M8* is misplaced here, first because Plaintiff's Complaint in this Action does more than recite the claim elements and conclude that they are met. Additionally, the court in *Bot M8*, as acknowledged by Defendant, "held that the plaintiff pled itself out of court" because its own allegations contradicted the requirements of the asserted

claims. *See* Mot. at 12 (citing *Bot M8*, 4 F.4th at 1353-54).[6]  But Defendant here fails to assert any facts or arguments—because it cannot—that the Complaint here alleges mutually exclusive or contradictory facts as did the complaint in *Bot M8*. This Court should therefore decline Defendant's invitation to misapply *Bot M8* to the instant case; it does not state the standard for sufficiently pleading a claim for patent infringement, which has been met here. *See, e.g.*, *MAZ Encryption Techs. LLC v. BlackBerry Ltd*., No. 6:15-CV-1167, 2016 WL 9275008, at *3 (E.D. Tex. June 7, 2016) ("Allegations to the level of detail contained in infringement contentions are not required at the pleading stage."), *report and recomm'n adopted*, 2016 WL 9275397 (June 27, 2016).

> ## 2. The Complaint Sufficiently Alleges Facts Giving Rise to a Plausible Inference of Direct Infringement.

Defendant argues that the entirety of Repairify's claims must be dismissed because the Complaint has not adequately alleged that its accused product infringes a single element of the asserted claims: "as if it were proximate to" by failing to allege that the accused product and service includes a "continuous connection." Mot. at 14-16. Plaintiff submits that is it properly alleged and moreover, the level of detail sought by Defendant is not required at the pleading stage. *E.g.*, *MAZ*, 2016 WL 9275008, at *3; *see also DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 470 (D. Del. 2016) (denying motion to dismiss where plaintiff supplied reasonable notice of plausible claim).

---

[6] *See also See Bot M8*, 4 F.4th at 1354 ("While a plaintiff need not prove infringement at the pleading stage, here, the FAC contains too much rather than too little, to the point that Bot M8 has essentially pleaded itself out of court. . . . [U]nfortunately for Bot M8, its allegations, which take a 'kitchen sink' approach to pleading, reveal an inconsistency that is fatal to its infringement case . . . ."). Such is not the case here.

Here, the Complaint provides images of the accused product and service from Defendant's website with descriptions of the features of the device (*e.g.*, Compl. ¶¶ 44-49), in comparison with the claim language (*E.g.*, Compl. ¶¶ 60-63, 67, 97-98), with accompanying descriptions of where the elements of the claim are seen in publicly available materials describing the accused product and service, (*e.g.*, Compl. ¶¶ 46, 48, 49, 61, 63). These allegations more than meet the requirements for pleading patent infringement, especially when the complaint is viewed as a whole. *See, e.g.*, *Encoditech*, 2019 WL 2601347, at *4.

### 3. The Claims, Specification, and Prosecution History Support Plaintiff's Well Pled Allegations.

Contrary to Defendant's arguments, the specification and prosecution history inform a reasonable construction of the phrases "as if it were located proximate to" and "continuous communication" that supports Plaintiff's well pled allegations. Defendant states, without more, that the distinguished systems of Cohen and Pruzan "like the accused product, all have a local device connected to a vehicle and a remote device that 'interrogates' the vehicle and then shuttles messages back and forth with the local device over the Internet." Mot. at 15. Beyond this self-serving conclusion, Defendant provides no further explanation of how its product works to provide its remote vehicle diagnostic and programming services without a bi-directional or continuous communication. *See id.*

Defendant additionally concludes that because a "customer needs to contact Elitek and then the call center technician starts/completes the procedure, communicates with the customer, emails results, and sends someone for an appointment," Defendant's product cannot infringe because "***[w]ith a person involved,*** the Remote Services cannot be considered to be 'on the bus' simulating a direct and continuous connection with a vehicle as if it were located proximate to said vehicle." *See* Mot. at 16. (citing Compl. ¶ 45).) This conclusion is unsupported by the plain

meaning of the terms, the specification, the prosecution history, or the distinguished references cited by Defendant, none of which suggests any reference was distinguished on the basis that it required human action or was not fully automated. *See* Mot. at 16. On the contrary, as acknowledged by the Defendant, the references were distinguished on the basis that the scan tool of the referenced systems was either (1) physically connected to the vehicle, or (2) lacked the "continuous bi-directional communication" of the present invention that solved the problem of maintaining the connection between the vehicle sub-system and the scan tool, such that it was convenient to carry out the scans and reprogramming from a remote location. *See* Mot. at 3-6 & Def.'s Ex. F at 10-11, Ex. G at 3-6.

The Complaint alleges facts from which it can be reasonably inferred that Defendant's accused product and service allows a substantially remote vehicle scan tool to communicate with the subsystems of a vehicle as if that tool were locally connected to the vehicle with a cable. *See, e.g.*, Compl. [Dtk. 1], ¶¶ 44-48 (showing Plaintiff's marketing materials for its "Remote Services" referencing "post/remote scan procedure" and that Defendant's vehicle-connection device is capable of "transmitting data over the internet via a wired option or WiFi"). Therefore, the Complaint gives rise to a plausible inference of infringement supported, rather than contradicted by the prosecution history, which is all that is required at this stage of the case. That Defendant may at some point in the case allege as a defense that its own product functions in substantially the same manner as references that were allegedly distinguished is irrelevant for purposes of a Rule 12(b)(6) motion to dismiss.

Defendant's reliance on *Amgen* is misplaced; the doctrine of prosecution history estoppel does not apply here to bar Plaintiff's literal infringement claims. *See* Mot. at 2 (citing *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019). In *Amgen*, "the patentee had

'clearly and unmistakably surrendered salt combinations used in the patented method of purifying proteins other than the particular combinations recited in the claims,'" which meant "plaintiff was estopped from establishing infringement by reliance on the doctrine of equivalents" attempting to assert infringement of unclaimed salts. *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 802 (N.D. Ill. 2020) (quoting *Amgen*, 931 F.3d at 1159) (alteration omitted). As in *Liqui-Box*, Plaintiff here alleges that [Defendant's] product *literally or equivalently* infringes its patent." *Id.* (emphasis added) (distinguishing *Amgen* and denying motion to dismiss where plaintiff disputed Defendant's interpretation of the prosecution). Defendant's citation to *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 535 U.S. 722, 733 (2002), (Mot. at 10 is similarly misplaced here for largely the same reasons: it improperly asks the court to determine questions of fact inappropriate on a motion to dismiss, and Plaintiff has properly pled literal infringement of the claims.

In other words, Defendant's "arguments boil down to objections to [Plaintiff's] proposed claim construction . . . a dispute not suitable for resolution on a motion to dismiss." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018). This Court should therefore reject Defendant's arguments that the prosecution history estops Plaintiff's *literal* infringement claims here. Even considering the material cited by Defendant from the specification, the prosecution history, and the claims, Repairify's Complaint more than sufficiently pleads facts giving rise to a plausible inference that Defendant's EVS Plug-in Device and Service directly infringes, under any reasonable interpretation of the terms "as if it were proximate to" and "continuous connection." Defendant's motion should therefore be denied.

**B.      The Complaint Sufficiently Pleads Indirect Infringement.**

Defendant's challenge to Repairify's claims for indirect infringement are also without merit. As shown above, Repairify has adequately pled direct infringement; therefore its indirect infringement claims (induced and contributory) are also properly pled. *See e.g., Proxense, LLC v. Target Corporation*, 2021 WL 3824690 at *3 (W.D. Tex., Jul. 28, 2021) (motion to dismiss claims of induced and contributory infringement denied where plaintiff has properly pleaded direct infringement); *Frac Shack Inc. v. AFD Petroleum (Texas) Inc.*, No. 7:19-CV-00026, 2019 WL 3818049, at *3 (W.D. Tex. June 13, 2019) (motion to dismiss denied where "plaintiff sufficiently pleaded defendants jointly with the third parties undertook all steps of the patents-in-suit.") (citation omitted)).

**1.      The Complaint Sufficiently Alleges Facts Showing Induced Infringement.**

Additionally, the Complaint includes descriptions of Defendant's marketing materials showing Defendant's active intent to induce infringement by customers, including technical information. *See, e.g.*, Compl. ¶¶ 44-49. This is exactly the type of information and materials consistently found to be sufficient to show active intent to induce infringement. *See*, *e.g.*, *Canon, Inc. v. TCL Electronics Holdings Ltd.*, 2020 WL 1478356, *5-*6 (E.D. Tex. 2020*)* (promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information); *Uniloc USA, Inc. v. Motorola Mobility LLC*, 2017 WL 3721064, *4-*5 (E.D. Tex. 2017) (training videos, demonstrations, brochures, installation and/or user guides, and websites); *Motiva Patents, LLC v. Sony Corporation HTC Corporation*, 2019 WL 4737051, *7-*11 (E.D. Tex. 2019) (advertisements, promotional materials, instruction manuals, directions to customers and end-users). The Complaint therefore sufficiently alleges facts showing Defendant induced infringement of the Asserted Patents.

**2.    The Complaint Sufficiently Alleges Facts Showing Contributory Infringement.**

The Court should also reject Defendant's alternate challenge to Repairify's contributory

infringement claims. Defendant argues the non-remarkable principle that the offering of services

alone cannot form the basis of a contributory infringement claim. Mot. at 17 (citing *PharmaStem*

*Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1347 (Fed. Cir. 2007)). But *PharmaStem* is

inapplicable; Repairify's infringement claims are not premised solely on the provision of

services, but include Elitek's EVS Plug-in Device sold to customers and components in Elitek's

call centers, i.e., a material or apparatus. Compl. ¶¶ 44-49, 55-56, 92-93, 131-132.

That Repairify also asserts that Defendant's Remote Services infringe the patents-in-suit

does not alter the result; Defendant's citations are in applicable. *See* Mot. at 18 (citing

*Rotor Blade, LLC v. Signature Util. Servs., LLC,* No. 2:21-cv-00190-AKK, 2021 WL 2581280

(N.D. Ala. Jun. 23, 2021) and *Brandywine Comm. Techs., LLC v. T-Mobile USA, Inc.*,

904 F. Supp. 2d 1260 (M.D. Fl. 2012)). In *Rotor Blade*, the patentee contended that a helicopter

saw qualified as a material or apparatus, but that instrument was not actually sold to third parties,

and therefore did not meet the requirements of Section 271(c). *Rotor Blade*, 2021 WL 2581280,

at *8-9. In *Brandywine,* the court refused to consider the patentee's vague explanation of the

accused device in its briefing because it was not sufficiently alleged in the complaint.

*Brandywine*, 904 F. Supp. 2d at 1272.

By contrast, Repairify's Complaint alleges facts showing that the EVS Plug-in Device is

sold to and used by third-party customers. *E.g.*, Compl. [Dkt. 1], ¶ 44 (marketing materials

stating "contact us and learn how to earn up to 100% of the remote device cost"); *id.* ¶¶ 55-56,

92, 93, 131, 132. The Complaint also sufficiently identifies the EVS Plug-in Device and other

physical components of the system, which are material to practicing the invention disclosed in

the Asserted Patents. For example, Paragraphs 44-49 contain product descriptions of the EVS Plug-in Device and screenshots from the Elitek product video demonstrating the product breakdown of the EVS Plug-in Device. Paragraph 61 of the Complaint identifies the EVS Plug-in Device and illustrates how the hardware meets the first element of Claim 1 of the '313 Patent. Similarly, Paragraph 98 of the Complaint illustrates how the EVS Plug-in Device meets the first portion of Claim 1 of the '500 Patent. Unlike the facts in *Brandywine,* Repairify's Complaint adequately identifies the material or apparatus that supports its contributory infringement claims.

### C.   Defendant's Far-Reaching Assertions of Inequitable Conduct, Indefiniteness, and Invalidity Set Out in Footnotes Are Not Properly Before the Court.

As further evidence of Defendant's intent to try this entire case in a motion to dismiss, Defendant argues, in a footnote and without support, that the Asserted Patents are unenforceable for inequitable conduct based on a failure to disclose office actions and the art cited in those office actions in a now-abandoned related application. Mot. at 6 n. 1. Defendant also asserts that the Asserted Patents are obvious based on prior art in that and another application. *Id.* Similarly, Defendant claims in a footnote that the term "as if it were proximate to the vehicle" is indefinite. Mot at 12 n. 2 (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014)). Defendant's arguments are improper and unsupported. *See, e.g.*, *Nautilus*, 572 U.S. at 910 (indefiniteness requires clear and convincing evidence); *GS Cleantech Corporation v. Adkins Energy LLC*, 951 F.3d 1310, 1324 (Fed. Cir. 2020) (inequitable conduct requires same). Defendant's invalidity and unenforceability arguments are improper and unsupported.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendant's motion should be denied in its entirety. Should this Court disagree, Plaintiff respectfully requests leave to amend its Complaint.

Dated:  December 20, 2021                    Respectfully submitted,

                                             By: */s/Eric H. Findlay*
                                             Eric H. Findlay
                                             State Bar No. 00789886
                                             Brian Craft
                                             State Bar No. 04972020
                                             Debby Gunter
                                             State Bar No. 24012752
                                             FINDLAY CRAFT, P.C.
                                             102 N. College Ave. Suite 900
                                             Tyler, Texas 75702
                                             Tel: (903) 534-1100
                                             Fax: (903) 534-1137
                                             Email: efindlay@findlaycraft.com
                                             Email: bcraft@findlaycraft.com
                                             Email: dgunter@findlaycraft.com

                                             Arthur Wellman (*admitted pro hac vice*)
                                             PRANGER LAW PC
                                             88 Guy Place, Suite 405
                                             San Francisco, CA 94105
                                             Tel: (415) 885-9800
                                             Fax: (415) 944-1110
                                             Email: awellman@prangerlaw.com

                                             ***Counsel for Plaintiff, Repairify, Inc.***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on December 20, 2021, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Eric H. Findlay*
Eric H. Findlay