IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

REPAIRIFY, INC.,                              §
               *Plaintiff*      §
                                 §
                                 §      **W-21-CV-00819-ADA**
-vs-                                          §
                                 §
KEYSTONE AUTOMOTIVE INDUSTRIES,               §
INC. d/b/a ELITEK VEHICLE SERVICES, and       §
DOES 1 and 20, inclusive,                     §
               *Defendants*

<u>**MEMORANDUM OPINION AND ORDER**</u>

Came on for consideration this date is Defendant's Motion to Dismiss Under Rule 12(b)(6), filed December 6, 2021. ECF No. 23 (the "Motion"). Plaintiff Repairify, Inc. ("Repairify") responded on December 20, 2021. ECF No. 27. Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services ("Elitek") replied on December 27, 2021. ECF No. 28. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** Defendant's Motion to Dismiss.

## I. BACKGROUND

On August 9, 2021, Repairify filed its complaint against Elitek for direct and indirect infringement of United States Patent Nos. 8,688,313 ("the '313 Patent"), No. 9,684,500 ("the '500 Patent"), and No. 10,528,334 ("the '334 Patent) (collectively the "Asserted Patents"). ECF No. 1 (the "Complaint"). The '500 Patent is a divisional of the '313 Patent, and the '334 Patent is a continuation of the '500 Patent. ECF Nos. 1-1, 1-2, 1-3. The Asserted Patents are directed at a system that includes "a remote call center that has the capabilities to diagnose and program a wide variety of vehicles implementing a wide variety of [on-board diagnostic port] communication protocols using the most recent scan tool software for a wide variety of vehicle manufactures and model years." ECF No. 1 ¶ 34. Repairify claims that this system is infringed

1

by Elitek's activities. *Id.* ¶¶ 51, 88, 127. On December 6, 2021, Defendant moved to dismiss Repairify's claims for direct and indirect infringement under Rule 12(b)(6). ECF No. 23.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is "a purely procedural question not pertaining to patent law," and so the law of the Fifth Circuit controls. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). When considering such motions, this Court "accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor." *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021).

Rule 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, . . . but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

A.      **Direct Infringement**

The United States Court of Appeals for the Federal Circuit's latest guidance on pleading standards for direct infringement comes from *Bot M8 LLC v. Sony Corporation of America*, 4 F.4th 1342 (Fed. Cir. 2021). *Bot M8* affirmed-in-part and reversed-in-part an order dismissing direct infringement claims on four patents for failure to sufficiently plead. *See id.* at 1358. Critically, the opinion denounced a "blanket element-by-element pleading standard for patent infringement," favoring instead a flexible inquiry into "whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 1352. The level of detail required to meet that standard depends on multiple factors, not limited to "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353. Under any standard, however, the complaint must support its entitlement to relief with "factual content," not just conclusory allegations that the accused product(s) meet every claim limitation. *Id.*

Under this clarified standard, the *Bot M8* Court reversed the dismissal of two direct infringement claims but affirmed the dismissal of two others. *Id.* at 1358. The complaint-at-issue alleged that the accused product, a PlayStation 4 ("PS4"), included "a control device that executes a 'fault inspection program' and 'completes the execution of the fault inspection program before the game is started,'" as required by two of the asserted patents. *Id.* at 1355. The complaint alleged four times that the PS4's CPU executes a "fault inspection program" on startup that completes before a game is started. *See id.* at 1355–56. But more critically, it identified specific error messages that the PS4 displays when faults are detected. For example, one error code stated: "Cannot start the PS4. Cannot access system storage." *Id.* at 1356. Another reported that "required information to start the application cannot be found." *Id.*

These allegations satisfied the Federal Circuit. The defendant argued that even if these error codes suggested that fault inspection began at startup, "they say nothing about whether it completes execution before a game starts," as recited in the claims. *Id.* The Court held that this demanded too much:

> Bot M8 need not "prove its case at the pleading stage." . . . The FAC plausibly alleges that the PS4 completes its execution of the fault inspection program before the game is started and supports those assertions with specific factual allegations. Nothing more is required.

*Id.* (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)).

The Court was less satisfied with infringement allegations for two other patents. One required "a board including a memory in which a game program . . . and an authentication program . . . are stored" separate from a "motherboard" (the "board limitation"). *See id.* at 1353. The plaintiff argued that its complaint provided pages and pages of evidence showing how the PS4 met every claim element, including allegations that three different components satisfied the board limitation. *See id.* The defendant argued that the complaint did not plead a correspondence between the board limitation and the three components the plaintiff identified. *Id.* at 1353–54. Rather, the complaint taught away from the board limitation by alleging that the PS4's motherboard stores the authentication program. *See id.*

The Federal Circuit agreed with the defendant, finding that the complaint's "kitchen sink" approach to pleading "reveal[ed] an inconsistency" fatal to its infringement case for that patent. *Id.* at 1354. Alleging that the authentication program resides on the PS4's motherboard rendered the plaintiff's "infringement claim not even possible, much less plausible." *Id.* The plaintiff succeeded in pleading itself out of court. *See id.* (citing *Nalco*, 883 F.3d at 1348–50).

Another asserted patent included claims requiring storing "game information including a mutual authentication program" on the same memory (the "mutual authentication" limitation).

4

*See id*. The plaintiff argued that its complaint identified four different components satisfying this limitation. *See id.* The Federal Circuit found these allegations conclusory. The complaint did not offer factual allegations supporting a "plausible inference that the PS4 actually stores the gaming information and mutual authentication program together." *Id.* They merely "track[ed] the claim language." *Id.* The *Bot M8* Court, therefore, affirmed dismissal of these claims.

The *Bot M8* opinion issued on the heels of *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, in which the Federal Circuit held that a complaint sufficiently pleaded direct infringement of claims directed to a spinal brace by "specifically identif[ying] the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleg[ing] that the accused products meet 'each and every element of at least one claim.'" 888 F.3d 1256, 1260 (Fed. Cir. 2018). The Court was satisfied that this provided the accused infringer sufficient notice because the case involved a simple technology and only four independent claims. *See id.*

Though *Bot M8* and *Disc Disease* were respectively decided under the laws of the United States Courts of Appeals for the Ninth and Eleventh Circuits, the Fifth Circuit's pleading standards are not materially distinct. These opinions, then, supply welcome guidance regarding pleading requirements for direct infringement.

### B.     Indirect Infringement

To allege indirect infringement, the plaintiff must plead specific facts sufficient to show that the accused infringer had actual knowledge of the patents-in-suit, or was willfully blind to the existence of the patents-in-suit. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent

infringement."). A showing of willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Glob.-Tech*, 563 U.S. at 769.

Similarly, to allege willful infringement, the plaintiff must plausibly allege the "subjective willfulness of a patent infringer, intentional or knowing." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 105 (2016). This requires a plaintiff to allege facts plausibly showing that the accused infringer: "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019).

### III. ANALYSIS

#### A.    Direct Infringement

Elitek asserts several arguments against Repairify's allegations of direct infringement. For the reasons stated below, the Court finds that Elitek's Motion should be denied with respect to Repairify's direct infringement claims.

##### 1.    *Claim Construction is Inappropriate at this Phase*

Elitek argues that the Complaint's allegations of direct infringement are not plausible because it does not identify any facts from which one could infer that the vehicle communication device and the remote communication device continuously communicate so as to enable the scan tool to scan and program a vehicle ***as if the scan tool was located proximate to the vehicle***. ECF No. 23 at 12 (emphases in original). Elitek alleges that "[n]owhere does the specification or the prosecution history inform, how to or what simulates this proximity. Therefore, this limitation is indefinite." *Id.* n.2; *see Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014) (A claim

6

is invalid for indefiniteness if its claims, read in light of the specification and the prosecution history, fail to inform those skilled in the art about the scope of the invention with reasonable certainty.).

Repairify argues that claim construction is inappropriate at this phase. ECF No. 27 at 2. Repairify contends Elitek's entire argument rests on the Court's construction of "continuous connection" and "as if it were proximate to" while failing to provide a proposed construction of either term or indication of how the accused instrumentalities operate. *Id.* Repairify argues that it has properly pleaded infringement and does not need unclaimed "equivalents" to plead infringement. *Id.*

The instant Motion hinges on this Court adopting Elitek's proposed constructions for both "continuous connection" and "as if it were proximate to." Disposition of this case based on the construction or prosecution history of these terms is premature. And while Elitek argues that the Court need not construe any claims before granting the Motion, it cites to a Federal Circuit opinion affirming summary judgment of infringement claims where the appellant appealed the district court's claim construction of the term "separate" and consequent grant of summary judgment. *See Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 993 (Fed. Cir. 2003). Unlike *Springs Window Fashions*, this case proceeds at the motion to dismiss stage, with briefing submitted well before the scheduled claim construction hearing. As of the Motion, neither party had completed claim construction discovery or briefed claim construction issues. *Unification Techs. LLC v. Dell Techs., Inc.*, No. 6:20-CV-00499-ADA, 2021 WL 1343188, at *3 (W.D. Tex. Jan. 28, 2021) ("a 12(b)(6) motion is not the appropriate procedure for identifying inconsistent direct infringement contentions. Those are premature assertions that are best addressed in claim construction or non-infringement positions.").

Expectedly, the parties proposed different constructions for each of these terms. ECF No. 48 at 3. But "[r]esolution of that dispute, even if part of the record that can be considered, is

particularly inappropriate in the Rule 12(b)(6) context." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018); *see also id.* ("But Defendants' arguments boil down to objections to Nalco's proposed claim construction for 'flue gas,' a dispute not suitable for resolution on a motion to dismiss."). Quite simply, the parties sufficiently dispute the scope of the prosecution history, as illustrated by the proposed constructions, such that Elitek's Motion is better suited for resolution at a later summary judgment stage. The Court will not entertain the Motion on these grounds.

### 2.   *The Complaint Sufficiently Alleges Facts Giving Rise to a Plausible Inference of Direct Infringement*

Elitek argues that the Complaint does not allege facts that the EVS Plug-In Device and Remote Services meet the "as if it were located proximate to said vehicle" limitation required by the claims of the Asserted Patents. ECF No. 23 at 14. The patentee stated that the "only way to achieve this type of functionality is to provide a continuous connection . . . [that,] in essence inserts the diagnostic tool as a node in the vehicle's diagnostic data bus." *Id.* Elitek further argues that the Complaint does not allege anywhere that the accused product includes a continuous connection. *Id.* For example, per Elitek, the Complaint fails to allege any facts that the vehicle has a continuous connection, *i.e.,* stream of continuous data, with a remote device such that the remote device is scanning and programming the vehicle as if it were located proximate to the vehicle. ECF No. 23 at 14. Instead, the Complaint allegedly only "identifies that there is some type of communication when it identifies that the call center technician starts/completes the pre-post/remote scan procedure of the EVS Plug-In Device." *Id.* But lacking are facts or allegations as to how it is communicated through a continuous connection. *Id.* at 14–15.

Repairify responds that the Complaint more than satisfies this standard by identifying the accused products—the EVS Plug-in Device and Remote Service, *e.g.*, ECF No. 1 at ¶¶ 44–49,

51, 88, 127; and setting forth detailed allegations that these products meet each and every element of claims 1, 5, and 6 of the '313 Patent, *id.* ¶¶ 51–85; claims 1 and 3 of the '500 Patent *id.* ¶¶ 88–124; and claims 1 and 2 of the '334 Patent, *id.* ¶¶ 127–149, based on information presently available in the public domain. ECF No. 27 at 11–12. The Complaint further provides images of the interior of the accused device and images and descriptions of Elitek's available products and services taken from Elitek's Remote Services Webpage, identifying where certain features of the Asserted Claims are found in the accused product and service. *See, e.g.*, *id.* ¶¶ 44–49, 61, 63, and 98.

Repairify submits its allegations are sufficient and that the level of detail sought by Elitek is not required at the pleading stage. *See e.g., MAZ Encryption Techs. LLC v. BlackBerry Ltd.,* No. 6:15-CV-1167, 2016 WL 9275008, at *3 (E.D. Tex. June 7, 2016) ("Allegations to the level of detail contained in infringement contentions are not required at the pleading stage."), *report and recomm'n adopted*, 2016 WL 9275397 (June 27, 2016); *see also DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 470 (D. Del. 2016) (denying motion to dismiss where plaintiff supplied reasonable notice of plausible claim). Here, the Complaint provides images of the accused product and service from Elitek's website with descriptions of the features of the device, *e.g.,* ECF No. 1 at ¶¶ 44–49, in comparison with the claim language*, e.g., id.* ¶¶ 60–63, 67, 97–98, with accompanying descriptions of where the elements of the claim are seen in publicly available materials describing the accused product and service, *e.g., id.* ¶¶ 46, 48, 49, 61, 63. These allegations more than meet the requirements for pleading patent infringement, especially when the Complaint is viewed as a whole. *See, e.g.*, *Encoditech*, *LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335, 2019 WL 2601347, at *4 (W.D. Tex. June 25, 2019).

Elitek also states that the above paragraphs merely allege the accused product operates as the prior art allegedly did, thereby rendering it replete with implausible claims. ECF No. 28 at 4. For example, Cohen discloses the use of a transceiver device connected to a vehicle through its on-board diagnostic port to send to and receive and interpret data transmitted from a wireless router connected to a computer through a wireless network**,** such as the Internet. ECF No. 24-17 at ¶¶ 13–21, 30–37, Fig. 2. And Pruzan discloses a protocol converter connected to the vehicle's data bus that communicates with a remote diagnostic system via a wireless link such as the Internet. ECF No. 24-18 at 3:37–4:39, Fig. 1. These prior art systems all have a local device connected to a vehicle and a remote device that "interrogates" the vehicle and then shuttles messages back and forth with the local device over the Internet. ECF No. 23 at 15. Per Elitek, the patentee made clear that these types of systems do not meet the limitation of having a continuous connection that in essence inserts the remote tool as a node on the vehicle's bus to scan and program a vehicle. *Id.*

Repairify responds that Elitek's characterizations of the distinguished prior art are improper in this Motion and that Elitek left out telling information. ECF No. 27 at 7. For example, in distinguishing Cohen, the Applicant noted that the continuous bi-directional communication, "which could exist across whatever medium is employed (Ethernet, Wi-Fi, cellular, etc.), between the vehicle and the remote tool," was necessary. *Id.* The "continuous bi-directional communication" was what was missing from the references to solve the problem of maintaining the connection between the vehicle sub-system and the scan tool, such that it was feasible to perform scans and reprogramming from a remote location. *Id.* Repairify alleges that Elitek states that the distinguished systems of Cohen and Pruzan "like the accused product, all have a local device connected to a vehicle and a remote device that 'interrogates' the vehicle and

then shuttles messages back and forth with the local device over the Internet." *Id.* at 15. Beyond this self-serving conclusion, Repairify argues that Elitek provides no further explanation of how its product works to provide its remote vehicle diagnostic and programming services without a bi-directional or continuous communication. *See id.*

Elitek argues other factual allegations in the Complaint further suggest that the Accused Product does not meet the "as if it were located proximate to said vehicle" limitation. ECF No. 23 at 16. For instance, the Complaint has allegations requiring human interaction: Elitek customers contact Elitek and then a call center technician starts/completes the procedure, communicates with the customer, emails results, and sends someone for an appointment. ECF No. 1 ¶ 45. Remote Services cannot be considered to be "on the bus" simulating a direct and continuous connection with a vehicle as if it were located proximate to said vehicle when there is a person involved. *Id.* Therefore, Elitek concludes the facts alleged in the Complaint render the assertions implausible.

Repairify points out Elitek's argument is unsupported by the plain meaning of the terms, the specification, the prosecution history, or the distinguished references cited by Elitek, none of which suggests any reference was distinguished on the basis that it required human action or was not fully automated. *See* ECF No. 27 at 14–15. As acknowledged by Defendant, the references were distinguished on the basis that the scan tool of the referenced systems was either (1) physically connected to the vehicle, or (2) lacked the "continuous bi-directional communication" of the present invention that solved the problem of maintaining the connection between the vehicle sub-system and the scan tool, such that it was convenient to carry out the scans and reprogramming from a remote location. *See* ECF No. 23 at 3–6; ECF No. 24-6 at 10–11; ECF No. 24-7 at 3–6.

The Court finds that the Complaint sufficiently alleges facts giving rise to a plausible inference of direct infringement. Under Rule (12)(6), a plaintiff need only allege facts giving rise to a plausible inference and fair notice of infringement by identifying the accused products and alleging that the accused products meet "each and every element of at least one claim" of the asserted patents. *See Encoditech*, 2019 WL 2601347, at *4 (quoting *Disc Disease*, 888 F.3d at 1258–60); *Blackbird Tech v. Lyft, Inc.*, No. CV-19-566, 2020 WL 58535, at *3 (D. Del. Jan. 6, 2020) (denying Defendant Lyft's motion to dismiss). The Court is convinced that Repairify meets that standard. The Complaint provides images and descriptions of the elements of the claims which meets the standard of more than merely alleging each claim; sufficient factual assertions support Repairify's allegations. *See* ECF No. 1 at ¶¶ 60–63, 67, 97–98; *See Disc Disease*, 888 F.3d at 1260. Elitek's characterization regarding human interaction and prior art are improper at this time. *Actus*, 2010 U.S. Dist. LEXIS 11398 at *6. Elitek's reliance on *Bot M8* is misplaced. Repairify goes beyond reciting the claim elements and claiming they are met. *Id.* Unlike here, *Bot M8* found that the plaintiff "essentially pleaded itself out of court." *Bot M8*, 4 F.4th at 1354. Repairify's Complaint does not contain internal inconsistencies such that it has pleaded itself out of court. Additionally, Repairify's Complaint sufficiently puts Elitek on notice of the accused product and alleged infringement with the necessary factual assertions. Therefore, the Court finds Repairify has adequately pleaded direct infringement.

## B.      Indirect Infringement

As a preliminary matter, Elitek argues that Repairify fails to plausibly plead indirect infringement because it fails to plausibly plead direct infringement. ECF No. 23 at 1, 16. Thus, Repairify contends that the claims for induced and contributory infringement should be dropped. *Id.* at 17. As the Court stated above, Repairify has sufficiently pleaded a claim for direct infringement; consequently, the indirect infringement claims survive. *See* ECF No. 1 ¶¶ 44–49

(descriptions and allegations of marketing materials showing Defendant's active intent to induce infringement by customers, including technical information).

Elitek separately argues that Repairify's claims of contributory infringement are limited to the sale of infringing material or apparatuses, excluding the sale of services. *Id.* In conjunction, they argue that the Complaint points to the combination of Elitek's EVS Plug-in Device and Elitek's Remote Services as the accused product, insinuating that Repairify is attempting to claim that Elitek's service is the source of indirect infringement. *Id.* Furthermore, Elitek argues that the Complaint only asserts vague allegations towards the "product and services" but fails to identify specific infringing components or apparatuses, citing both *Rotor Blade, LLC v. Signature Util. Servs., LLC* ("*Rotor Blade*") and *Brandywine Communs. Techs., LLC v. T-Mobile USA, Inc* ("*Brandywine*"). *Id.* at 18.

Repairify responds by claiming that the Complaint adequately demonstrates Elitek's active intent to induce infringement by customers by including Elitek's marketing materials of the accused system. ECF No. 27 at 17. They also respond to the accusation that the Complaint points to an infringing service by noting that the infringement claims include Elitek's EVS Plug-in Device, which is sold to customers, and components in Elitek's call centers. *Id.* at 18. They also distinguish *Rotor Blade* and *Brandywine* from the present litigation by pointing to the fact that Repairify's Complaint alleges facts that would show that the EVS Plug-in Device is used by and sold to third-parties. *Id.*

Elitek's reply asserts that because Repairify does not explicitly address the induced infringement in the response, Repairify's arguments on the issue should be disregarded. ECF No. 28 at 9. The Court is not persuaded. Elitek also reasserts that because the Complaint combined

the EVS Plug-in Device and the "Remote Service" into a single alleged product, the accused product is directed at a service that cannot infringe.

To begin, it is critical to address whether "EVS Plug-in Device and Remote Services" is a product being sold or a service being provided. A person shall be liable as a contributory infringer if that person:

> [O]ffers to sell or sells within the United States . . . a ***component*** of a patented machine, manufacture, combination or composition, or a ***material*** or ***apparatus*** for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use . . .

35 U.S.C. § 271 (emphasis added).

The statute notably does not include sold services. As a result, Elitek points to *PharmaStem Therapeutics, Inc. v. ViaCell Inc.*, where the plaintiff claimed that the blood taken from a newborn's umbilical cord was contributory infringement when it was sold to other people. 491 F.3d 1342, 1356 (Fed. Cir. 2007). The Federal Circuit found that this was not contributory infringement because the blood was never the property of the service provider, but instead "remained the property of the families who engaged their services." *Id.* at 1358. Therefore, "the defendants were never the owners of the blood and thus never 'sold' the blood to the families when it was needed." *Id.* Thus, Elitek argues that the EVS Plug-in Device is never "sold" to consumers because it is incorporated into the service. But this is an inaccurate portrayal of the reality of Elitek's business. On Elitek's website, there is a heading that states, "CONTACT US AND LEARN HOW TO EARN UP TO 100% OF THE REMOTE DEVICE COST." ECF No. 1 at 13. It is clear from the website and Repairify's Complaint that Elitek does sell the EVS

Plug-in Device to the end consumer, separate from the services it provides, distinguishing this case from *PharmaStem*.

Additionally, Elitek contends that because Repairify's Complaint groups the EVS Plug-in Device and Remote Services into a single product, it should be interpreted in its entirety as a service. The Court is not persuaded by Elitek's argument that "EVS Plug-in Device and Remote Services" is either too vague to create a sufficient claim or that the combination of services and apparatus invalidates every claim.

First, Elitek's citations to *Brandywine* and *Rotorblade* are insufficient to show that Repairify's Complaint is vague. In *Brandywine*, the court rejected the plaintiff's *expanded* definition of "Accused Services and Products" in its briefing and instead only looked at the explanation provided in the original complaint. *Brandywine Communs. Techs., LLC v. T-Mobile USA, Inc.*, 904 F.Supp.2d 1260, 1271–72 (M.D. Fl. 2012). Here, Repairify points directly towards the EVS Plug-in Device and the site where Elitek attempts to sell the product and service in the Complaint. ECF No. 1 at 1. The Complaint includes a short video breakdown of the remote device as well as callouts to relevant features of the product. ECF No. 1 at ¶¶ 44–49. It is clear from Repairify's Complaint that the EVS Plug-in Device is the bedrock of the contributory infringement claim, not the services. Furthermore, *Rotorblade* is easily distinguishable because the infringing product was not actually sold to third-parties, unlike the EVS Plug-in Device. *See Rotor Blade, LLC v. Signature Util. Servs., LLC*, No. 2:21-cv-00190-AKK, 2021 WL 2581280 (N.D. Ala. Jun. 23, 2021).

As a result, the claims for indirect and contributory infringement were sufficiently pleaded in the Complaint.

### IV. CONCLUSION

It is therefore **ORDERED** that Elitek's Motion to Dismiss is **DENIED**.

SIGNED this 6th day of July, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

16