**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| REPAIRIFY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:21-cv-00819-ADA |
| | ) | |
| v. | ) | |
| | ) | |
| KEYSTONE AUTOMOTIVE INDUSTRIES, INC. d/b/a ELITEK VEHICLE SERVICES, and DOES 1 through 20, inclusive, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT OR IN THE ALTERNATIVE MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ....................................................................................................................2

III. REPAIRIFY DOES NOT HAVE STANDING TO ASSERT COUNTS II AND III OF THE COMPLAINT. ......................................................................................................4

IV. TO THE EXTENT COUNTS II AND III ARE NOT DISMISSED, ELITEK REQUESTS LEAVE TO AMEND ITS INVALIDITY CONTENTIONS ........................7

V. CONCLUSION ......................................................................................................................9

# **TABLE OF AUTHORITIES**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
   625 F.3d 1359 (Fed. Cir. 2010)..................................................................................................4

*Baer's Furniture Co., Inc. v. Comcast Cable Communications, LLC*,
   No. 20-61815-CIV, 2022 WL 2804858 (S.D. Fla. Jun. 23, 2022).........................................4, 5

*Epistar Corp. v. Lowe's Companies Inc.*,
   No. 6:20-CV-00420-ADA (W.D. Tex. Aug. 4, 2021) ...............................................................7

*Flexiworld Techs., Inc. v. Roku, Inc.*,
   No. W-20-CV-00819-ADA, 2022 WL 2019297 (W.D. Tex. Jun. 6, 2022).......................4, 6, 7

*In re Hubbell*,
   709 F.3d 1140 (Fed. Cir. 2013)..................................................................................................8

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017).......................................................................................4, 5, 6, 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................................................4

*Paradise Creations, Inc. v. UV Sales, Inc.*,
   315 F.3d 1304 (Fed. Cir. 2003)..................................................................................................4

*TYR Tactical, LLC v. Protective Prods. Enterprises, LLC*,
   No. 15-CV-61741, 2016 WL 10647315 (S.D. Fla. Oct. 11, 2016)............................................5

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................................1, 4

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services ("Elitek") hereby moves to dismiss Counts II and III of Plaintiff Repairify Inc.'s ("Repairify") Complaint for Patent Infringement because the Court lacks subject matter jurisdiction to adjudicate those Counts. Repairify's Complaint alleges that Elitek infringes United States Patent Nos. 8,688,313 ("the '313 Patent") (Count I), 9,684,500 ("the '500 Patent") (Count II), and 10,528,334 ("the '334 Patent") (Count III). Dkt. No. 1. Only the owner of a patent has constitutional standing to sue for patent infringement. Repairify, however, is not the owner of the '500 and '334 Patents. The assignment Repairify relies on to demonstrate that it acquired ownership of the asserted patents only assigned the '313 Patent; it did not assign any other patents or applications. Hence, Repairify is not the owner of the '500 and '334 Patents and has no constitutional standing to sue for infringement of either of those patents. Therefore, Elitek respectfully requests that the Court dismiss Counts II and III of the Complaint for lack of subject matter jurisdiction.

In the alternative, Elitek requests leave to amend its invalidity contentions. Elitek contends that the '500 and '334 Patents are invalid based on obviousness-type double patenting. Repairify did not produce the assignment of the '313 Patent until recently. After reviewing this assignment, Elitek identified Repairify's lack of ownership of the '500 and '334 Patents. Then, Elitek considered issues that might be impacted because of a lack of common ownership of the asserted patents and identified an obviousness-type double patenting issue with the '500 and '334 Patents over the '313 Patent. Since the assignment was produced a few weeks ago, Elitek has been diligent in raising this issue with the Court. Furthermore, Repairify will not be prejudiced by any such amendment because the parties have not yet begun expert discovery. Therefore, to the extent Counts II and III are not dismissed from the case, Elitek requests leave to amend its invalidity

contentions to add allegations that the '500 and '334 Patents are invalid for obviousness-type double patenting in view of the '313 Patent.

## II. BACKGROUND

The '313 Patent was filed on December 23, 2010. Dkt. No. 1-1. On January 10, 2011, the inventors of the '313 Patent executed an assignment assigning to Automotive Electronic Solutions, LLC "the full, exclusive and entire right, title, and interest in and to said application, in and to any divisions, continuations, and reissues thereof, and in and not all inventions and improvements disclosed and described in said application." Declaration of Joseph Saltiel ("Saltiel Decl.") at Ex. A. Shortly thereafter, Automotive Electronic Solutions, LLC changed its name to AES Technologies, LLC. *Id.* at Ex. B. On March 19, 2014, a division patent application of the '313 Patent application was filed, which would eventually issue as the '500 Patent. Dkt. No. 1-2. On April 1, 2014, the U.S. Patent and Trademark Office issued the '313 Patent. Dkt. No. 1-1. Therefore, prior to June 3, 2015, AES Technologies, LLC owned the '313 Patent and the application which led to the '500 Patent. Saltiel Decl. at Exs. A-B. On June 12, 2017, a continuation application, which eventually issued as the '334 Patent and claimed priority to the '500 Patent, was filed and issued on January 7, 2020. Dkt. No. 1-3.

On June 3, 2015, Repairify executed an Asset Purchase Agreement with AES Technologies, LLC that included a form patent assignment agreement. Saltiel Decl. at Ex. C. On July 28, 2015, AES Technologies, LLC ("Assignor") executed the form patent assignment agreement ("Assignment") assigning the '313 Patent to Repairify ("Assignee"). *Id.* at Ex. D. The Assignment provides:

> **WHEREAS,** in connection with the transactions contemplated by the Asset Purchase Agreement, Assignor wishes to assign to Assignee, and Assignee wishes to acquire, all of Assignor's right, title and interest in, to and under the patent described on Schedule A (the "Patent").

  **NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby agrees:

  1. <u>Assignment.</u>  Assignor hereby sells, conveys, assigns, transfers and sets over to Assignee the entire right, title and interest in, to and under the Patent, for the United States and for all foreign countries, including, without limitation, all corresponding rights that are or may be secured under the laws of the United States or any foreign country, now or hereafter in effect, for Assignee's own use and enjoyment, and for the use and enjoyment of Assignee's successors, assigns or other legal representatives, as fully and entirely as the same would have been held and enjoyed by Assignor if this Assignment had not been made, together with all rights to collect income, royalties, damages, products, proceeds and payments due or payable as of the Effective Date or thereafter with respect to the foregoing, including all claims against third parties for past, present or future infringements or misappropriations thereof or other conflicts therewith, and the right to sue and recover for past, present or future infringements or misappropriations of or other conflicts with any of the foregoing, the right to recover damages or lost profits in connection therewith, and all other corresponding rights throughout the world.

  \*  \*  \*  \*  \*  \*  \*

  3. <u>Governing Law.</u>  This Assignment is to be governed and construed in accordance with federal bankruptcy law, to the extent applicable, and where state law is implicated, the laws of the State of Florida shall govern, without giving effect to the choice of law principles thereof, including all matters of construction, validity and performance.

  \*  \*  \*  \*  \*  \*  \*

<u>SCHEDULE A</u>

| Patent | Application No.: | Application Date: | Patent No.: | Issue Date: |
|---|---|---|---|---|
| Remote Vehicle Programming System and Method | 12/977,830 | 12/23/2010 | US 8,688,313 | 4/1/2014 |

*Id.*  After this assignment was executed, the '500 Patent issued, and, again, the '334 Patent, which is a continuation of the '500 Patent, was filed and issued.  Dkt. Nos. 1-2, 1-3.

## III.    REPAIRIFY DOES NOT HAVE STANDING TO ASSERT COUNTS II AND III OF THE COMPLAINT.

For a dispute to be within the subject-matter jurisdiction of a federal court, the plaintiff must possess standing pursuant to Article III, also known as constitutional standing. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  To assert patent infringement, "the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (citation omitted); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1321 (Fed. Cir. 2017); *Flexiworld Techs., Inc. v. Roku, Inc.*, 2022 WL 2019297, at *2 (W.D. Tex. June 6, 2022).  "Once standing is called into question, the party asserting standing 'bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.'" *Id.* at *3 (citation omitted).  "If the court determines that the plaintiff lacked standing at the time it filed suit, the court lacks subject-matter jurisdiction and must dismiss the case or cause of action under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Id.* (citation omitted).  A lack of standing cannot be fixed by a post-filing assignment and the filing of an amended complaint. *See Abraxis*, 625 F.3d at 1364 ("'if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured' after the inception of the lawsuit") (citation omitted).

"Courts are to 'apply state law to contractual disputes and interpretations of the parties' patent assignment agreements.'" *Flexiworld*, 2022 WL 2019297, at *2 (citing *Intellectual Ventures*, 850 F.3d at 1320).  Here, the Assignment states that the laws of the State of Florida shall govern. Saltiel Decl. at Ex. D.  Under Florida law, a court must interpret the contract in accordance with its plain meaning. *Baer's Furniture Co., Inc. v. Comcast Cable Communications, LLC,* 2022 WL 2804858, at *5 (S.D. Fla. June 23, 2022).  A court should not resort to outside evidence to

4

construe the contract unless an ambiguity exists.  *Id.*  An ambiguity does not exist simply because a contract requires interpretation or fails to define a term.  *TYR Tactical, LLC v. Protective Prods. Enterprises, LLC,* 2016 WL 10647315, at *3 (S.D. Fla. Oct. 13, 2016).  "'[I]t is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain.'"  *Id.* (citations omitted).

Per its plain meaning, the Assignment did not assign ownership of the '500 and '334 Patents to Repairify.  First, the Assignment refers to the patent being assigned in the singular, *i.e.,* "the patent described on Schedule A (the 'Patent')."  Saltiel Decl. at Ex. D.  Thus, the Assignment is only conveying ownership of one thing, the '313 Patent.  Second, Schedule A of the Assignment only identifies the '313 Patent and no other patents or applications.  *Id.*  Because there were other pending applications at the time of the application, such as the application leading to the '500 Patent (Dkt. No. 1-2), if the Assignor intended to assign these other applications, the Assignment would have identified those other applications in the Assignment.  *See Intellectual Ventures,* 850 F.3d at 1323.  Third, the Assignment does not specify that any divisions, continuations, and reissues of the '313 Patent are included in the assignment.  Saltiel Decl. at Ex. D.  Such language is typically included in assignments when the entire invention, including related applications, is being assigned.  *See, e.g.,* Saltiel Decl. at Ex. A (using this type of language in the initial assignment from the inventors of the asserted patents to Automotive Electronic Solutions, LLC).

Fourth, the Assignment specifies "the entire right, title and interest in, to and under the Patent" instead of referring to the *application* or the *invention* disclosed in the patent.  *Id.* at Ex. D.  Using the language "in and to said patents" in an assignment does not convey ownership of the entire invention disclosed in the application or to any related applications such as continuations and divisions.  *Intellectual Ventures,* 850 F. 3d at 1323.  In *Intellectual Ventures*, the plaintiff

argued that the language "in and to said patents" includes all continuation and future applications because those applications are necessarily bound to the same inventive subject matter of the parent patent application. *Id.* The Federal Circuit rejected that argument. *Id.* There, the assignment expressly identified some patents and applications but not all the related applications. *Id. Intellectual Ventures* reasoned that if the assignor intended to assign all the related applications, it knew how to do so and would have done so if it intended to do so. *Id.* Instead, the assignor only expressly identified some, indicating that the ones that were not expressly listed were not assigned. *Id.* Therefore, the language "in, to, and under the Patent" in the Assignment does not convey ownership of a related applications not expressly identified.

Here, the Assignment expressly listed the '313 Patent and no other patents or applications. The '500 Patent application was pending at the time of the Assignment. Dkt. No. 1-2. Hence, if the Assignor intended to include the application that led to the '500 Patent (or any future or related applications such as the '334 Patent), it would have expressly listed additional patent applications in the Assignment, including Schedule A. The Assignor, however, did not.

The language "all corresponding rights that are or may be secured under the laws of the United States or any foreign country" in the Assignment does not alter the plain meaning that the '500 and '334 Patents were not assigned to Repairify. This Court has also previously considered similar language in a contract and rejected such an argument. In *Flexiworld,* this Court considered a contract that included the language "rights related thereto or arising under." *Flexiworld*, 2022 WL 2019297 at *6. Following *Intellectual Ventures, Flexiworld* held that any generic reference to rights such as "rights related thereto or arising thereunder" does not mean that unnamed related patent applications are also being assigned. *Id.* Instead, the specific list of patents in the assignment governed what was being assigned. *Id.* In doing so, *Flexiworld* applied the doctrine

of ejusdem generis: when general terms are followed or preceded by specific terms, the specific terms control. *Id.* Here, the Assignment's reference to "all corresponding rights" is insufficient to be considered a reference to all related patent applications because the Assignment expressly identified only the '313 Patent as being assigned. Instead, the language "all corresponding rights" is merely a reference to the rights associated with the '313 Patent. *See Intellectual Ventures,* 850 F. 3d at 1323.

Therefore, the plain meaning of the Assignment is not ambiguous; the Assignment only assigned the '313 Patent to Repairify and not any other patents or applications. Hence, the Court does not need to consider any evidence outside of the Assignment. And because the Assignment is limited to the '313 Patent, Repairify did not own the '500 or the '334 Patents at the time the Complaint was filed. Thus, Repairify lacked constitutional standing to bring suit on the '500 and '334 Patents, mandating dismissal of Counts II and III.

## IV. TO THE EXTENT COUNTS II AND III ARE NOT DISMISSED, ELITEK REQUESTS LEAVE TO AMEND ITS INVALIDITY CONTENTIONS

Upon a showing of good cause, a court may permit a party to amend its contentions. *Epistar Corp. v. Lowe's Companies Inc.*, 6:20-CV-00420-ADA, Dkt. No. 67, at 3 (W.D. Tex. Aug. 4, 2021) (citation omitted). Courts evaluate four factors to determine whether there is good cause to modify the scheduling order: (1) the reason for the delay and whether the party has been diligent; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure any prejudice. *Id.*

On July 7, 2022, Elitek served its first set of discovery requests on Repairify. Saltiel Decl. at Ex. E. Although Repairify should have responded to Elitek's discovery requests by August 8, 2022, it did not. *Id.* at Ex. F. Instead, after requesting several extensions of time to respond, on August 29, 2022, Repairify served its responses to those discovery requests, but Repairify did not

7

produce any responsive documents with its responses. *Id.* at Exs. F-G, L-M. Without the benefit of documents from Repairify, on August 31, 2022 (per the agreed schedule), Elitek served its final invalidity contentions. Dkt. No. 46; Saltiel Decl. at Ex. H. After several meet and confers, several empty promises to produce documents, and three letters regarding Repairify's lack of document production, Repairify, on September 28, 2022, produced a limited number of documents responsive to Elitek's discovery requests. *Id.* at Exs. I-N. Included within this limited production was the aforementioned Asset Purchase Agreement and Assignment. *Id.* at Exs. C-D, L.

After the Assignment was produced, Elitek reviewed the Assignment and observed that it did not include the '500 and '334 Patents. *Id.* at Ex. D. Based on Repairify's production of the Assignment, Elitek considered whether the lack of common ownership between the asserted patents raised other issues. In considering the lack of common ownership of the asserted patents, Elitek reviewed the terminal disclaimers filed during prosecution of the asserted patents because patents need to be commonly owned for a terminal disclaimer to be effective. *See In re Hubbell*, 709 F.3d 1140, 1148 (Fed. Cir. 2013). During this review, Elitek noted that none of the terminal disclaimers submitted during the prosecution of the '500 and '334 Patents were to the '313 Patent. Saltiel Decl. at Exs. O-P. Because there are no such terminal disclaimers, Elitek contends that the '500 and '334 Patents are invalid for obviousness-type double patenting over the '313 Patent. *See Hubbell,* 709 F.3d at 1145-51 (explaining that a patent is invalid for obviousness-type double patenting when, absent a terminal disclaimer, the claims are not patentably distinct, *i.e.,* obvious over or anticipated by, the claims of an earlier patent that either has the same inventors or common ownership).

This Motion comes only several weeks after Repairify's production of the Assignment. *Id.* at Ex. L. Thus, Elitek was diligent in its review of the materials and bringing this Motion,

especially in light of the repeated delays by Repairify in producing the Assignment. The issue of whether two of the three patents being asserted are invalid is important for the resolution of this case. Furthermore, Repairify will not suffer any prejudice. The issue of obviousness-type double patenting will not affect any fact discovery because this issue will be addressed through expert reports and expert discovery. Because Elitek has not served its expert report on invalidity and because Repairify's responsive expert report on invalidity is not due until February 2023, Repairify will not suffer any prejudice if Elitek is allowed to amend its invalidity contentions. *See* Dkt. No. 31. Therefore, to the extent the '500 and '334 Patents are not dismissed from the case, Elitek respectfully requests leave to amend its invalidity contentions to include that the '500 and '334 Patents are invalid for obviousness-type double patenting over the '313 Patent.

## V. CONCLUSION

For the foregoing reasons, Elitek respectfully requests that the Court dismiss Counts II and III of the Complaint because the Court does not have subject matter jurisdiction for those counts. If Counts II and III are not dismissed, Elitek requests leave to amend its invalidity contentions to include allegations that the '500 and '334 Patents are invalid for obviousness-type double patenting over the '313 Patent.

Dated:  October 24, 2022                                  Respectfully submitted,

*/s/ Barry F. Irwin*
Barry F. Irwin, P.C. (admitted *pro hac vice*)
Joseph A. Saltiel (admitted *pro hac vice*)
Daniel Sokoloff (admitted *pro hac vice*)
**IRWIN IP LLC**
150 N. Wacker Dr., Suite 700
Chicago, Illinois 60606
(312) 667-6080 (Telephone)
birwin@irwinip.com
jsaltiel@irwinip.com
dsokoloff@irwinip.com

Barry K. Shelton
Texas State Bar No. 24055029
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6407 (Telephone)
bshelton@winston.com

*Attorneys for Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system.

*/s/ Barry F. Irwin*
Barry F. Irwin