IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| REPAIRIFY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:21-cv-00819-ADA |
| ) | |
| KEYSTONE AUTOMOTIVE ) | |
| INDUSTRIES, INC. d/b/a ELITEK ) | |
| VEHICLE SERVICES, and DOES 1 ) | |
| through 20, inclusive, ) | |
| ) | |
| Defendants. ) | |

## DISCOVERY DISPUTE ORDER

The Court hereby resolves the following discovery disputes submitted to the Court in a hearing on January 24, 2023.

**ISSUE NO. 1:  Documents related to conception, research, testing, design, development, reduction to practice (actual or constructive), or diligence of any alleged inventions disclosed in the Asserted Patents (RFP No. 5)**

**Elitek's Position:**

Initially, Repairify stated it would produce documents responsive to this Request.  Repairify then amended its response to state that it searched for documents related to conception and reduction to practice but was unaware of any responsive documents.  On September 28, the parties met and conferred where Elitek explained that this request was broader than conception and reduction to practice documents and that it included documents relating to testing, design, and development.  Repairify confirmed in writing that it was performing additional searching "responsive to the scope [Elitek] explained."  On October 7, Elitek asked about the status of documents responsive to this request and confirmed its scope.  On October 12, Repairify said a

1

responsive production was forthcoming. On October 19, during a meet and confer, Repairify stated production of responsive documents would begin by October 28, but Repairify did not produce any documents by then. After several more promises to begin producing these documents, Repairify produced six design documents on November 14. The parties met and conferred on November 17 where Repairify indicated that additional technical documents would be produced by December 1. On December 1, Repairify produced six additional design documents. On December 7, Elitek deposed an inventor of the Asserted Patents who testified that the inventors spent years after the filing of the first Asserted Patent working on developing a product that included significant testing and effort to figure out how to get the product to work. In addition, Repairify has produced marketing materials stating that it has done extensive testing on the capabilities of its products.

On December 9, Elitek inquired about the remaining responsive technical documents. Repairify responded that it limited its search to conception and reduction to practice documents from prior to the filing of the Asserted Patents and did not agree to search for design, development, and testing documents or documents created after the filing date of the Asserted Patents. Despite agreeing to search for and produce these documents previously and stating on multiple occasions that such documents would be forthcoming, Repairify changed its position after producing a limited number of design documents. After months of stating it was searching for and willing to produce documents responsive to this Request, Repairify should not be allowed to change its position. These documents are relevant to Elitek's defense of lack of enablement as it would confirm that it took Repairify years to develop a working product, and that it still has not developed a product that fully practices the claims of the Asserted Patents. These documents are also relevant to infringement as Repairify appears to be construing the Asserted Patents broadly

when alleging its products (or Elitek's products) practice the inventions claimed, but narrowly when comparing the claims of the Asserted Patents to the prior art.

Relief: Order that Repairify, within five days, produce documents related to the design, development, and testing of its products, such as the asTech 1 and asTech 2, including, but not limited to, the effort to develop its products, the limitations of and issues with its products, and any differences between its products and scanning a vehicle with a scan tool directly connected to the vehicle.

**Repairify's Position:**

Elitek served numerous overbroad RFPs, to which Repairify objected and disclosed the narrowed scope it was agreeing to search for. Elitek did not object to Repairify's narrowing, yet now seeks to relitigate these issues by complaining that Repairify has not produced documents responsive to the full scope of Elitek's RFPs *as propounded*. This is not how the discovery process is supposed to work. Elitek has waived its objections and this Court should deny any relief.

Repairify put Elitek on notice of the scope for which it was willing to search for documents over three months ago. Repairify's September 20, 2022 response stated that it would only search for "non-public documents concerning the ***conception*** and ***reduction to practice*** of the inventions disclosed in the Asserted Patent."

Elitek never demanded that Repairify amend its response to include the broad scope that it now seeks. Rather, in a September 23 letter, Elitek sought meet and confer over whether Repairify had "conduct[ed] a reasonable investigation before responding." During meet and confer, Elitek focused on a prior litigation between Repairify and a company formed by some of the named inventors of the Asserted Patents (the "Airpro case"). Elitek identified filings from the Airpro case as purported proof that Repairify *should* have responsive documents for RFP Nos. 5, 11, 42, 43. In

3

view of Elitek's argument, Repairify agreed to perform additional searches. But Repairify never agreed to amend its response to RFP 5 to include more than conception and reduction to practice documents. Repairify's statement that it was performing additional searching "responsive to the scope [Elitek] explained," was not an agreement to broader scope, but rather advisement that Repairify would focus on the documents Elitek raised from the Airpro case to see whether they might lead to Repairify finding additional responsive documents. In contrast, Repairify *did* agree in the same communication to amend its responses to certain other RFPs—putting Elitek on notice that for RFP 5, Repairify was *not* agreeing to a broader scope.

Further, Elitek propounded RFP 14 that was *specifically directed* at the same subject matter concerning embodiments of the Asserted Patents that Elitek now strains to make the subject of RFP 5. RFP 14 sought "[a]ll documents and things that concern or show the design, development, manufacture, structure, function, or operation of, or that **constitute embodiments** of, any alleged invention disclosed or claimed in the Asserted Patents …." On September 20, Repairify objected to this broad scope and only agreed to search for and produce documents "sufficient to demonstrate the **structure and operation** of any of Repairify's products and/or services that Repairify contends practice one or more claims of the Asserted Patents …." Elitek has long been on notice of what documents Repairify would produce for embodying products.

Subsequently, Repairify produced documents sufficient to show the structure and operation of its latest commercial embodiment (the "asTech 2") on November 14. And Repairify made a production of the same scope on December 1 for an earlier embodiment (the "asTech 1"). Neither of those productions included *any* documents concerning the design, development, testing, limitations of, or issues with, the asTech 1 or asTech 2. Yet Elitek did not argue that Repairify's production of technical documents for these products was insufficient until nearly a month later

4

(as to the asTech 2). As Elitek acknowledges, it only became concerned with design and development documents *after* December 7 deposition testimony of a named inventor concerning the post-filing development work of the first commercial embodiment of the Asserted Patents. Prior to its December 9 letter, Elitek never raised enablement in connection with its RFPs or Repairify's responses.

Elitek has waived its objections. But even if this Court disagrees, the scope of relief should only include documents evidencing the design and development work that led to Repairify's first commercially sold product/service that practice the invention(s) of the Asserted Patents. Anything beyond that scope is irrelevant to Elitek's purported needs."

### ISSUE NO. 2: Documents related to Repairify's allegation that it developed a remote diagnostic system for a wide variety of vehicles and manufacturers and expended substantial resources researching and developing its patented technology, technical strategies, and business plans through the expenditure of considerable employee work hours and company resources (RFP No. 49)

**Elitek's Position:**

This Request seeks documents to corroborate factual allegations that Repairify made in its Complaint. Repairify stated that it would produce responsive documents. As explained in detail above, Elitek inquired several times about the status of these documents, and Repairify continually promised to produce responsive documents. After Repairify failed to produce these documents on December 1 as promised, Elitek inquired about these documents. For the first time, Repairify stated it limited its search to this Request to conception and reduction practice from before the filing date of the Asserted Patents. This is inconsistent with its formal response to this Request, which does not include such a limitation. This also makes no sense because this Request does not refer to conception and reduction to practice in the RFP. These documents are relevant as they relate directly to allegations made by Repairify in its Complaint. Also, Repairify stated it would

produce them.  They are also relevant, as discussed above, as they relate to Elitek's defense of lack of enablement and Repairify's claims of infringement.

Relief:  Order that Repairify, within five days, produce documents related to Repairify's development and capabilities of its remote diagnostic system, including but not limited to its products coverage and the "substantial resources" it expended researching and developing its products including "the expenditure of considerable employee work hours and company resources."

**Repairify's Position:**

Elitek misrepresents RFP 49, which is incredibly overbroad, seeking "[a]ll documents and things related to Your allegations in paragraphs 33-38 of the Complaint …." Repairify put Elitek on notice of the scope for which it was willing to search for and produce documents over three months ago.  Repairify's September 20, 2022 response stated that it would only produce documents for a very narrow subset of documents, those specifically "referenced in paragraphs 33-38 of the Complaint."

Elitek has never requested that Repairify amend its response to include the broader scope it now seeks.  And Repairify did not promise to make any production on December 1 responsive to RFP 49 or of documents "referenced in paragraphs 33-38 of the Complaint."  Indeed, Elitek never substantively raised RFP 49 at all until a December 21 letter.  And Elitek made no mention of RFP 49 during the parties December 29 meet and confer.  Incredibly, Elitek now seeks an order compelling a production that is completely untethered from the actual language of RFP 49, which Elitek has only inaccurately paraphrased.  It appears as though Elitek is raising RFP 49 in an end run attempt to obtain documents that it was already on notice that Repairify would not produce in response to RFP 14.

Elitek has waived its objections to Repairify's response to RFP 49 and this Court should deny any relief.

### ISSUE NO. 3:  Documents related to marketing, advertising, press releases, brochures, websites or other electronic materials, alleged advantages or features, product comparisons, studies, and related documents for its products (RFP No. 19)

**Elitek's Position:**

Each time Elitek requested technical documents, as detailed above, Elitek also inquired about marketing materials responsive to this Request.  Like the technical documents, after several failed promises to begin producing documents over the course of months, Repairify produced some marketing materials on December 14.  Repairify's production did not include documents showing the capabilities and limitations of its products, including differences with scanning a vehicle using a scan tool directly connect to it.  While Repairify has produced some product comparisons, it did not produce the underlying testing of its products used in those comparisons.  Nor has Repairify produced any documents noting its products limitations even though those documents exist as they were at issue in a previous litigation involving Repairify (and some can be found on Repairify's website).

Relief: Order that Repairify, within five days, produce documents identifying its products capabilities, limitations, and differences with scanning a vehicle with a scan tool directly connected to a vehicle, including but not limited to any coverage reports, disclaimers on product limitations, and underlying test data used in product comparisons and/or coverage charts.

**Repairify's Position:**

Just as with RFPs 5 and 49, Repairify put Elitek on notice of the scope for which it was willing to search for and produce documents over three months ago.  Repairify's September 20, 2022 response stated that it would only produce documents "that are representative of Repairify's

marketing and advertising of the products and services that Repairify contends practice one or more claims of the Asserted Patents …."

Elitek has never requested that Repairify amend its response to include the broader scope it now seeks and cannot justifiably complain that Repairify's December 14 production did not include documents beyond that scope. Elitek has waived its objections to Repairify's response to RFP 19 and this Court should deny any relief.

### ISSUE NO. 4:  Deposition of Repairify witnesses

**Elitek's Position:**

Elitek seeks to depose the Repairify witnesses identified in its initial disclosures, Michael Edgar, and a 30(b)(6) deposition of Repairify. On multiple occasions, Elitek has asked Repairify for the availability of these witnesses, but Repairify has not identified dates that it is willing to produce its witnesses. It has been over a month since Elitek requested Repairify to identify dates for depositions, but it has not yet provided any dates for depositions.

On January 4, Elitek sent an email proposing a date for Michael Edgar's deposition. On January 11, Repairify responded by stating it is still working on getting availability for its witnesses. With a fact discovery deadline of February 17, Elitek seeks relief from the Court so that it may take the depositions it has requested.

Relief:  Order Repairify to provide availability of its witnesses identified in its initial disclosures, Michael Edgar, and a 30(b)(6) witness on the topics noticed by Elitek within five days, and to the extent the Parties are not able to schedule these depositions prior to February 17, grant Elitek leave to depose the requested witnesses after the close of fact discovery, if necessary.

**Repairify's Position:**

The parties did not begin discussing scheduling deposition dates until a December 19 meet-and-confer, just before the holidays. Elitek also did not serve its 30(b)(6) notice until that date.

Further, Elitek's 30(b)(6) notice is incredibly broad and includes *thirty-seven topics.* Repairify has been working diligently to identify its witnesses for the 30(b)(6) topics in coordination with scheduling those witnesses who may also be listed on Repairify's initial disclosures and will be deposed in their individual capacity. Deposition scheduling has been impeded both by unavailability over the holidays as well as a death in the family of one of Repairify's key witnesses.

Elitek's rush to court is premature. Repairify will be able to provide availability for its witnesses listed on Repairify's initial disclosures, Michael Edgar, and 30(b)(6) witnesses by January 20.

### ISSUE NO. 5:  RFP Nos. 4, 20, 23-24, Rogs. 14-15:  Information and documents related to the prosecution of the Asserted Patents

**Elitek's Position:**

These requests generally seek information related to the prosecution of the Asserted Patents. In response to these requests, Repairify has produced information obtained from its attorneys and agents related to the prosecution of the Asserted Patents and related applications, but it has not produced any documents from Repairify itself. Indeed, Repairify admitted that it did not search for responsive files or information other than from its attorneys (which were only reviewed and produced in response to subpoenas by Elitek).

In response to Rog. 14, Repairify initially pointed Elitek to the file histories. After a meet and confer, Repairify amended its response to identify 24 people, but no other information as to who these people were, the time period of their involvement, or what their roles were. After

9

another meet and confer, Repairify further amended its response to provide job titles, but it did not identify what the role of any of these individuals were, the time period of their involvement, or what documents they reviewed with respect to the prosecution of the Asserted Patents.

Elitek still seeks information about the role of each individual identified, including the time period of their involvement, and which documents or portions of the file histories these individuals were aware of related to the prosecution of the Asserted Patents. This information is relevant to Elitek's allegations of inequitable conduct that occurred during the prosecution of the Asserted Patents.

Repairify has acknowledged that it has additional information that it obtained from its review of correspondences, but it is withholding the information based on privilege. The information that Elitek seeks, however, is not privileged. If appropriate, Repairify can redact or withhold privileged communications while still providing the information sought by Elitek. Repairify has not provided the information requested by Elitek and responsive to these discovery requests.

Relief: For each individual that Repairify has identified as being involved in the prosecution of the Asserted Patents, order Repairify to identify the time period of their involvement, which patent applications they were involved with, and the nature of their involvement and produce any documents related to the information requested within five days.

**Repairify's Position:**

As to RFPs concerning the prosecution of the Asserted Patents, Repairify has repeatedly told Elitek in meet-and-confer that Repairify has searched for, but has not found any prosecution files maintained by the company. While it is likely that some prosecution-related files were emailed to Repairify employees, the parties did not agree to search email, nor did Elitek ever ask

Repairify to do so. Elitek's request for an order that Repairify produce documents that Elitek knows it has no reason to believe are in Repairify's possession should be denied.

As to Interrogatory 14, no Repairify employees involved in the prosecution of the Asserted Patents remains with the company. Repairify has explained this to Elitek as the reason that Repairify does not have information about the nature of those individual's roles in prosecution.

Repairify was able to amend its interrogatory response based on review of the prosecution files to identify the names and titles of Repairify employees who corresponded with the prosecuting attorneys. However, as already explained to Elitek, Repairify remains unable to identify the full time period those individuals were involved or to describe the nature of their roles.

Critically, RFP 14 does not ask for a listing of "which documents or portions of the file histories" individuals at Repairify reviewed. Further, Repairify never told Elitek that it had additional information that it was withholding based on privilege. Rather, trying to reach a compromise, Repairify explained that its privilege log would indicate what prosecution documents (such as office actions) were forwarded to which Repairify employees. Elitek asked Repairify if it would amend its response to Interrogatory 14 to list the documents received by each individual (limited to such information provided in the privilege log). Repairify is agreeable to so amending.

Beyond this, Elitek's request for relief is entirely untethered from the scope of what the parties have discussed in meet and confer and should be denied. In particular, Elitek's request for "any documents related to the information" which the parties have never contemplated, and which is also vague, ambiguous, and overly burdensome.

## ISSUE NO. 6:  RFP No. 42: Documents related to any proceeding or litigation related to the Asserted Patents

**Elitek's Position:**

RFP No. 42 seeks documents concerning any proceeding or litigation related to the Asserted Patents, including Repairify's previous litigation with AirPro, which involved the inventors of the Asserted Patents, and the bankruptcy proceeding in which Repairify allegedly acquired the Asserted Patents.

Despite repeated requests for this information and numerous meet and confers, Repairify has not produced any responsive documents.  Repairify argues that any non-privileged responsive documents it has are publicly available, but then also argues that producing these responsive documents would be unduly burdensome.  Merely because a document is publicly available does not mean Repairify does not have to produce it.  Additionally, Repairify has failed to explain how the production of supposedly publicly available documents would be unduly burdensome.

These documents are in Repairify's possession, custody, or control.  These documents are relevant to several different issues, such as ownership, enablement, and infringement. Because they are relevant, Repairify should produce them.

Relief:  Order Repairify to produce all non-privileged documents for any previous proceedings or litigation related to the Asserted Patents, including but not limited to documents from the AirPro litigation and the bankruptcy proceedings in which the Asserted Patents were allegedly acquired within five days.

**Repairify's Position:**

For RFP 42 Elitek focuses on two cases, neither of which is relevant to this patent case.

The "AirPro" case was brought by Repairify against a competing company started by a named inventor of the Asserted Patents. Repairify did not assert patent infringement, rather, the claims sounded in unfair competition (for misleading advertising) and breach of contract and tortious interference claims for Airpro's hiring of former Repairify employees.

The bankruptcy proceeding involved AES Technologies, LLC, through which Repairify completed a court-approved Asset Purchase Agreement and acquired title to the Asserted Patents.

During an October 19 meet-and-confer, Repairify told Elitek that it was not aware of any documents in its possession relevant to this case. However, Repairify agreed to amend its response and perform a search for documents within that scope.

On October 21, Repairify amended, agreeing to search for "non-public documents containing sworn statements or testimony concerning the Asserted Patents or any remote scanning tool made by Repairify or its predecessors …."

Elitek did not object to this scope until nearly *two months later*, when it insisted that Repairify should have to produce documents that are *publicly available on PACER*.

On December 29, the parties met and conferred and Elitek asked Repairify if it would produce publicly available documents from Pacer *if Repairify already had them in its possession*. Repairify agreed to do so. However, Repairify does not have such documents in its possession. Elitek's assertion that Repairify possesses any such documents is misinformed.

Now, Elitek inexplicably seeks relief *far beyond* what the parties agreed to in meet-and-confer. But Elitek has repeatedly waived such scope.

Further, Elitek makes no effort to explain why it needs any, much less "all" documents related to the Airpro case or the AES bankruptcy. Elitek's assertion that the documents are

relevant to "ownership, enablement, and infringement" is an unsupported conclusion. This Court also should deny any relief for this reason.

## ORDER

Regarding Issue No. 1, Repairify shall produce design and development documents for the process that led to Repairify's first commercial product available to the public that Repairify contends practices one or more claims of the Asserted Patents by February 10, 2023. After Elitek's review of these documents, Elitek may request additional technical documents that are responsive to RFP No. 5, and if the parties are unable to come to agreement on additional documents, Elitek may seek further relief from the Court. Accordingly, the Court **GRANTS IN PART** Elitek's requested relief.

Regarding Issue No. 2, the Court **DENIES** Elitek's requested relief as overly broad.

Regarding Issue No. 3, Repairify shall produce coverage charts for its products that it contends practice one or more claims of the Asserted Patents and are representative of coverage charts Repairify has used over time and shall produce exemplary scan reports containing disclaimers regarding Repairify's products that it contends practice one or more claims of the Asserted Patents that are within Repairify's possession, custody, or control and are representative of scan reports containing disclaimers Repairify has used over time, all by February 10, 2023. After Elitek's review of any documents produced in response to this request, Elitek may request additional responsive documents and seek relief from the Court if it contends that Repairify's production is inadequate. In addition, Elitek will identify to Repairify particular studies performed by Repairify that concern the performance of Repairify products that Repairify contends practice one or more claims of the Asserted Patents, including comparisons of Repairify's products to its competitors' products, and, Repairify will produce any such studies that are within Repairify's

possession, custody, or control. Accordingly, the Court **GRANTS IN PART** Elitek's requested relief.

Regarding Issue No. 4, at this time, the Court **DENIES** Elitek's requested relief for guidance on deposition scheduling. The Court **GRANTS** the parties leave to extend deadlines by agreement as needed.

Regarding Issue No. 5, for the client-side individuals involved in the prosecution of the Asserted Patents and related applications, Repairify shall identify which patent applications each individual was involved with and the time period of their involvement, to the extent that such information is within its knowledge, possession, custody, or control by February 10, 2023. Accordingly, the Court **GRANTS IN PART** Elitek's requested relief.

Regarding Issue No. 6, the Court **DENIES** Elitek's requested relief.

**SIGNED** this 2nd day of February, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE