# Exhibit J



Joseph Saltiel
*To Contact Writer Directly:*
312-667-6283
jsaltiel@irwinip.com

www.irwinip.com

December 21, 2022

VIA EMAIL: AWellman@prangerlaw.com

Arthur Wellman
Pranger Law PC
88 Guy Place, Suite 405
San Francisco, CA 94105

    Re:    *Repairify, Inc. v. Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services et al.* – Case No. 6:21-cv-00819-ADA (W.D. Tex.)

Dear Arthur:

We write to follow up on my December 9, 2022 letter and your December 15, 2022 response regarding deficiencies with Repairify, Inc.'s ("Repairify") discovery responses. We have also reviewed Repairify's December 14 document production. We believe that while some of the issues raised in our previous letter were addressed, there are still outstanding issues, which we identify below.

## I.    PRODUCTION MODIFICATIONS & ERRORS

We understand that Repairify will reproduce the document with overlapping Bates numbers and is looking into the metadata issue. Please advise us as to when Repairify will be able to address both issues.

## II.    REQUEST FOR DOCUMENTS

    A.    Document Request Nos. 4, 20, 23-24

While these requests generally seek documents related to the prosecution of the asserted patents, Repairify has not produced any such documents other than documents obtained from the prosecuting attorneys. Internal file histories are relevant because they relate to Elitek's inequitable conduct allegations and can be used to show which documents related to the prosecution history that Repairify was aware of, who at Repairify was aware of those documents, and when they became aware of them. This information is also responsive to Interrogatory Nos. 14 and 15, which seek information such as the persons involved in the prosecution, their involvement, and Elitek's inequitable conduct allegations.

It is unclear why Repairify would have to collect and search any email to provide this information. Repairify has already reviewed the prosecution history files obtained from the



December 21, 2022
Page No. 2

prosecuting attorneys that include correspondence sent to the client attaching portions of the prosecution history. Indeed, Repairify acknowledged that it reviewed the correspondence regarding prosecution in order to provide information responsive to Interrogatory No. 14.

Moreover, while your letter states that identifying the prosecution related files would be overly burdensome to search, your letter does not explain why that would be the case. To the contrary, in light of the prosecution files already reviewed, providing the information requested should be straightforward and is responsive to both the document requests and the interrogatories. Finally, Elitek's request is not duplicative as it would provide information that has not been produced such as Repairify's knowledge of certain prosecution related events and when it obtained that knowledge.

As stated above, Elitek believes that the information it is seeking is also responsive to Interrogatory Nos. 14 and 15. Because Repairify's response to Interrogatory Nos. 14 and 15 do not provide this information, Repairify's responses are deficient. If Repairify supplements its response to these interrogatories to include the information requested that may resolve Elitek's issue with Repairify's deficient document production with respect to these document requests.

    B.    Document Request Nos. 5, 11, 12, 15, 43, 49

These requests seek technical information. Specifically, Request No. 5 seeks documents relating to "conception, research, testing, design, development, reduction to practice (actual or constructive) or diligence of any alleged inventions disclosed and/or claimed in the Asserted Patents . . . ." Your letter reiterates that Repairify "after performing a reasonable search for non-public documents concerning the conception and reduction to practice of the inventions disclosed in the Asserted Patents, Repairify is unaware of any responsive documents in its possession, custody, or control." In our September 23, 2022 letter (as well as subsequent meet and confers), we raised concerns regarding Repairify's response as it is incredulous that it has no responsive documents. Indeed, Repairify's statement was incorrect as Repairify has subsequently produced a handful of such documents. Even your letter infers that such documents exist but that Repairify does not intend to produce them.

Furthermore, other documents Repairify has produced to date suggest that there are additional documents relating to the research, testing, design, development, and reduction to practice of the alleged inventions. *See, e.g.,* RPFY010557 (press release referring to testing), RPFY010586 (product comparison spreadsheet). This is further confirmed by documents obtained from the AirPro litigation (*see, e.g.,* KAI007120-KAI007198 (hearing transcript describing testing of the product) and KAI006870-KAI006895 (Olsen affidavit describing his testing of the product)) as well as the Olsen deposition (*see, e.g.,* Olsen Dep. at 30:8-13, 33:15-34:3, 43:11-21 (describing development and testing of the product)).

December 21, 2022
Page No. 3



Similar to Request No. 5, Request No. 49 requests documents related to Repairify's statements in the Complaint that it "has expended substantial resources researching and developing its patented technologies, technical strategies and business plans related to its remote automobile scanning and programming business, through the expenditure of considerable employee work hours and company resources [and that] this research and development has led to numerous innovative products in the remote automobile scanning and programming market."  Repairify stated it would produce such documents, but it has only produced a handful of such documents.  Again, based on discovery obtained to date, it appears that there should be more documents that are responsive.

Documents responsive to these requests should include documents related to the third party engineering firms that were used.  While Repairify has produced a limited number of manuals, *see, e.g.,* RPFY006248-RPFY006292, RPFY006293-RPFY006300, RPFY006301-6310, and RPFY006311-RPFY006320, there are likely additional relevant and responsive documents related to the work performed by these engineering firms, such as the worked performed by them, their involvement in the design and development, testing, etc.  Indeed, it was surprising to learn from a third party that one of the persons involved in the design and development of the asTech product at one of the engineering firms was later retained by Repairify as its Chief Engineer of asTech.  In light of that, it seems implausible that Repairify does not have additional responsive and relevant documents to these requests.

Lastly, your letter suggests that Repairify's responses should be limited to design and development work performed before the filing date of the '313 patent.  As an initial matter, we believe that such an objection is improper.  Design, development, and testing after the filing date are relevant to Elitek's defenses.  Indeed, Mr. Olsen testified that the proof of concept was not completed until after the '313 patent was filed, and that the inventors worked for years after the filing date to achieve the functionality claimed.  *See, e.g.,* Olsen Dep. at 39:5-16, 43:11-25.[1]  More importantly, Repairify did not limit its response to either of the aforementioned document requests in that manner.  Instead, Repairify made that limitation with respect to Request No. 14, which was not a request identified in our letter.  Therefore, your statements regarding what Repairify agreed to produce with respect to Request No. 14 are not responsive, relevant, or sufficient as discussed above.

   C.  Document Request Nos. 10, 13, 16, 23, 30

These requests seek assignments, licenses, and agreements.  With respect to RPFY003875, we understand that Repairify does not have any price list or similar documents.  Please confirm that there are no documents related to any payments, orders, or other transactions made pursuant to that agreement as well.

---

[1] Indeed, Mr. Olsen's testimony coupled with the third-party engineering firm documents suggest that Repairify's response to Interrogatory No. 13 is incomplete and should be supplemented to identify the individuals involved, their involvement, the timing of the reduction to practice, and/or production of documents containing such information.

December 21, 2022
Page No. 4



Also, with respect to the other agreement discussed, we understand that the third party has requested until January 13, 2023 to consider this issue. Please clarify the third party's position. If they intend to give their permission by January 13, and a production will happen at that time, then we do not foresee an issue. On the other hand, if the third party is merely going to provide some type of response, especially an ambiguous one, that would be an issue. If the third party's intent is not clear, please advise and also advise if Repairify would agree to jointly raise this issue with the Court at this time.

  D.  Document Request Nos. 19, 31-34

These requests seek marketing, advertising, and sales related documents. We have reviewed Repairify's December 14, 2022 production, and we believe that Repairify's production is still deficient.

For example, Request No. 19 seeks "marketing, advertising, press releases, brochures, websites or other electronic materials, alleged advantages or features, product comparisons, studies, promotional, testimonial, sales materials, or related documents." It appears that Repairify has additional documents responsive to this request, in particular product comparisons, studies, features, and other promotional materials that it has not produced. For example, Repairify's website and scan reports, that it has not produced, contain comments comparing its products to traditional scanning services. *See, e.g.*, KAI007115-KAI007117, KAI007305-7306, KAI007307-7313.

As another example, some of the marketing materials produced to date refer to studies and product comparisons that have not year been produced:

- RPFY010557 that states a "field study by Repairify has shown that not all aftermarket scan tools perform like OEM tools on every year, make, model, and trim." (emphasis added);
- RPFY010586 appears to be the results of results of a market analysis, but none of the underlying or supporting documentation for this document; and
- RPFY010557 describes five specific case studies involving the 2021 Ford Escape, 2017 Toyota Camry, 2017 Kia Rio, 2016 Honda Civic, and the 2021 Jeep Gladiator, but Repairify has not produced any documents regarding these case studies.

All of these materials are responsive and should have been produced, especially because they are responsive to other requests as well, such as Request Nos. 5 and 49 discussed above.

  E.  Document Request No. 42

This Request seeks documents related to any proceeding or litigation related to the Asserted Patents. Our concern is that there are relevant documents from both the AirPro litigation and Bankruptcy proceedings that Repairify has not produced (and is evident by the

December 21, 2022
Page No. 5



documents Elitek has produced to date as well as documents relied on by Repairify to date.) While these documents are responsive to Request No. 42, these documents are also responsive to other requests such as requests discussed in sections in II.A-D of this letter. The fact that Repairify has produced very few of these relevant and responsive documents is troubling, and the few documents it has produced, only seemed to have been provided when it supported a position Repairify was taking.

To the extent that Repairify is refusing to produce such documents because they are publicly available, we believe Repairify's position is improper, especially because it has not identified any basis for withholding documents that might be publicly available. As we stated in our letter, "Repairify cannot forgo producing documents just because they may be publicly available." Repairify has not cited any authority to the contrary. Indeed, the case law is clear that merely because a document might be publicly available does not alleviate a party's burden to produce it in response to discovery. *See Martino v. Kiewit New Mexico Corp.*, 600 Fed. Appx. 908, 911 (5th Cir. 2015) (explaining that "even if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses.")

Finally, your letter is incorrect that Elitek has not contended that Repairify's amended response was improperly narrow or has not requested production of documents from the AEST bankruptcy. Indeed, Elitek requested such documents on several occasions. *See, e.g.,* Elitek's Motion to Dismiss.

     F.     Document Request No. 48

This Request seeks documents related to Repairify's corporate structure. Please advise when Elitek will produce any responsive documents located.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Because the aforementioned discovery deficiencies have been outstanding for months, we believe these issues need to be addressed immediately. Please advise when you are available within in the next week for a meet and confer.

                           Respectfully submitted,

                           */s/ Joseph Saltiel*

                           Joseph Saltiel
                           Irwin IP LLC
                           Counsel *for Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services*

cc:     Counsel of Record (*via email*)