**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

REPAIRIFY, INC., and )
)
                Plaintiff, )     Case No. 6:21-cv-00819-ADA
)
     v. )
)
KEYSTONE AUTOMOTIVE )     **JURY TRIAL DEMANDED**
INDUSTRIES, INC. d/b/a ELITEK )
VEHICLE SERVICES, and DOES 1 )
through 20, inclusive, )
)
                Defendants. )

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    THE ASSERTED PATENTS ..............................................................................2

     A.    Background of the Invention ..................................................................2

     B.    Summary of the Invention ......................................................................3

     C.    The Asserted Claims ..............................................................................4

III.   THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 101........7

     A.    The Asserted Claims are Directed to an Abstract Idea. .........................9

     B.    The Asserted Claims, Individually and as an Ordered Combination, do not Transform the Claims into Patent-Eligible Subject Matter. ................................15

IV.   CONCLUSION ................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**

*Adaptive Streaming Inc. v. Netflix, Inc.*,
    836 F. App'x 900 (Fed. Cir. 2020)...........................................................................12

*Affinity Labs. of Tex., LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016).........................................................................11, 15

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016).............................................................................11

*Alice Corp. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ........................................................................................8, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................................8

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
    935 F.3d 1341 (Fed. Cir. 2019)......................................................................*passim*

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ..........................................................9, 10, 15, 18

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)............................................................................9, 13

*Dropbox, Inc. v. Synchronoss Techs, Inc.,*
    815 F. App'x 529 (Fed. Cir. 2020)..........................................................................17

*First-Class Monitoring, LLC v. United Parcel Service of Am., Inc.,*
    389 F. Supp. 3d 456 (E.D. Tex. 2019) ....................................................................12

*Genetic Techs. Ltd. v. Merial L.L.C.,*
    818 F.3d 1369 (Fed. Cir. 2016)................................................................................8

*Guidry v. Am. Public Life Ins. Co.,*
    512 F.3d 177 (5th Cir. 2007) ...................................................................................7

*Hawk Technology Sys., LLC v. Castle Retail, LLC,*
    60 F.4th 1349 (Fed. Cir. 2023) ........................................................................12, 17

*Health Discovery Corp. v. Intel Corp.*,
    577 F. Supp. 3d 570 (W.D. Tex. 2021)..................................................................8, 9

*In re TLI Communications LLC Patent Litigation,*
    823 F.3d 607 (Fed. Cir. 2016) ..............................................................9, 15, 16, 17

*Intellectual Ventures I, LLC v. Motorola Mobility LLC,*
    81 F. Supp. 3d 356 (D. Del. 2015) ......................................................................11

*Internet Patents Corp. v. Active Networks, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015) ..........................................................................15

*Interval Licensing, LLC v. AOL, Inc.,*
    896 F.3d 1335 (Fed. Cir. 2018) ..........................................................................16

*Maxell, Ltd. v. Vizio, Inc.,*
    No. CV 21-6758-GW-DFMX, 2023 WL 3431898 (C.D. Cal. Apr. 19, 2023) ......11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66 (2012) ................................................................................................8

*MyMail, Ltd. v. OooVoo, LLC,*
    613 F. Supp. 3d 1142 (N.D. Cal. 2020) ...............................................................11

*PersonalWeb Techs. LLC v. Google LLC,*
    8 F.4th 1310 (Fed. Cir. Aug. 2021) .......................................................................8

*Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.,*
    No. 2022-1468, 2023 WL 193162 (Fed. Cir. Jan. 17, 2023) ................................16

*SAP Am., Inc. v. InvestPic, LLC,*
    898 F.3d 1161 (Fed. Cir. 2018) ......................................................................8, 15

*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
    873 F.3d 905 (Fed. Cir. 2017) ...............................................................................8

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.,*
    No. 2020-2320, 2021 WL 2944838 (Fed. Cir. Jul. 14, 2021) ..............................11

*Tridia Corp. v. Sauce Labs, Inc.,*
    No. 1:15-CV-02284-LMM, 2016 WL 4007674 (N.D. Ga. Jul. 14, 2016) .............11

*Two-Way Media Ltd. v. Comcast Cable Commun., LLC,*
    874 F.3d 1329 (Fed. Cir. 2017) .............................................................. 12, 17, 18

*Uniloc USA, Inc. v. Big Fish Games, Inc.,*
    320 F. Supp. 3d 1178 (W.D. Wash. 2018) ....................................................11, 14

*USC IP Partnership, L.P. v. Facebook, Inc.,*
    576 F. Supp. 3d 446 (W.D. Tex. 2021) .........................................................13, 14

*Yu v. Apple Inc.,*
    1 F.4th 1040 (Fed. Cir. 2021) ......................................................................8, 9, 15

**Statutes**

35 U.S.C. § 101.................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 12(c)....................................................................................................7

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services ("Elitek") respectfully moves for judgment on the pleadings of Plaintiff Repairify Inc.'s ("Repairify") Complaint for Patent Infringement asserting United States Patent Nos. 8,688,313 ("the '313 Patent"), 9,684,500 ("the '500 Patent"), and 10,528,334 ("the '334 Patent") (collectively the "the Asserted Patents") because they are invalid under 35 U.S.C. § 101.   The Asserted Patents relate to a system and method of remotely scanning and programming a vehicle.   Traditionally, to scan and program a vehicle, a technician connects a scan tool directly (and located proximate) to the vehicle.   The purported invention of the Asserted Patents is a system that allows a technician to use a scan tool that is located remotely from the vehicle and connects to the vehicle over a network.   The Asserted Patents disclose that the remote scanning and programming is performed by converting data so it can be transmitted over the network, sending the data over a network, receiving the data, and then re-converting the data to its original format.

Courts have repeatedly held that claims directed at performing a known function or activity remotely, and converting and transmitting data over a network are unpatentable abstract ideas.   Narrowing the claims to a specific field of use, *i.e.*, programming a vehicle remotely, or converting, transmitting and reconverting data in order to scan and program a vehicle, does not make the claims patentable because that is merely using a feature of existing technology. Moreover, the Asserted Patents do not recite any inventive concept that would transform this abstract idea into patent-eligible subject matter.   Instead, the claims recite conventional components such as modems, processors, the Internet, and scan tools for performing routine tasks.    The Asserted Patents do not solve any technological problem or disclose any improvement to these components or to scanning and programming vehicles.  Therefore, Elitek

respectfully requests that the Court enter judgment on the pleadings that the Asserted Patents are invalid under 35 U.S.C. § 101 because the asserted claims are directed at an abstract idea without any inventive concept.

## II.  THE ASSERTED PATENTS

### A.  BACKGROUND OF THE INVENTION

Modern vehicles have on-board diagnostic ("OBD") systems that allow a technician using a scan tool connected to the vehicle via an OBD port to access and program a vehicle's electrical sub-systems.  Dkt. No. 1 ("Compl.") at ¶¶ 28-29; Dkt. No. 1-1 ("'313 Patent") at 1:11-14.  Scanning a vehicle involves "reading data from the vehicle's sub system for diagnostic purposes" ('313 Patent at 1:20-22) while programming a vehicle involves transmitting "programming packets" from a scan tool to the vehicle.  '313 Patent at 11:5-55.  Vehicle manufacturers typically use different communication protocols within their vehicles.  Compl. at ¶ 28; '313 Patent at 2:6-57.  Therefore, each manufacturer developed specific scan tools that can read, analyze, manipulate, program, and reprogram that particular manufacturer's vehicles.  Compl. at ¶ 30; '313 Patent at 3:14-18.  Manufacturer scan tools are relatively expensive and require daily, weekly, or monthly software updates in order to take advantage of the latest programming.  Compl. at ¶¶ 30-32; '313 Patent at 3:20-24.  Furthermore, a manufacturer's scan tools will only work with its own vehicles, not other manufacturers' vehicles.  *Id.*  Aftermarket scan tools typically work with any type of vehicle but will have limited capability.  Compl. at ¶ 31; '313 Patent at 3:4-11.  Accordingly, if a technician wants to offer a full range of services across different manufacturers' vehicles, the technician will have to purchase each manufacturer's scan tools and software updates from each manufacturer to receive the latest software updates.  Compl. at ¶ 32; '313 Patent at 3:24-28.

### B.   SUMMARY OF THE INVENTION

The Asserted Patents state that there is a need to be able to allow a technician to service a vehicle without having to purchase all of the expensive scan tools and software updates.  Compl. at ¶ 33; '313 Patent at 4:43-45.  Instead of each technician (or repair shop) purchasing all the necessary scan tools and software, the Asserted Patents disclose that individual technicians (or repair shops) could contact a remote call center, which has already purchased the necessary scan tools and software, to perform the scanning and programming of the vehicle from the call center remotely.  Compl. at ¶ 33; '313 Patent at 4:45-57.

To accomplish this, the Asserted Patents disclose the use of communication devices (referred to in the specification as "CIDs").  '313 Patent at 5:1-5.  A communication device can receive pin signals (vehicle data) from a vehicle or scan tool, convert pin signals into data packets, and transmit data packets over a network.  *Id.* at 7:35-40.  The communication device can also perform the reverse process of receiving data packets from a network, converting the data packets into pin signals, and transmitting the pin signals to the vehicle or scan tool.  *Id.* at 7:64-8:3.  As shown in Figure 2 of the '313 Patent, each communication device comprises a socket, communication processor, and a modem.  *Id.* at 7:26-30.



Figure 2

The socket connects the communication device to either the vehicle or the scan tool. *Id.* at 7:31-54. The communication processor contains logic that converts pin signals to data packets and vice versa. *Id.* The modem transmits data packets over a network to the other modem. *Id.* The Asserted Patents do not describe how the sockets, communication processors, or modems perform the functions of receiving, converting, and transmitting.

To scan and program a vehicle remotely, the Asserted Patents disclose using two communication devices: a first communication device connected to a vehicle's OBD port and a second communication device connected to a scan tool located remote from the vehicle. *Id.* at 7:17-8:3. The first communication device and the second communication device communicate over the Internet (or other network) so that the remote scan tool can scan and program the vehicle as if the scan tool were located proximate to the vehicle. *Id.* at 5:1-5. For example, the first communication device receives pin signals from the vehicle's sub-systems, converts those pin signals to network compatible data packets, and transmits those data packets over a network to the second communication device. *Id.* at 5:5-8. The second communication device receives the data packets over the network, re-converts the data packets to pin signals, and transmits the pin signals to the scan tool. *Id.* at 5:8-11. The scan tool can send data back to the vehicle using the reverse process. *Id.* at 5:11-14.

## C. THE ASSERTED CLAIMS

The '500 Patent is a division of the '313 Patent, and the '334 Patent is a continuation of the '500 Patent. Dkt. No. 1-3. So, all three patents share the same specification. Repairify is asserting claims 1, 5-6, 9, and 12-14 of the '313 Patent (claims 1 and 9 are independent), claims 1, 3, 7, and 8 of the '500 Patent (claim 1 is independent), and claims 1, 2, and 5-6 of the '334 Patent (claim 1 is independent). Declaration of Joseph Saltiel ("Saltiel Decl."), Ex. A. The asserted claims of the Asserted Patents are similar in that all recite using communication devices

4

to allow a scan tool to scan and program a vehicle remotely by converting data, sending data over a network, and then re-converting the data. The claims use standard components and do not recite any details on how the components operate or any improvement to how vehicles are scanned and programmed, other than it is done remotely. For example, claim 1 of the '313 Patent provides:[1]

1. A system for remotely programming one or more subsystems of a vehicle, comprising:

a vehicle connector having a plurality of pins, said pins in communication with a said one or more subsystems;

**a vehicle communication device** connected to said vehicle connector;

a bi-directional communication link between said vehicle communication device and **a remote communication device;**

**a computer system** connected to said remote communication device;

wherein said vehicle communication device is configured to:

**receive one or more outgoing pin signals** present on said pins, said pin signals containing data corresponding to one or more said sub-systems;

**convert** said one or more outgoing **pin signals to a network-compatible vehicle packet**;

**transmit said vehicle packet** to said remote communication device over said bi-directional communication link;

wherein said remote communication device is configured to:

**re-convert said vehicle packet** to said one or more **outgoing pin signals**; and

transmit said one or more outgoing pin signals to said computer system; and

wherein said computer system and said vehicle connector are engaged in continuous bi-directional communication using a standard OBD communications protocol; and

wherein said computer system is enabled by said continuous bi-directional communication using a standard OBD communications protocol to actively and continuously communicate with, **scan and program said subsystems as if it were located proximate to said vehicle.**

'313 Patent at 14:31-67 (emphasis added). Claim 1 of the '500 Patent provides:

---

[1] The other asserted independent claim from the '313 Patent is claim 9, which is a method claim that tracks the limitations of claim 1 of the '313 Patent. Dkt. No. 1-1 at 14:31-67, 15:63-16:35.

1. A system for remotely programming a subsystem of a subject vehicle, comprising:

**a first communication device** located proximate to a subject vehicle comprising:

a first interface that interfaces with a vehicle computer system for the subject vehicle and providing bi-directional communication with the vehicle computer system using a standard OBD communications protocol;

a second interface that interfaces with a communication network; and

a first communication processor that controls communications over the first and second interfaces; and

**a second communication device** located remotely from the subject vehicle comprising;

a third interface that interfaces with the communication network, the communication network providing a bi-directional communication link between the first communication device and the second communication device;

a fourth interface that interfaces with a vehicle scan tool located proximate to the second communication device; and

a second communication processor that controls communications over the third and fourth interfaces, wherein the second communication processor is enabled to:

**Request**, from the vehicle computer system over the bi-directional communication link, one or more **outdoing pin signals** the vehicle sub-system;

**Receive**, over the bi-directional communication link, a network-compatible **vehicle packet** corresponding to the outgoing pin signal;

**Convert the vehicle packet** to said one or more **outgoing pin signals**; and

**Transmit** the one or more **outgoing pin signals** to the vehicle scan tool;

wherein the first communication device and the second communication device provide communication between the vehicle scan tool and the vehicle computer system to enable the vehicle scan tool **to scan and program a vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle.**

Dkt. No. 1-2 ("'500 Patent") at 14:57-15:33 (emphasis added).  Claim 1 of the '334 Patent

provides:[2]

---

[2] There is a second independent claim in the '334 Patent, but Repairify did not assert that claim.

1. A method for remotely programming a sub-system of a subject vehicle, comprising:

   establishing, by **a first communication device located proximate to a vehicle scan tool** and comprising a first communication device processor, a bi-directional communication link with a second communication device over a communication network, the **second communication device located proximate to a subject vehicle and remote from the first communication device**;

   **requesting**, by the first communication device, over the bi-directional communication link and via the second communication device, an **outgoing pin signal from a vehicle** sub-system for the subject vehicle;

   **receiving**, by the first communication device, over the bi-directional communication link, a network-compatible **vehicle packet** corresponding to the **outgoing pin signal**;

   **converting**, by the first communication device, the **vehicle packet to the outgoing pin signal**; and

   **communicating**, by the first communication device, the **outgoing pin signal to the vehicle scan tool**;

   wherein the first communication device and the second communication device provide communication between the vehicle scan tool and the vehicle sub-system to enable the vehicle scan tool **to scan and program the vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle.**

Dkt. No. 1-3 ("'334 Patent") at 14:62-15:22 (emphasis added).  The asserted dependent claims of the Asserted Patents add non-inventive elements such as reciting that the communication link is carried over the Internet, identifying the type of programming instructions that are transmitted, and that the communication is full duplex.  *See, e.g.,* '313 Patent at 15:47-50, 16:55:64; '500 Patent at 16:7-8, 16:19-24; '334 Patent at 15:23-24, 15:31-36.

## III.   THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 101.

After the pleadings close, but early enough not to delay trial, a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss . . . [t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Guidry v. Am. Public Life Ins. Co.,*

512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A court may dismiss a case if it finds that the asserted patents fail to meet the requirements of 35 U.S.C. § 101, which defines patentable subject matter. *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 576 (W.D. Tex. 2021). Patent eligibility is a question of law. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. Aug. 2021). While there may be underlying questions of facts relating to patent eligibility, not all patent eligibility determinations have genuine disputes of underlying material facts making resolution of the patent eligibility question appropriate on a Rule 12(c) motion. *Id.* (*citing SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)). Furthermore, it is not necessary for a court to construe the claims, conduct discovery, or require expert testimony before determining patent eligibility even when a patent owner disputes invalidity.[3] *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016).

Laws of nature, natural phenomena, and abstract ideas are not patentable subject matter. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). To determine if a claim is patent eligible, courts apply a two-step analysis. *Id.* at 217; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72, 78 (2012). First, courts determine whether a patent claim is directed to an unpatentable law of nature, natural phenomenon, or abstract idea. *Yu v. Apple Inc.,* 1 F.4th 1040, 1043 (Fed. Cir. 2021) (*citing Alice*, 573 U.S. at 217). If so, courts then determine whether the claim includes an inventive concept sufficient to transform the claim into patent-eligible

---

[3] The Court has already held a Markman hearing and construed the claims. Dkt. No. 50. This Motion is not dependent on adoption of any particular claim construction.

subject matter, rather than (for example) implementing the abstract idea with conventional equipment. *Id.*

### A.    THE ASSERTED CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA.

Courts begin the step 1 inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art. *Yu*, 1 F.4th at 1043. A claim is more likely to be directed to an abstract idea when the specification does not suggest an "improve[ment] from a technical perspective," or if the specification does not suggest that the claimed invention results in something "operat[ing] differently than it otherwise could," or "that the invention involved overcoming some sort of technical difficulty." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019); *see also*, *Chamberlain Grp., Inc. v. Techtronic Indus. Co.,* 935 F.3d 1341, 1347-49 (Fed. Cir. 2019). Claims that are "directed to a patent-eligible improvement to computer functionality . . . must be directed to *an improvement to the functionality of the computer or network platform itself.*" *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (emphasis added). Inventions that do not improve computer functionality, describe new or improved hardware, or that describe their invention in mostly functional terms are examples of abstract ideas. *In re TLI Communications LLC Patent Litigation,* 823 F.3d 607, 612 (Fed. Cir. 2016). In determining if an idea is abstract, courts will typically examine earlier cases involving similar ideas. *Chamberlain,* 935 F.3d at 1346-47; *Health Discovery,* 577 F.Supp.3d at 579.

The claims of the Asserted Patents are directed to the abstract idea of remotely scanning and programming a vehicle. '313 Patent at 4:64-65. To accomplish remote scanning and programming of a vehicle, the claims recite 1) establishing a bi-directional communication link between communication devices, one local and connected to a vehicle subsystem or subsystems and one remote and connected to a scan tool; 2) requesting vehicle pin signals; 3) converting pin

signals to network packets; 4) transmitting network packets over the link; 4) re-converting network packets to pin signals; and 5) sending the pin signals to the scan tool. '334 Patent at 14:62-15:22. Neither the claims nor the specification identify how the link is established, how pin signals are requested, how pin signals are converted, transmitted or re-converted, let alone any novel or improved manner of doing so. That is, the claims do not recite how their solution improves the functionality of prior art.

Court have consistently held that claims directed to performing a known function or activity remotely to be an abstract idea. For example, *ChargePoint* considered a claim reciting a remote data control unit that receives requests and then sends instructions to a control device over a network. *ChargePoint*, 920 F.3d at 766. *ChargePoint* found these claims to be nothing more than "the abstract idea of communicating requests to a remote device and receiving communications from that server, i.e., communication over a network." *Id.* at 766-67. *ChargePoint* noted that the patent-at-issue did not suggest that any of the components claimed where an improvement from a technical perspective, operated differently from prior art devices, or that the invention overcame any difficulty in adding network capabilities to the prior art systems. *Id.* at 768. Likewise, *Chamberlain* held claims reciting a device with a controller and a transmitter for communicating wirelessly to a remote device were abstract. *Chamberlain,* 935 F.3d at 1346. *Chamberlain* reasoned that the claims are abstract because remote communication is "well understood in the art" and that using wireless communication to overcome the disadvantages of a prior art's use of wired communication "is not itself a technological improvement, but rather simply a feature of wireless communication, which . . . was already a basic, conventional form of communication." *Id.* at 1347.

Other examples of cases that held claims directed to performing a known function or activity remotely to be an abstract idea include: *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, 2021 WL 2944838, at \*3 (Fed. Cir. Jul. 14, 2021) (wireless communication and remote surveillance are unpatentable abstract ideas); *Affinity Labs. of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (wirelessly communicating regional broadcast content to remote recipients is abstract); *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (delivering media content to portable devices over a network is abstract); *Maxell, Ltd. v. Vizio, Inc.*, 2023 WL 3431898, at \*4 (C.D. Cal. Apr. 19, 2023) ("using a mobile device to send information over the internet to a television to enable switching the same content from that mobile device to the television, and then continuing to send information to control the content" is abstract); *MyMail, Ltd. v. OooVoo, LLC*, 613 F. Supp. 3d 1142, 1162 (N.D. Cal. 2020) (distributing updated software to a computer through the Internet is abstract); *Uniloc USA, Inc. v. Big Fish Games, Inc.*, 320 F. Supp. 3d 1178, 1185 (W.D. Wash. 2018) (providing remote repair and upgrade services such as updating computer software from a central facility is an abstract idea because it "is a regular business activity that is simply implemented by a computer"); *Tridia Corp. v. Sauce Labs, Inc.*, 1:15-CV-02284-LMM, 2016 WL 4007674, at \*6 (N.D. Ga. Jul. 14, 2016) (enabling remote control of a computer program over a network was abstract); *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, 81 F. Supp. 3d 356, 365 (D. Del. 2015) (selecting and transmitting software updates to a computer over the Internet is abstract).

Courts have also held that claims directed to requesting, converting, transmitting and re-converting data to be an abstract idea. For example, *Hawk Technology* held that claims reciting providing a communication link over a network and then requesting data, converting data from

one format to another, and transmitting the requested data is an abstract idea. *Hawk Technology Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023). *Hawk Technology* found that these claims did not disclose any special data conversion, how the parameters are manipulated, or otherwise explain how the goal of the patent is achieved other than with broad functional language. *Id.* Because these claims "fail to recite a specific solution to make the alleged improvement . . . and at most recite abstract data manipulation," the Federal Circuit found them directed to an abstract idea. *Id.*

In fact, the Federal Circuit has acknowledged that there is a long line of precedent that claims directed at remote communications over a network are abstract when it stated:

> We have held that the ideas of encoding and decoding data and of converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas and accordingly concluded that claims focused on those general ideas governing basic communication practices, not on any more specific purported advance in implementation, were directed to abstract ideas.

*Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (citing collection of Federal Circuit cases). *Adaptive Streaming* found claims directed to collecting data, converting the data, and transmitting the data over a network abstract because no specific advance or specific techniques for implementing the idea were recited. *Id.*; *see also Two-Way Media Ltd. v. Comcast Cable Commun., LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (claims directed at collecting, routing, controlling, and monitoring data over a network are abstract); *First-Class Monitoring, LLC v. United Parcel Service of Am., Inc.,* 389 F. Supp. 3d 456, 466 (E.D. Tex. 2019) ("requesting, collecting, analyzing, and transmitting information, without more, is directed to an abstract idea").

This Court has also previously considered similar claims and has likewise found them to be abstract. For example, this Court held that claims directed at "collecting, analyzing, and using

intent data" received from a web browser is an abstract idea. *USC IP Partnership, L.P. v. Facebook, Inc.*, 576 F. Supp. 3d 446, 456 (W.D. Tex. 2021). This Court stated that these types of claims addressed problems that existed before the advent of computers and are not unique to the Internet and are not directed to improvements of the functionality of computers or networking itself. *Id.* at 455.

Here, the claims of the Asserted Patents are directed at the abstract idea of remote scanning and programming. This is further supported by the claims, which do not purport to be a technological improvement over the prior art. Specifically, the asserted claims do not recite any improved components, improved method for scanning and programming a vehicle, or an improved method of communicating between the scan tool and the vehicle. The functions and capabilities of scanning and programming a vehicle are the same regardless of whether the scanning and programming are performed locally or remotely, *i.e.,* the purported invention. Nowhere do the Asserted Patents identify any technological problem that they purport to overcome. Instead, the Asserted Patents use the same components and communication protocols that existed before the purported invention. *See Customedia,* 951 F.3d at 1365 (asserted claims abstract because they "do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem."); *Chamberlain,* 935 F.3d at 1347.

As defined by the Asserted Patents, the problem they are trying to solve is to allow a repair shop to service a wide variety of vehicles ***without having to purchase expensive scan tools and software updates for each type of vehicle.***[4] '313 Patent at 4:46-57; Compl. at ¶ 32.

---

[4] In this litigation, Repairify has repeatedly stated that the Asserted Patents purportedly solve the problem of reducing a technician's costs. *See, e.g.,* Dkt. No. 27 at 8 ("Prior to Repairify's invention . . . . if a technician wanted to service a wide variety of vehicles makes and models, he would often have to make a substantial investment in scan tools."); Dkt. No. 41 at 6-7 (same).

The Asserted Patents purportedly solve this problem by proposing a solution where a repair shop, instead of purchasing scan tools for each vehicle type, is connected to or connects to a call center that has the necessary scan tools and then uses the call center's scan tools to remotely scan and program vehicles.   '313 Patent at 12:16-49; Compl. at ¶¶ 33-34.   It is a non-technical solution to a non-technical problem.   Put simply, the problem that the Asserted Patents are trying to solve is to reduce costs, and the Asserted Patents solve this problem by using the age-old business practice of outsourcing costly services to a third party.   Outsourcing services to third-parties is a routine business practice that companies have used for everything from billing, marketing, IT support, sales, manufacturing, and repairs.   *See Big Fish Games,* 320 F. Supp. 3d at 1185 (providing services remotely "is a regular business activity that is simply implemented by a computer").   It is neither novel nor a technical solution.   Because the claimed solution is not rooted in technology to overcome a technological problem or otherwise improve functionality of the technology, it is abstract.   *See USC IP,* 576 F. Supp. 3d at 455 (claims were abstract because they were directed at solving a longstanding business problem, not a technological problem or improving functionality of the technology itself).

Finally, limiting the claims to a particular field of use does not make the claims patentable.   *Alice,* 573 U.S. at 222-23 ("'the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the [the idea] to a particular technological environment.'") (citation omitted).   Here, the fact that the asserted claims are directed to the field of vehicle diagnostics, *i.e.*, scanning and programming a vehicle, or are limited to certain types of networks, *e.g.,* Internet, certain types of communications, *e.g.,* Wi-Fi, or certain vehicle protocols is of no import.   An abstract idea is still abstract even if it is implemented in a limited fashion.   *See Chamberlain*, 935 F.3d at 1348 (rejecting notion that claims were not abstract

because they were directed towards the field of garage door operation); *DIRECTTV,* 838 F.3d at 1259 (rejecting argument that claims were not abstract because they were limited to the field of cellphone technology); *SAP,* 898 F.3d at 1168 (claims limited the collection and analysis of data to particular content or from a particular source were still abstract).

### B.   THE ASSERTED CLAIMS, INDIVIDUALLY AND AS AN ORDERED COMBINATION, DO NOT TRANSFORM THE CLAIMS INTO PATENT-ELIGIBLE SUBJECT MATTER.

Step 2 of the patent-eligibility analysis seeks to determine if there is an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention.  *Yu,* 1 F.4th at 1045.  Courts may consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application.  *ChargePoint,* 920 F.3d at 773.  The inventive concept must be sufficient to ensure that the patent amounts to significantly more than the abstract idea.  *Id.*  The inventive concept "cannot simply be 'well-understood, routine, conventional activit[ies]' previously known in the industry."  *Id.* (citations omitted).  Thus, physical components that are well-understood, routine, and ordinary are not sufficient to transform a claim with ineligible subject matter into one that is patent eligible.  *Yu,* 1 F.4th at 1045; *TLI,* 823 F.3d at 615; *ChargePoint,* 920 F.3d at 773-75; *Chamberlain,* 935 F.3d at 1349.

Because the concept of remotely scanning and programming a vehicle is abstract, it cannot be used as the inventive concept.  *See Chamberlain,* 935 F.3d. at 1349; *ChargePoint,* 920 F.3d at 774.  Furthermore, the asserted claims use generic functional language such as converting and transmitting data to implement the abstract idea of remotely scanning and programming vehicles.  That is not sufficient to transform an abstract idea into patentable subject matter because the claims do not specify how these steps are performed.  *See Internet Patents Corp. v. Active Networks, Inc.,* 790 F.3d 1343, 1348 (Fed. Cir. 2015) (claim that contains no restriction

(or description) on how the result is accomplished is too broad to provide an inventive concept); *TLI Commc'ns*, 823 F.3d at 614 ("abstract functional descriptions devoid of technical explanation as to how to implement" them cannot provide the inventive concept); *Interval Licensing, LLC v. AOL, Inc.,* 896 F.3d 1335, 1348 (Fed. Cir. 2018) (broad claim elements covering a basic concept cannot be the inventive concept).

The components recited in the asserted claims are not inventive either.  The asserted claims recite the following components: a first communication device connected to a vehicle and a second communication device connected to a scan tool located remote from the vehicle where the first communication device and the second communication device communicate over the Internet (or other network).  *See supra* at § II.  There is nothing different about the claimed vehicle, scan tool, or network, *i.e.,* they are the same components known and used in the prior art.  *See, e.g.,* '313 Patent at 2:9-57 (discussing known vehicle communication protocols); 5:19-22 ("the scan tool comprises a handheld computer scan tool known in the art"); *id* at 8:46-49 ("communication network (for example, the Internet) to establish the bi-directional communication link"); *see also Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, 2022-1468, 2023 WL 193162, at *3-4 (Fed. Cir. Jan. 17, 2023) (no inventive concept for components and features that the specification identified as known in the art).

As for the communication device, some asserted claims describe it solely in terms of functionality, *i.e.,* receiving, converting, and transmitting.  *See, e.g.,* (claims 1 and 9 of the '313 Patent).  The other asserted claims further recite that the communication device includes a processor (claim 1 of the '500 Patent and claim 1 of the '334 Patent) and/or interfaces (claim 1 of the '500 Patent).  The processors and interfaces recited, however, are described as having the same functionality, *i.e.,* receiving, converting, and transmitting.  Because the claims do not

indicate how the communication device, including the processors and interfaces, perform the receiving, converting, and transmitting, these components are recited in purely functional terms that can be achieved using conventional, well-known components and techniques.  That is, the claims do not require anything unique about the communication device or its processors.  They are "black boxes" defined only by their functionality.  Therefore, the communication devices, including any recited processors and interfaces, are functional components that are implemented using conventional hardware and software, not an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention. *See Hawk Technology,* 60 F.4th at 1358-59 (claimed converting and transmitting performed by conventional components did not provide inventive concept); *Dropbox, Inc. v. Synchronoss Techs, Inc.,* 815 F. App'x 529, 534 (Fed. Cir. 2020) (application of an abstract idea using conventional techniques using broad functional language does not transform patent ineligible subject matter); *In re TLI Commc'ns*, 823 F.3d at 615 (claims failed step two because the recited physical components "behave[d] exactly as expected according to their ordinary use"); *Chamberlain¸* 935 F.3d at 1348 (finding controller, interface, and wireless data transmitter all well understood and cannot provide an inventive concept); *Two-Way Media*, 874 F.3d at 1339 (finding no inventive concept when "[n]othing in the claims require . . .  anything other than conventional computer and network components operating according to their ordinary functions").

Considering each claim as an ordered combination of elements does not reveal any inventive concept that is significantly more than the abstract idea that transforms the nature of the claim into patent-eligible subject matter.  Here, the asserted claims reflect a standard sequence: 1) receiving pin signals by a communication device from a vehicle/scan tool; 2) converting pin signals to network packets; 3) transmitting network packets over a network to a

second communication device; 4) re-converting network packets to pin signals; and 5) sending the pin signals to the vehicle/scan tool.  *See supra* § II.  This is a conventional sequence of data transmission using conventional components, and thus, as an ordered combination, it is not an inventive concept.  *See Chamberlain,* 935 F.3d at 1349 (nothing inventive about the ordered combination of elements because it was well-understood, routine, and conventional); *ChargePoint,* 920 F.3d at 774 (same); *Two-Way Media*, 874 F.3d at 1339 (same).

## IV.    CONCLUSION

The asserted claims of the Asserted Patents are directed to the unpatentable abstract idea of remote scanning and programming of a vehicle.  And because the asserted claims do not include an inventive concept sufficient to transform the asserted claims into patent-eligible subject matter, Elitek respectfully requests that the Court enter judgment on the pleadings that the claims of the Asserted Patents are invalid under 35 U.S.C. § 101.

Dated:  August 18, 2023

Respectfully submitted,

By: /s/ *Barry F. Irwin*

Barry F. Irwin, P.C. (admitted *pro hac*)
Joseph Saltiel (admitted *pro hac*)
Alexander Bennett (admitted *pro hac*)
**IRWIN IP LLP**
150 N Wacker Dr, Ste 700
Chicago, IL 60606
(312) 667-6080
birwin@irwinip.com
jsaltiel@irwinip.com
abennett@irwinip.com

Barry K. Shelton
Texas State Bar No. 24055029
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
bshelton@winston.com
(214) 453-6407 (Telephone)

*Attorneys for Defendant Keystone*
*Automotive Industries, Inc. d/b/a Elitek*
*Vehicle Services*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on all counsel of record via the Court's ECF system.

/s/ *Barry F. Irwin*
Barry F. Irwin