UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **REPAIRIFY, INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL NO. W-21-CV-00819-ADA |
| § | |
| **KEYSTONE AUTOMOTIVE INDUSTRIES, INC., DOES 1 TO 20,** § | |
| § | |
| Defendants. § | |

## ORDER RESOLVING DISCOVERY DISPUTE

Before the Court are three documents submitted for *in camera* review of privilege. The review stems from a discovery dispute hearing held on September 5, 2023. At the hearing, plaintiff Repairify moved to compel production of one document, and defendant Keystone Automotive Industries moved to compel production of two documents. After reviewing the documents, the Court **DENIES** Repairify's motion to compel and **GRANTS-IN-PART** Keystone's motion to compel for the reasons stated below.

First, Repairify's motion is about an email from Iskander Kuijer, an employee of third-party supplier Jifeline, to outside counsel for Keystone and to an employee of Keystone's corporate parent LKQ. The email contains Mr. Kuijer's inline responses to questions, presumably drafted by Keystone's outside counsel, about how Jifeline's products function technically. At the time, Jifeline and LKQ were in contract negotiations; outside counsel used the email as part of his analysis of what patents might be asserted against LKQ if it used Jifeline's product. Outside counsel further performed invalidity analysis of the patents identified as assertion candidates. Keystone claims that the email is covered by the attorney-client, work product, and joint defense privileges.

The Court agrees with Keystone that the Kuijer email is work product privileged. "[A] party may not discover [(1)] documents and tangible things [(2)] that are prepared in anticipation of litigation or for trial [(3)] by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, or agent)." Fed. R. Civ. P. 26(b)(3)(A). An email is a document. The Fifth Circuit's test for whether a document is "prepared in anticipation of litigation" requires that "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb. 1981). Repairify argues that the primary motivating purpose of the Kuijer email was to aid the parties' consideration of making the business decision to contract. The Court disagrees—while the overall context of the parties' interaction was the negotiation of a supplier contract, the Kuijer email in particular was primarily created to provide technical information useful for outside counsel's ongoing efforts to assess what patents Jifeline's products might infringe. After all, if Jifeline's products infringe a patent, Keystone would also face a possible future patent infringement lawsuit as a customer who uses the claimed invention. Outside counsel's email even explicitly mentions the risk of infringement claims against LKQ if it were to use Jifeline's technology. In view of the relative laxity of *possible future* litigation, the Court holds that the Kuijer email satisfies the *Davis* test. Finally, as evidenced by the nature of Kuijer's inline comments, the email was created for another party (Keystone)'s representative (Keystone's outside patent attorney).

As shown above, the Kuijer email is protected by the work product doctrine. Keystone, as the party for whom the email was prepared, holds the privilege, so a discussion of the joint defense privilege is unnecessary. Similarly, the Court will decline to address the attorney-client privilege in the alternative. Keystone need not produce the Kuijer email to Repairify.

Second, Keystone moves to compel the production of an email chain from Repairify's CEO to a Mr. Don Lamey. The email does not have any content of its own; it merely forwards to Mr. Lamey another email from Repairify's corporate counsel Lisa DeLong to Repairify's outside counsel and to Repairify's CEO. Ms. DeLong's email contains her legal analysis of an asset purchase agreement and potential violations of it. The DeLong email is clearly attorney-client privileged. The only question is whether forwarding that email to Mr. Lamey waived the privilege.

"[A] voluntary disclosure of information which is inconsistent with the confidential nature of the attorney client relationship waives the privilege." *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993). The parties dispute Mr. Lamey's role with Repairify, a dispute with implications as to whether the forwarding was consistent with confidentiality. Keystone argues that Mr. Lamey was merely an investor and a third-party observer at board meetings, with no responsibility for the subject matter of the privileged communication. Repairify counters that Mr. Lamey was a board member for Repairify's predecessor in interest and was specifically requested to be a representative of the pre-existing investors on the new Board. Based on the dispute chart and arguments, the Court understands Mr. Lamey to have been a member of Repairify's board of directors. A review of Mr. Lamey's LinkedIn profile confirmed this impression. Based on this, the Court finds that Repairify did not waive privilege by forwarding the DeLong email to Mr. Lamey.

Keystone's cases in support of waiver are distinguishable. *Finjan, Inc. v. SonicWall, Inc.*, No. 17-cv-04467-BLF (VKD), 2020 WL 4192285 (N.D. Cal. July 21, 2020), involved a representative of a third-party investor company with a contractual right to observe board proceedings. Here, Mr. Lamey was on Repairify's board of directors, even if his role and participation were limited. *Quintel Technology Ltd. v. Huawei Technologies, Inc.*, No. 4:15cv307, 2017 WL 11631811 (E.D. Tex. Nov. 2, 2017), involved a privileged document that was later used for a

purely business purpose. Here, there is no indication that Mr. Lamey used the information from the email for non-legal business purposes. Rather, as a member of Repairify's highest corporate authority, he was kept apprised of legal advice the corporation received. While Keystone cites *Quintel* for the proposition that "disclosure to individuals without responsibility for the subject matter underlying the privileged communications waives the privilege," *id.* at *5, as a board member, Mr. Lamey's subject matter covers all aspects of the corporation's behavior. He is unlike the employees in *Quintel*, who had no responsibility for handling invention disclosures. *See id.* The more applicable citation is, "Management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege." *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000).

Lastly, Keystone argues that Repairify did not act diligently and promptly in invoking privilege, citing a two-month delay between the initial production of the email chain and the assertion of privilege. Although ideally Repairify would have acted faster than it did, the Court is not prepared to say that Repairify's delay was so egregious that it waived privilege.

Repairify need not produce the DeLong email chain to Keystone.

<u>Third</u>, Keystone moves to compel the production of a slide from a PowerPoint presentation to Repairify's board of directors. The slide is titled "Legal Update," and it discusses a lawsuit Repairify filed against AirPro and two employees AirPro poached from Repairify. Since this slide was also disclosed to Mr. Lamey, Keystone also argues that any privileges were waived. But, for the reasons discussed above, the Court rejects that argument.

More specifically to the slide, Keystone argues that Repairify has not identified any counsel involved with the document. The author does not appear to be an attorney, and no recipients were identified. The slide also has no confidentiality markings and was given to a third party. Keystone

4

also argues that the primary purpose of the slide was not to secure legal advice, but to provide an update. Repairify counters that the slide reflects outside counsel's thought processes and recommendations regarding the AirPro lawsuit. Thus, the argument goes, the slide conveys legal advice from counsel and is privileged notwithstanding the lack of attorney recipients or drafters for the actual slide.

Having reviewed the slide, the Court concludes that parts of it are privileged. Some of the bullet points discuss litigation strategies, expectations of what the opposing party might do, and options for how to proceed. The Court agrees with Repairify that these statements reflect outside counsel's thought processes and recommendations and are therefore privileged. However, some parts of the slide are not privileged as facts. For example, the fact that a complaint was publicly filed is not privileged, both because it is an underlying fact and because the public filing cannot be confidential. The Court will therefore provide to Repairify a highlighted version of the Legal Update slide. Repairify shall redact the highlighted text and shall provide the redacted slide to Keystone.

\* \* \*

In conclusion, Repairify's motion to compel is **DENIED** and Keystone's motion to compel is **GRANTED-IN-PART**. Repairify shall redact the Legal Update slide as indicated by the Court and produce the redacted slide to Keystone within a week of the date of this order.

**SIGNED** this 17th day of October, 2023.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE