IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| REPAIRIFY, INC., a Delaware corporation, | § § § | |
| Plaintiff, | § § § | |
| v. | § § § | 6:21-cv-00819-ADA |
| KEYSTONE AUTOMOTIVE INDUSTRIES, INC., a California corporation d/b/a Elitek Vehicle Services, and DOES 1 through 20, inclusive, | § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF REPAIRIFY, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR CONTEMPT AND SANCTIONS UNDER FRCP 37(b)(2), OR IN THE ALTERNATIVE, SANCTIONS UNDER 37(c) AND/OR THE INHERENT AUTHORITY OF THIS COURT**

I.   **INTRODUCTION**

Defendant Keystone Automotive Industries, Inc.'s ("Elitek") Motion for Contempt and Sanctions is an unfounded attempt to escalate an ordinary discovery dispute into something much more than it is. The timeline is straightforward. Elitek propounded a Request for Production, and Plaintiff Repairify objected to it. Elitek then narrowed its request and brought a motion to compel. This Court granted Elitek's motion to compel and ordered Repairify to search for and produce any documents found responsive to the narrowed request. Repairify performed a reasonable and diligent search and timely produced all responsive documents it located. This should have been the conclusion of the dispute.

Instead, Elitek seeks to inflame the issues by falsely accusing Repairify of having not informed Elitek that it had previously located and produced responsive documents, and that Repairify must now be withholding other documents. This is unequivocally not true; Repairify clearly stated during meet and confer efforts, and several times during the hearing on the motion to compel, that it *had* produced documents (*see*, *e.g.*, Dkt. No. 133-1 at 15-16); and after the hearing and in the wake of the Court's order, searched to ensure there were no additional summaries. This Court's order did not assume that Repairify had responsive documents nor did it obligate Repairify to create any. Elitek's Motion is based on little more than a few quotes taken out of context and strung together. This does not come close to meeting Elitek's burden to prove contempt with clear and convincing evidence. Further, Elitek's alternative argument that Repairify should be sanctioned because it did not perform a search for documents before Elitek brought its motion to compel also fails because Repairify's objections, although not ultimately successful, were substantially justified. Respectfully, this Court should deny Elitek's Motion.

II.   **BACKGROUND**

The discovery dispute underlying Elitek's Motion is a recent one. It does not date back to

1

Elitek's January 2023 motion to compel, which resulted in a February 2, 2023 Order. Dkt. No. 76. That motion to compel did not concern the Repairify field study referenced in RPFY010557.[1] This Court's grant of partial relief only pertained to studies "that concern the performance of *Repairify products* … ." *Id*. (emphasis added). Specifically, Elitek was given the opportunity to identify such studies to Repairify for production. *Id.* Elitek notes that it identified the field study referenced in RPFY010557 to Repairify, but Repairify correctly objected that the field study was not within the scope of this Court's order because it concerned the performance of aftermarket and OEM scan tools and not the performance of Repairify's products. Dkt. No. 131 ("Mot.") at 2-3.

Elitek conceded that the field study did not concern the performance of Repairify's products when it propounded a new Request for Production, specifically seeking "[d]ocuments relating to the field study discussed in RPFY010557." Dkt. No. 132-3 (RFP 62). During a meet and confer, Elitek narrowed the scope of this broad request to "summaries" of the field study and "additional information about the five specific case studies." Mot. at 3. In response, Repairify's counsel agreed to speak with Repairify about Elitek's narrowed request. Wellman Decl. at ¶ 3. However, Repairify subsequently informed Elitek that it was standing on its objections, and did not agree to produce additional information about the five specific case studies or perform a search to confirm whether additional summaries did or did not exist. Dkt. No. 132-5.

On July 14, 2023, Elitek provided its portion of a discovery dispute chart to Repairify concerning summaries of the field study and the five specific case studies. Wellman Decl., Ex. A. Repairify timely provided its responsive portion on July 19, 2023. *Id.* But, Elitek did not submit the dispute to this Court until *nearly a month later*. Dkt. No. 132-6. At the September 5, 2023 hearing, Magistrate Judge Gilliland granted Elitek's requested relief that Repairify "produce any

---

[1] RPFY010557 is attached to the Declaration of Arthur Wellman ("Wellman Decl.") as Ex. B.

2

summaries of the field study discussed in RPFY10557 as well as documents related to the five specific use cases identified therein." On September 20, 2023, Repairify timely produced the responsive documents it found: the five specific use cases. Mot. at 4. Unsatisfied that Repairify's search did not locate any additional summaries of the field study, Elitek brought its present Motion, which as explained below is baseless.

### III. REPAIRIFY PERFORMED A REASONABLE AND DILIGENT SEARCH AND PRODUCED DOCUMENTS IN COMPLIANCE WITH THIS COURT'S ORDER

Following this Court's Order, Repairify undertook a reasonable and diligent search for summaries of the field study discussed in RPFY010557 and documents related to the five specific use cases identified therein. Declaration of Cristopher Hollingsworth ("Hollingsworth Decl.") at ¶ 3.[2] Repairify's President, Cristopher Hollingsworth, performed a search and confirmed that he did not have any additional summaries of the field study or updated versions of the Excel spreadsheet Repairify produced as RPFY010586. *Id.* Mr. Hollingsworth also instructed Repairify's Vice-President of IT, Jonathan Chatagnier, to perform a search for summaries of the field study. *Id.* Mr. Chatagnier is familiar with the database in which the data from the field study is stored because his team oversees all of Repairify's IT, data management and security systems. *Id.* Mr. Chatagnier was not aware of any further summaries of the field study. *Id.* Mr. Chatagnier also performed a search of all of Repairify's global data archives for summaries and did not locate any. *Id.* To the best of Repairify's knowledge, Repairify does not have possession, custody, or control of any unproduced summaries of the field study. *Id.* at ¶ 4; Wellman Decl. at ¶¶ 4-5. Repairify's search did locate the five specific use cases (Hollingsworth Decl. at ¶ 3), which Elitek concedes Repairify timely produced. Mot. at 4.

---

[2] Prior to bringing its Motion, Elitek did not challenge the sufficiency of Repairify's search for responsive documents or even ask Repairify to describe it.

3

Repairify's search and production complied with this Court's Order. Indeed, Magistrate Judge Gilliland made clear that Repairify was not under any obligation to create new summaries of the field study and that his order did *not* assume that responsive summaries existed, stating, "[i]f the summaries have already been produced, obviously … Repairify can identify those to Elitek and say, look, there's nothing else to produce." Dkt. No. 133-1 at 21:2-12. And this is exactly what Repairify did. Repairify described the previously produced summaries (RPFY010557 and RPFY010586)[3] and confirmed to Elitek that it had performed a reasonable and diligent search but that no further summaries were located. This is all that the law required of Repairify as "[a] party or non-party cannot produce what it does not have and, so, clearly, the court cannot compel a party or non-party to produce non-existent documents." *Moss v. Princip*, No. 3:14-CV-3088-BF, 2017 WL 2879694, at *2 (N.D. Tex. June 1, 2017) (cleaned up and citations omitted).

Elitek's footnoted argument that Repairify was obligated to create a summary of the field study is also without merit. Mot. at 5-6 n.3. The Court's statement at the hearing was directly to the contrary. Dkt. No. 133-1 at 21:2-12. Further, Elitek never argued that Repairify should be ordered to create a summary of the field study and should not be heard now to contend otherwise in the context of a motion for contempt and sanctions. Finally, Elitek's citation to *Crown Life Ins. Co. v. Craig*, is inapposite. Mot. at 5-6 n.3. The holding in *Crown Life* had nothing to do with a duty to create documents, instead the Seventh Circuit rejected a party's excuse for not providing access to certain raw data responsive to a discovery request. *Crown Life Ins. Co.*, 995 F.2d at 1383 (7th Cir. 1993) ("While it may be true that Crown Life could not access the data at the time of the

---

[3] Elitek strangely takes issue with Repairify's notations that the news article produced as RPFY010557 includes a summary of the field study, and that RPFY010586 includes data taken from the field study. Mot. at 1, 7-9. The news article does summarize the field study at a high level (Wellman Decl., Ex. B) and portions of RPFY010586 show information regarding the ability of various devices to scan different makes of vehicles based upon information obtained from the field study. Wellman Decl. at ¶ 5.

4

request, that does not mean that the data did not exist or was not discoverable. … Well over a year was dedicated to discovery. Surely, Crown Life could have made the data available during that time."). That is, the court simply did not believe that the party could not have found a way to make the raw data accessible over the course of the case.

### IV. REPAIRIFY'S ARGUMENTS DID NOT SUGGEST THAT UNPRODUCED SUMMARIES EXIST

Repairify does not have possession, custody, or control of unproduced summaries of the field study and has never suggested otherwise. Wellman Decl., ¶ 5. The proposition of such summaries was only introduced when Elitek narrowed the scope of its overbroad request for "[d]ocuments relating to the field study discussed in RPFY010557" to summaries. Dkt. No. 132-3 (RFP 62). And, Elitek admitted during a meet and confer that such summaries might not exist. Dkt. No. 132-4 ("To the extent such documents [including summaries] do not exist, we requested in the alternative for additional information about the five specific case studies identified in RPFY010557."). And none of the Repairify statements Elitek tries to rely on suggest that such summaries do exist.

First, Elitek argues that Repairify's reference in the opening sentence of its discovery dispute chart to "burdensome production of voluminous data" "confirm[s] the existence of such summaries" of the field study. Mot. at 6 (citing Dkt. No. 132-6). But Repairify's introductory sentence is properly understood in the context of Elitek's own introduction, in which it stated that it was seeking "the *results* of a field study conducted by Repairify." Dkt. No. 132-6 (emphasis added). Repairify was merely responding to Elitek's initial characterization of the request. And the results of the field study are certainly voluminous as RPFY010557 describes the study as involving testing of over 70,000 vehicles. Repairify did not suggest that it had found and was withholding voluminous summaries.

5

Second, Elitek contends that Repairify could not have opposed Elitek's motion on the grounds of relevance, burden, and confidentiality if it was not first aware of unproduced summaries. Mot. at 6-7. This does not withstand scrutiny. Repairify's position has always been that the data from the field study has limited, if not zero relevance to Elitek's enablement defense because the study concerned the performance of directly connected vehicle scan tools rather than of tools that enable remote vehicle diagnostics, which is the field of the Asserted Patents. It follows that summaries of the field study data would be equally irrelevant, *if* they existed. Relatedly, and also in view of the lack of relevance, Repairify was justified to take the position that the burden of performing a search for summaries was disproportionate to the needs of the case. Finally, Repairify has always maintained that the data from the field study was highly confidential to Repairify as the article describing the field study notes that "Repairify invested millions of dollars in creating the database to help identify for its customers when an aftermarket tool might be an appropriate choice." Wellman Decl., Ex. B. Notably, Elitek has never challenged the highly confidential nature of the field study data. It logically follows that a hypothetical summary of highly confidential data would also be highly confidential itself. Nothing in Repairify's discovery dispute chart can reasonably be understood to suggest that Repairify had already located unproduced summaries of the field study.

Third, Repairify's counsel did not "tacitly acknowledge[]" in oral argument at the discovery dispute hearing that unproduced summaries existed. Mot. at 4. Elitek argues to the contrary, pointing to Repairify's counsel's statements concerning the sensitivity and confidential nature of the underlying data. *Id.* But, as explained above, it is reasonable to infer that summaries of highly confidential data—*if they existed*—would also be highly confidential themselves. Further, Repairify's counsel even characterized Elitek's request as a "fishing expedition," which

6

only reinforces that Repairify was not aware of unproduced summaries and instead was opposing Elitek's request in the first instance, i.e., that Repairify should not even have to undertake a search for summaries of the field study. Dkt. No. 133-1 at 18:10-14.

Finally, directly contradicting Elitek's entire premise, Magistrate Judge Gilliland did not understand Repairify's briefing and argument to indicate that unproduced summaries existed, acknowledging that it was *not* clear that "there's anything more to be produced" and that "[i]f the summaries have already been produced, obviously … Repairify can identify those to Elitek and say, look, there's nothing else to produce." Dkt. No. 133-1 at 21:2-9. Elitek cannot show that Repairify ever suggested in connection with the discovery dispute that it was aware of unproduced summaries of the field study.

## V.    REPAIRIFY'S DEPOSITION TESTIMONY DID NOT SUGGEST THAT UNPRODUCED SUMMARIES EXIST

Elitek also argues that Repairify's president, Cris Hollingsworth, testified in deposition that unproduced summaries of the field study exist. Mot. at 7. Not so. Elitek's counsel never directly asked Mr. Hollingsworth about the existence of summaries of the field study. Instead, counsel vaguely asked whether ███ ████████████████████████████████████ ████████████████████ Dkt. 133-2 at 159:17-19 (emphasis added). And Mr. Hollingsworth's testimony was not that there were summaries of the field study, only that the ████████ ████████████████████████████████████████████████████████████████ ████████ *Id.* at 159:21-160:19 (emphasis added). This testimony only confirms that ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ not that Repairify has created summaries. Hollingsworth Decl. at ¶ 5. Similarly, Mr. Hollingsworth did not testify that there are "other documents that may have been generated" in connection with the field study. Mot. at 7. Rather,

7

Mr. Hollingsworth testified ███████████████████████████████████████

███████████████████████████ Dkt. 133-2 at 160:10-19. And the above understanding is confirmed by Elitek's counsel's only follow-up question about summaries, which was to ask ███████████████████████████████████████████████████ *Id.* at 160:20-21. That is, Elitek's counsel understood that Mr. Hollingsworth had not testified that summaries of the field study existed, but only about the presence of data within the database. If Elitek had understood Mr. Hollingsworth's testimony otherwise, it would have argued as much at the discovery dispute hearing, which was more than a week after Mr. Hollingsworth's August 28, 2023 deposition. *See, e.g.*, Dkt. No. 133-2. Elitek has not met its burden to prove with clear and convincing evidence that Repairify has refused to produce responsive summaries or has not performed a reasonable and diligent search for them.

### VI. REPAIRIFY WAS SUBSTANTIALLY JUSTIFIED IN NOT SEARCHING FOR SUMMARIES PRIOR TO THIS COURT'S DISCOVERY ORDER

Elitek argues in the alternative that even if Repairify complied with this Court's discovery order, it should nevertheless be sanctioned for not searching for summaries of the field study *prior* to Elitek's motion to compel and this Court's discovery order. Mot. at 8-9. That is, Elitek's contention is that Repairify was obligated to search for summaries of the field study responsive to Elitek's RFP No. 62 in the first instance and to spare Elitek the effort of bringing a motion to compel—despite Repairify's objections that any potential summaries were not discoverable at all. Elitek cites Fed. R. Civ. P. 37(c)(1), but it does not apply here as the rule only concerns failures to provide information or identify a witness in Rule 26(a) initial disclosures or to supplement information to *previously responded to* discovery responses pursuant to Fed. R. Civ. P. 26(e).[4]

---

[4] Elitek even cites a case regarding sanctions under Fed. R. Civ. P. 37(c), which concerned a party's failure to timely identify witnesses in its initial disclosures. Mot. at 8 (citing *Textron Innovations Inc. v. SJ DJI Tech. Co.*, No. W-21-CV-00740-ADA, 2023 WL 3681712, at *1 (W.D. Tex. Mar. 29, 2023), *report and*

Consequently, the sanction of the establishment of a fact (or legal conclusion) for Repairify's initial refusal to search for summaries is unavailable. Further, the "fact" Elitek asks for an order establishing, "*remote* vehicle diagnostics is a highly unpredictable field," is not sufficiently related to the reason it claimed to need summaries of the field study, which was to show that "vehicle diagnostics is highly unpredictable" (Mot. at 3). *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019), *as revised* (June 6, 2019).

Here, where Repairify stood on its objections to RFP 62, the only available "sanction" under the Federal Rules of Civil Procedure for the initial refusal to search for documents would have been for payment of Elitek's reasonable expenses incurred in making its motion to compel. Fed. R. Civ. P. 37(a)(5). But Elitek did not request such relief in its motion to compel, nor did this Court find that Repairify's objections to RFP 62 were not "substantially justified," which forecloses recovery of those expenses. Given the marginal relevance of the requested information, and its highly confidential nature, Repairify was substantially justified in standing on its objections. And, although this Court ultimately ordered production, Magistrate Judge Gilliland did not indicate that Repairify's position was so unreasonable as to require sanctions. Dkt. No. 133-1 at 21:2-12.

Similarly, because Repairify's objections were substantially justified, sanctions are also not warranted under 28 U.S.C. § 1927, which "must be predicated on actions that are both 'unreasonable' *and* 'vexatious,'" which in turn "requires that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998) (emphasis added) (citation omitted). Elitek does not come

---

*recommendation adopted sub nom. Textron Innovations Inc. v. SZ DJI Tech. Co.*, No. 6:21-CV-00740-ADA, 2023 WL 4084509 (W.D. Tex. June 20, 2023).

9

close to meeting this high bar. Elitek's argument that "[i]f there were no summaries, Repairify could have stated so" (Mot. at 9), ignores that Repairify could not make such a representation without first assuming the burden of a search. Repairify's objections and decision not to make an initial search for summaries were not made in bad faith or with an improper motive and therefore sanctions under 19 U.S.C. § 1927 are not warranted.

Striving to overstate the impact of the discovery dispute, Elitek protests that Repairify's decision not to perform an initial search for summaries "affected Elitek's preparation of its expert report, as it was expecting that production." Mot. at 9. This makes no sense. Because there were no additional summaries to produce, Elitek could not have been affected by waiting for a production that never came. Additionally, as Repairify repeatedly informed both Elitek and this Court during the hearing, Repairify has already produced data showing what Elitek argues would be the probative value of the documents: that not all aftermarket tools provide results equivalent to an OEM tool for all years, makes, and models of vehicles. That fact is shown in both of the documents mentioned that were already provided to Elitek: both the article (RPFY010557) and the Excel spreadsheet (RPFY010586) ███████████████████████████████████████████████████████████████████████ Further, Elitek's own actions demonstrate the marginal importance of the discovery sought. The discovery dispute was fully briefed on July 19, 2023. Wellman Decl., Ex. A. Yet, Elitek held the discovery dispute chart for *nearly a month*, and only submitted it *after* Repairify brought its own motion to compel earlier that day. Dkt. No. 132-6. Elitek's belated submission suggests that it brought it only reflexively—not because it was of great importance to any issue relating to Elitek's claims or defenses.

The weakness of Elitek's arguments are only further underscored by its inaccurate and

10

incomplete recitation of previous discovery disputes. First, as previously explained this dispute does not go back to "last December," it is based on an RFP that Elitek did not propound until April 2023 and Elitek did not submit its dispute to this Court until August 2023. Second, although this Court has granted Elitek relief in some instances, it has also denied other of Elitek's requests or substantially limited the relief. Dkt. Nos. 76, 114. Repairify has consistently worked in good faith to meet its discovery responsibilities. Although Repairify has objected to the significant breadth of certain of Elitek's discovery requests, it has only done so in good faith and has not engaged in anything approaching behavior worthy of sanctions.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendant's motion should be denied in its entirety.

Dated:  October 24, 2023                     Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Ave. Suite B
Tyler, Texas 75703
Tel: (903) 534-1100
Fax: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Arthur Wellman (*admitted pro hac vice*)
PRANGER LAW PC
88 Guy Place, Suite 405
San Francisco, CA 94105
Tel: (415) 885-9800
Fax: (415) 944-1110
Email: awellman@prangerlaw.com

**Counsel for Plaintiff, Repairify, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on October 24, 2023 to all counsel of record who are deemed to have consented to electronic service *via* electronic mail.

*/s/ Eric H. Findlay*
Eric H. Findlay
