**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| REPAIRIFY, INC., and | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:21-cv-00819-ADA |
| | ) | |
| v. | ) | |
| | ) | |
| KEYSTONE AUTOMOTIVE | ) | **JURY TRIAL DEMANDED** |
| INDUSTRIES, INC. d/b/a ELITEK | ) | |
| VEHICLE SERVICES, and DOES 1 | ) | ███████████████████████ |
| through 20, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

PUBLIC VERSION

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................1

II.     Statement of facts ....................................................................................................2

        A.      The Asserted Patents ....................................................................................2

        B.      Elitek's Remote Diagnostics Services ...................................................7

III.    ELITEK DOES NOT INFRINGE ANY ASSERTED CLAIM........................................9

        E.      There is no infringement because no single entity directly infringes any
                Asserted Claim........................................................................................21

                1.      Because no single entity uses the Elitek system, there is no direct
                        infringement of Asserted System Claims. ................................21

                2.      Because no single entity performs all the steps, there is no direct
                        infringement of Asserted Method Claims................................23

IV.     CONCLUSION ......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    324 F. Supp. 3d 470 (D. Del. 2018) .................................................................23

*Akamai Tech., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) ........................................................................24

*Brigham & Women's Hosp., Inc. v. Perrigo Co.*,
    761 F. App'x 995 (Fed. Cir. 2019) .....................................................................9

*Cassidian Commun., Inc. v. microDATA GIS, Inc.*,
    No. 2:12-CV-00162-JRG, 2013 WL 6491477 (E.D. Tex. Dec. 10, 2013).........................18, 20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .........................................................................................9

*Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011) ........................................................................21

*Cordoba v. Dillard's, Inc.*,
    419 F.3d 1169 (11th Cir. 2005) ........................................................................19

*Creative Compounds, LLC v. Starmark,*
    *Lab'ys*, 651 F.3d 1303 (Fed. Cir. 2011) .............................................................9

*ESW Holdings, Inc. v. Roku, Inc.*,
    No. 6-19-CV-00044-ADA, 2021 WL 1069047 (W.D. Tex. Mar. 18, 2021) .........................25

*Exigent Tech., Inc. v. Atrana Sols., Inc.*,
    442 F.3d 1301 (Fed. Cir. 2006).........................................................................9

*Finjan LLC v. SonicWall, Inc.*,
    84 F.4th 963 (Fed. Cir. 2023) ..........................................................................15

*Info. Images, LLC v. PGA TOUR, Inc.*,
    No. 6:20-CV-0268-ADA, 2023 WL 5186883 (W.D. Tex. Aug. 11, 2023) .......................23, 24

*Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
    589 F.3d 1179 (Fed. Cir. 2009).........................................................................17

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017).........................................................................22

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005).........................................................................19

*Kahn v. Gen. Motors Corp.*,
   135 F.3d 1472 (Fed. Cir. 1998)..................................................................................18, 20

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2015) .................................................................................................23, 25

*London v. Carson Pirie Scott & Co.*,
   946 F.2d 1534 (Fed. Cir. 1991).........................................................................................12

*Mas–Hamilton Group v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998)...........................................................................................9

*MDK S.R.L. v. Proplant Inc.*,
   25 F.4th 360 (5th Cir. 2022) ...............................................................................................9

*Novartis Corp. v. Ben Venue Lab'ys, Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001).........................................................................................17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)...........................................................................................9

*Pilot Energy Sols., L.L.C. v. Oxy USA, Inc.*,
   No. AU-16-CA-00687-SS, 2018 WL 3014421 (W.D. Tex. Apr. 6, 2018) ........................17, 20

*Regents of U. of Minnesota v. AGA Med. Corp.*,
   717 F.3d 929 (Fed. Cir. 2013) ......................................................................................17, 20

*Steel Recovery, LLC v. X-Body Equip., Inc.*,
   808 F.3d 1313 (Fed. Cir. 2015)..........................................................................................12

*Synchronous Techs., Inc. v. Dropbox, Inc.*,
   987 F.3d 1358 (Fed. Cir. 2021)..........................................................................................22

*Tomax AS v. Turbo Drill Industries, Inc.*,
   No. 6:21-CV-00260-ADA, 2023 WL 3171744 (W.D. Tex. Apr. 6, 2023)............................19

*Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*,
   15 F.4th 1121 (Fed. Cir. 2021) ..........................................................................................15

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
   782 F.3d 671 (Fed. Cir. 2015) ...........................................................................................10

*Western Express Bancshares LLC v. Green Dot Corp.*,
   No. 19CV4465 (DLC), 2019 WL 4857330 (S.D.N.Y. Oct. 02, 2019) ...................................25

## Statutes

35 U.S.C. § 271(a) ............................................................................................................25

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services ("Elitek") respectfully moves for summary judgment of Plaintiff Repairify Inc.'s ("Repairify") Complaint for Patent Infringement asserting United States Patent Nos. 8,688,313 ("the '313 Patent"), 9,684,500 ("the '500 Patent"), and 10,528,334 ("the '334 Patent") (collectively the "Asserted Patents") because there is no genuine dispute as to any material fact that Elitek does not infringe the Asserted Patents.

The Asserted Patents relate to a system and method of remotely scanning and programming a vehicle.  Each claim of the Asserted Patents requires two communication devices connected over a bi-directional communication link.  The two communication devices provide communication between the vehicle and a scan tool, and that communication enables the remote scan tool to scan and program a vehicle as if the scan tool was proximate to the vehicle.  For several independent reasons, the Elitek system does not infringe the Asserted Patents.  First, ███

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████  Fifth, no single entity directly infringes any Asserted Claim,

which is required for direct infringement.  For any one of these reasons, Elitek respectfully requests that the Court grant summary judgment of non-infringement.

## II.     STATEMENT OF FACTS

### A.     THE ASSERTED PATENTS

Modern vehicles have on-board diagnostic ("OBD") systems that allow a technician using a scan tool connected to the vehicle via an OBD port to access and program a vehicle's electrical sub-systems.  Dkt. No. 1 ("Compl.") at ¶¶ 28-29; Declaration of Joseph Saltiel ("Saltiel Decl."), Ex. A at 1:11-14.[1]  Scanning a vehicle involves "reading data from the vehicle's sub system for diagnostic purposes" (*id.* at 1:20-22) while programming a vehicle involves transmitting "programming packets" from a scan tool to the vehicle.  *Id.* at 11:5-55.  Vehicle manufacturers typically use different communication protocols within their vehicles.  Compl. at ¶ 28; Ex. A at 2:6-57. Therefore, each manufacturer developed specific scan tools that can read, analyze, manipulate, program, and reprogram that particular manufacturer's vehicles.  Compl. at ¶ 30; Ex. A at 3:14-18.  Manufacturer scan tools are relatively expensive and require daily, weekly, or monthly software updates in order to take advantage of the latest programming. Compl. at ¶¶ 30-32; Ex. A at 3:20-24.  Furthermore, a manufacturer's scan tools will only work with its own vehicles, not other manufacturers' vehicles.  *Id.*  Aftermarket scan tools typically work with any type of vehicle but will have limited capability.  Compl. at ¶ 31; Ex. A at 3:4-11. Accordingly, if a technician wants to offer a full range of services across different manufacturers' vehicles, the technician has to purchase each manufacturer's scan tools and software updates to receive the latest software updates.  Compl. at ¶ 32; Ex. A at 3:24-28.

The Asserted Patents, which are in the same patent family and have the same

---

[1] Unless otherwise indicated, citations to exhibits are to the exhibits attached to the Saltiel Decl.

specification, state that there is a need to be able to allow a technician to service a vehicle without having to purchase all of the expensive scan tools and software updates. Compl. at ¶ 33; Ex. A at 4:43-45. Instead of each technician (or repair shop) purchasing all the necessary scan tools and software, the Asserted Patents disclose that individual technicians (or repair shops) could contact a remote call center, which has already purchased the necessary scan tools and software, to perform the scanning and programming of the vehicle from the call center remotely. Compl. at ¶ 33; Ex. A at 4:45-57. To accomplish this, the Asserted Patents disclose the use of communication devices (referred to in the specification as "CIDs"). *Id.* at 5:1-5. A communication device can receive pin signals (vehicle data) from a vehicle or scan tool, convert pin signals into data packets, and transmit data packets over a network. *Id.* at 7:35-40. The communication device can also perform the reverse process of receiving data packets from a network, converting the data packets into pin signals, and transmitting the pin signals to the vehicle or scan tool. *Id.* at 7:64-8:3.

Each claim of the Asserted Patents recites a first communication device connected to a vehicle and located proximate to it and a second communication device connected to a computer/tool and located remote from the vehicle where the first communication device and the second communication device communicate over a bi-directional communication link in such a manner that enables the remote computer/tool to scan and program the vehicle as if the remote computer/tool were located proximate to the vehicle. Ex. A at 14:32-67, Ex. B at 14:57-15:33, Ex. C at 15:62-16:22. During prosecution of the '313 Patent, this last limitation, *i.e.,* where the first communication device and the second communication device communicate over a bi-directional communication link in such a manner that enables the remote computer/tool to scan and program the vehicle as if the remote computer/tool were located proximate to the vehicle,

was added to overcome a prior art rejection.  Ex. D at 2-3.  In adding this limitation, the patentee explained that:

> **[T]he remote tool is able to program the sub-system as if it were located locally and directly connected to the sub-system** through the OBD port.  Using the described system, from the standpoint of the remote tool and the sub-system, they are connected directly to each other and are unaware that they may actually be located miles away.  **The only way to achieve this type of functionality is to provide a continuous connection using a recognized OBD communications protocol between the diagnostic tool and the sub-system.**  The continuous connection, in essence inserts the diagnostic tool as a node in the vehicle's diagnostic data bus.  **In absence of such a continuous connection, the signal to and from the remote tool would fail to meet the latency and integrity requirements required to perform most of the functions of the tool.**

*Id.* at 8-9 (emphasis added).  In other words, what the patentee argued to obtain issuance of the patent is that the communication between the remote communication device and the local communication device was the key to being able to scan and program the vehicle remotely as if it were directly connected to the vehicle.  The latency and integrity requirements are a reference to a safety feature on both scan tools and vehicle sub-systems that require them to time-out if a response is not received in a specified amount of time.  Ex. E at ¶ 413.  A system that sends messages over a network (and through a server) takes more time as compared to a directly connected scan tool.  Because such a system takes more time to communicate, it needs to prevent time-outs if it wants to be able to perform a successful scan or program.  *Id.*  Each Asserted Claim specifies that it is the **communication between the scan tool and the vehicle** that enables the remote scanning and programming.[2]  For example, claim 1 of the '313 Patent provides:

1. A system for remotely programming one or more subsystems of a vehicle, comprising:
   a vehicle connector having a plurality of pins, said pins in communication with a said one or

---

[2] Repairify is asserting Claims 1, 5, and 13 of the '313 Patent, Claims 1 and 7 of the '500 Patent, and Claims 1, 5, and 6 of the '334 Patent (the "Asserted Claims").  Ex. F.  Claim 1 of the '313 Patent, Claim 1 of the '500 Patent, and Claim 1 of the '334 Patent are independent.  Ex. A at 14:32-14:67, 15:63-16:24, Ex. B at 14:57-15:33, Ex. C at 14:62-15:22.

more subsystems;

a vehicle communication device connected to said vehicle connector;

**a bi-directional communication link** between said vehicle communication device and a remote communication device;

a computer system connected to said remote communication device;

wherein said vehicle communication device is configured to:

receive one or more outgoing pin signals present on said pins, said pin signals containing data corresponding to one or more said sub-systems;

convert said one or more outgoing pin signals to a network-compatible vehicle packet;

transmit said vehicle packet to said remote communication device over said bi-directional communication link;

wherein said remote communication device is configured to:

re-convert said vehicle packet to said one or more outgoing pin signals; and

transmit said one or more outgoing pin signals to said computer system; and

wherein **said computer system and said vehicle connector are engaged in continuous bi-directional communication** using a standard OBD communications protocol; and

wherein said **computer system is enabled by said continuous bi-directional communication** using a standard OBD communications protocol to actively and continuously communicate with, **scan and program said subsystems as if it were located proximate to said vehicle.**

Ex. A at 14:31-67 (emphasis added).  Claim 9 of the '313 Patent provides:

9. A method of remotely programming one or more sub-systems of a vehicle, comprising:

connecting a vehicle communication device and a remote communication device; said vehicle communication device in communication with said one or more sub-systems and said remote communication device in communication with a computer system;

establishing **continuous bi-directional communication** using a standard OBD communications protocol **between said vehicle communications device and said computer system** said computer system requesting, from said vehicle communication device over said **continuous bi-directional communication link**, a network-compatible vehicle packet corresponding to one or more outgoing pin signals from said one or more vehicle sub-systems;

receiving, on said remote communication device over said continuous bi-directional communication link, said network-compatible vehicle packet;

converting, on said remote communication device, said vehicle packet to said one or more outgoing pin signals; and transmitting said one or more outgoing pin signals to said computer system;

wherein said **computer system is enabled by said continuous bi-directional communication** using a standard OBD communications protocol to actively and continuously communicate with, **scan and program said sub-systems as if it were located proximate to said vehicle.**

*Id.* at 15:63-16:35 (emphasis added).  Claim 1 of the '500 Patent provides:

1. A system for remotely programming a subsystem of a subject vehicle, comprising:

a first communication device located proximate to a subject vehicle comprising:

a first interface that interfaces with a vehicle computer system for the subject vehicle and providing bi-directional communication with the vehicle computer system using a standard OBD communications protocol;

a second interface that interfaces with a communication network; and

a first communication processor that controls communications over the first and second interfaces; and

a second communication device located remotely from the subject vehicle comprising;

a third interface that interfaces with the communication network, the communication network providing **a bi-directional communication link** between the first communication device and the second communication device;

a fourth interface that interfaces with a vehicle scan tool located proximate to the second communication device; and

a second communication processor that controls communications over the third and fourth interfaces, wherein the second communication processor is enabled to:

Request, from the vehicle computer system over the bi-directional communication link, one or more outgoing pin signals the vehicle sub-system;

Receive, over the bi-directional communication link, a network-compatible vehicle packet corresponding to the outgoing pin signal;

Convert the vehicle packet to said one or more outgoing pin signals; and

Transmit the one or more outgoing pin signals to the vehicle scan tool;

wherein **the first communication device and the second communication device provide communication between the vehicle scan tool and the vehicle computer system to enable** the vehicle scan tool **to scan and program a vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle.**

Ex. B at 14:57-15:33 (emphasis added).  Claim 1 of the '334 Patent provides:

1.     A method for remotely programming a sub-system of a subject vehicle, comprising:

establishing, by a first communication device located proximate to a vehicle scan tool and comprising a first communication device processor, **a bi-directional**

**communication link** with a second communication device over a communication network, the second communication device located proximate to a subject vehicle and remote from the first communication device;

requesting, by the first communication device, over the bi-directional communication link and via the second communication device, an outgoing pin signal from a vehicle sub-system for the subject vehicle;

receiving, by the first communication device, over the bi-directional communication link, a network-compatible vehicle packet corresponding to the outgoing pin signal;

converting, by the first communication device, the vehicle packet to the outgoing pin signal; and

communicating, by the first communication device, the outgoing pin signal to the vehicle scan tool;

wherein **the first communication device and the second communication device provide communication between the vehicle scan tool and the vehicle sub-system to enable** the vehicle scan tool **to scan and program the vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle.**

Ex. C at 14:62-15:22 (emphasis added).

## B.   ELITEK'S REMOTE DIAGNOSTICS SERVICES



### III.    ELITEK DOES NOT INFRINGE ANY ASSERTED CLAIM.

Repairify bears the burden to prove patent infringement.  *Creative Compounds, LLC v. Starmark Lab'ys*, 651 F.3d 1303, 1314 (Fed. Cir. 2011).  When a non-moving party bears the burden of proof, the moving party need only demonstrate an absence of evidence.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022).  The non-moving party must then introduce evidence demonstrating that a genuine dispute of material fact is present.  *Celotex*, 477 U.S. at 322–23; *Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006) (affirming summary judgment of non-infringement where patentee failed to present evidence to support genuine issue of material fact).  Where an accused infringer files for summary judgment of non-infringement, "nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." [3]  *Exigent*, 442 F.3d at 1309.  "If even one limitation is missing or not met as claimed, there is no literal infringement."  *Brigham & Women's Hosp., Inc. v. Perrigo Co.*, 761 F. App'x 995, 1003 (Fed. Cir. 2019) (citing *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)).  Where the determination of infringement hinges on resolving a dispute over the meaning or scope of a claim term, the resolution of that issue cannot be brought to the jury because it is "the court's duty to resolve it."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

---

[3] With this motion, Elitek is filing motions to strike and exclude portions from the report of Repairify expert Anthony DeRosa.  If either motion is granted, Repairify will be unable to present evidence of infringement of any Asserted Claim providing additional independent reasons for the Court to grant summary judgment of non-infringement.

A.   **The communication between the vehicle and the scan tool in the Elitek system is not what enables remote scanning and programming.**

Claims 1 and 9 of the '313 Patent require that the remote "computer system [scan tool] is enabled by said continuous bi-directional communication," to scan and program the vehicle.  Ex. A at 14:63-67; 16:20-24.  Claims 1 and 9 of the '313 Patent further recite that the "continuous bi-directional communication" is the communication between the vehicle and the scan tool.  *Id.*  Claim 1 of the '500 and claims 1 of the '334 Patent require that "the first communication device and the second communication device provide communication between the vehicle scan tool and the vehicle [computer/sub] system to enable the vehicle scan tool to scan and program a [vehicle/sub-system]."  Ex. B at 15:27-31, Ex. C at 15:16-20.  In other words, the Asserted Claims require that the communication ***between the scan tool at the remote location and the vehicle enable*** the scan tool to scan and program the vehicle remotely.  As discussed above, when this limitation was added during the prosecution to overcome the cited prior art, the patentee emphasized that this claimed feature was imperative "to meet the latency and signal requirements required to perform most of the functions of the tool," otherwise the tool will time-out.  Ex. D at 9.  Therefore, the plain and ordinary meaning of this term requires that the communication between the scan tool and the vehicle ensures that the scan tools do not time-out while performing remote scanning and programming.  *See Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 679 (Fed. Cir. 2015) (applying plain and ordinary meaning where the prosecution history "only provide[d] one definition and this meaning does not conflict with the plain and ordinary meaning of the term").

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ Thus, the Elitek system does not infringe any

Asserted Claim.  *See Adv. Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317

(Fed. Cir. 2015) (affirming summary judgment of non-infringement for a missing claim

limitation); *see also London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991)

(affirming summary judgment of non-infringement because "[t]here can be no infringement as a

matter of law if a claim limitation is totally missing from the accused device") (citation omitted).

### B.   A SCAN TOOL USING THE ELITEK SYSTEM DOES NOT SCAN AND PROGRAM AS IF THAT SCAN TOOL WERE DIRECTLY CONNECTED TO THE VEHICLE.

The Asserted Claims require that the remote scan tool scan and program the vehicle sub-

systems ***as if it were located proximate to the vehicle***.  Saltiel Decl., Ex. A at 14:67, 16:24, Ex.

---

[4] Repairify's expert identified several different ways in which the communication in a system
can enable remote scanning and programming.  Ex. J at ¶¶ 116-127. ████████████████████
████████████████████████████████████████████████████████████████████

B at 15:32, Ex. C at 15:21, 16:22.  The Court construed this term to have its plain and ordinary meaning.  Dkt. No. 100 (Claim Construction Hearing Transcript) at 61:1-2.  In other words, a remote scan tool should be able to perform the same functions remotely that it could perform when the same scan tool is directly connected to a vehicle.  Saltiel Decl., Ex. E at ¶¶ 429, 459.  Both of Repairify's technical experts agree that this limitation requires that the remote scan tool scan and program the same as if it were directly connected to the vehicle.  *See, e.g.,* Ex. H at ¶ 154, Ex. I at 169:7-170:10, Ex. K at ¶¶ 22, 46, 98, 108, 129, Ex. L at 136:15-138:2



██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████  Because Repairify did not try to establish if a scan tool using the Elitek system met this limitation or rebut the aforementioned evidence, summary judgment of non-infringement is appropriate.  *See Finjan LLC v. SonicWall, Inc.*, 84 F.4th 963, 971 (Fed. Cir. 2023) (summary judgment of non-infringement because "unrebutted evidence" showed claim limitation was missing from accused product); *Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1135 (Fed. Cir. 2021) (summary judgment of non-infringement because patentee failed to "provide the critical link from evidence to infringement").

Instead of considering whether a remote scan tool using the Elitek system scans and programs as if it were directly connected to a vehicle, Repairify's expert identified three alternative bases to support his opinion that the Elitek system met this limitation, but none of these are sufficient to present a genuine dispute of material fact to defeat summary judgment of non-infringement.  First, Repairify's expert cites to an uncorroborated third-party marketing documents that states it "is possible" to provide remote programming and that a technician "can approach vehicles as if they were in the vehicle themselves."  Ex. H at ¶ 136.  Despite no evidence to support that this document is referring to the Elitek system, this document does not

state that the remote scan tool will scan and program the same as a directly connected scan tool, but instead states that remote scanning and programming is possible alleviating the need for the technician to be at the vehicle.  *Id.*

Second, Repairify's expert cited another uncorroborated marketing document from Elitek's website.  *Id.* at ¶ 153.  That document, however, merely states that the Elitek system offers remote diagnostics that conduct "diagnostics scan(s) [and] enable remote programming where applicable."  *Id.*  Like the previous document, this document does not state that the remote scan tool will scan and program as if the same as when directly connected.  *Id.*

Given his limited analysis and failure to explain why it applies generally to the Elitek system, Repairify's expert opinion that a scan tool using the Elitek system scans and programs as if it were directly connected is nothing other than unsupported conclusory opinion, especially in light of the contradictory evidence that he ignores, and thus, it is not sufficient to oppose summary judgment of non-infringement.  *See Regents of U. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013) ("[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment") (citation omitted); *see also Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc*., 589 F.3d 1179, 1184 (Fed. Cir. 2009) (summary judgment of non-infringement where expert did not "pinpoint where those elements are found in the accused devices"); *Novartis Corp. v. Ben Venue Lab'ys, Inc*., 271 F.3d 1043, 1050-51 (Fed. Cir. 2001) (summary judgment of non-infringement because patentee did not have an "explicit factual foundation" for infringement); *Pilot Energy Sols., L.L.C. v. Oxy USA, Inc.*, No. AU-16-CA-00687-SS, 2018 WL 3014421, at *3 (W.D. Tex. Apr. 6, 2018) ("unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.").

### C.   THE ELITEK SYSTEM DOES NOT HAVE A BI-DIRECTIONAL COMMUNICATION LINK BETWEEN COMMUNICATION DEVICES.

The Asserted Claims require a bi-directional communication link between the vehicle-side communication device and the tool-side communication device.  *See* Ex. A at 14:38-41, 16:7-9, Ex. B at 15:6-7, Ex. C at 14:66-67. █████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████ the Elitek system does not literally infringe any

Asserted Claim. *See Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998) (absence

of a single limitation precludes literal infringement); *see also Cassidian Commun., Inc. v.

microDATA GIS, Inc.*, No. 2:12-CV-00162-JRG, 2013 WL 6491477, at *5 (E.D. Tex. Dec. 10,

2013) (no infringement, as a matter of law, if even a single limitation is not satisfied).

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ For at least

two reasons, Repairify's expert opinion is insufficient to defeat a motion for summary judgment

of non-infringement.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████ Expert speculation is not enough to defeat summary judgment. *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1080 (Fed. Cir. 2005) (holding expert speculation insufficient to defeat summary judgment); *see also Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (citation omitted).

██████████████████████████████████████████████████████████

████████████████████████████████████████ Because Repairify did not make this doctrine of equivalents argument in its final infringement contentions, Repairify's expert is precluded from opining on it for the first now.  *See* Elitek's Motion to Strike being filed contemporaneously herewith.  Therefore, for this additional reason, summary judgment of non-infringement is appropriate.  *Tomax AS v. Turbo Drill Industries, Inc.*, No. 6:21-CV-00260-ADA, 2023 WL 3171744, at *9 (W.D. Tex. Apr. 6, 2023) (granting summary judgment of non-infringement after striking expert's improper equivalents argument because "it would not be possible for plaintiff Tomax to make out its case-in-chief.")

D.    THE ELITEK SYSTEM CANNOT SCAN AND PROGRAM CERTAIN VEHICLES.

As above, in order to show infringement, Repairify has the burden of demonstrating that each and every claim limitation is present in the accused product.  The Asserted Claims require that the remote computer/scan tool ***scan and program*** the vehicle sub-systems.  Ex. A at 14:66, 16:23, Ex. B at 15:30-31, Ex. C at 15:19-20, 16:20-21. ████████████████████████████████

E.   **THERE IS NO INFRINGEMENT BECAUSE NO SINGLE ENTITY DIRECTLY INFRINGES ANY ASSERTED CLAIM.**

1.   **Because no single entity uses the Elitek system, there is no direct infringement of Asserted System Claims.**

Repairify alleges that Elitek directly infringes system claims 1 and 5 of the '313 Patent and system claims 1 and 7 of the '500 Patent ("Asserted System Claims").  *See* Ex. H at ¶¶ 38-39.  Repairify has not identified any evidence that any entity makes, offers for sale, sells, or imports the entire Elitek system.  *Id.*  And, it cannot because, as described above, the Elitek system comprises multiple components made, imported, and sold by various different entities, *e.g.,* vehicle, scan tool, communication network, and communication devices.  *See supra*, Sections II.B.  Hence, the only issue to resolve for the Asserted System Claims is whether a single entity uses the Elitek system within the meaning of 35 U.S.C. § 271(a).

To be liable for direct infringement for using a system claim under 35 U.S.C. § 271(a), a single entity must "put the invention into service."  *Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (citation omitted).  Putting the invention into service means a single entity must "control the system as a whole and obtain benefit from it."  *Id.* That is, the single entity must use all portions of the claimed invention and benefit from each element of the claimed invention.  *Id.  Centillion* involved a billing software system containing two parts: "back-end office systems" controlled by the defendant and "front-end client applications" that the defendant's customers installed on their personal computers.  *Id.* at 1281. The back-end of the system would either perform monthly processing of customer data automatically or, at the customer's request, generate "on-demand" reports.  *Id.  Centillion* found that the defendant did not "use" the accused system for purpose of infringement because, despite owning and operating the back-end components of the system, it did not exercise sufficient control over the accused system to "put the invention into service."  *Id.* at 1286-87; *see also*

*Synchronous Techs., Inc. v. Dropbox, Inc.,* 987 F.3d 1358, 1369 (Fed. Cir. 2021) (dismissal of direct infringement for claims requiring both hardware and software elements where the customer used the software and defendant possessed the hardware); *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (no liability for use of a claim because no single entity controlled and benefited from each claimed component).

No single entity directly infringes the Asserted System Claims because no single entity controls the system as a whole and benefits from it. The Asserted System Claims require a communication device connected to a vehicle, a communication device connected to a scan tool, and a bi-directional communication link between the two communication devices. *See* Ex. A at Claim 1, Ex. B at Claim 1, Ex. C at Claim 1. ██████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████

Repairify does not allege that a single entity controls and benefits from each element of the Asserted System Claims as it must. *Id.* at ¶¶ 233-236, 271-279. ████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████



Furthermore, at least according to Repairify's expert, the customer, not Elitek, benefits from the use of the system.  *Id.* at ¶¶ 234, 276, 279.  Because there is no single entity that controls and benefits from the system, there can be no direct infringement, making summary judgment appropriate.  *See Info. Images, LLC v. PGA TOUR, Inc.*, No. 6:20-CV-0268-ADA, 2023 WL 5186883, at *13 (W.D. Tex. Aug. 11, 2023) (summary judgment of non-infringement because operator of back-end components did not control the front-end components that put the system into use); *Acceleration Bay LLC v. Activision Blizzard*, Inc., 324 F. Supp. 3d 470, 482 (D. Del. 2018) (no "use" despite owning and providing system for online video game network because defendant did not obtain the benefit from its use).  And because there is no direct infringement of the Asserted System Claims, there can be no indirect infringement either. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2015).

> **2.      Because no single entity performs all the steps, there is no direct infringement of Asserted Method Claims.**

Repairify alleges that Elitek directly infringes method Claim 13 of the '313 Patent and method claims 1, 5, and 6 of the '334 Patent ("Asserted Method Claims").  Ex. F, Ex. H at ¶¶ 38,

39.  For method claims, direct infringement "occurs where all the steps of a claimed method are performed by or attributable to a single entity." *Akamai Tech., Inc. v. Limelight Networks, Inc*., 797 F.3d 1020, 1022 (Fed. Cir. 2015); *see also PGA TOUR*, 2023 WL 5186883, at *5.  When multiple entities perform steps, "a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement."  *Akamai*, 797 F.3d at 1022.  An entity is responsible for another's performance of method steps where the actors form a joint enterprise or where that entity directs or controls the others' performance.  *Id.*

Repairify does not allege that Elitek and its customers have formed a joint enterprise, but, instead, Repairify's expert alleges that divided infringement exists because "Elitek is responsible for the performance of any claimed method steps arguably performed by third parties."  *See id.* at ¶¶ 237, 297.  Therefore, to prevail on divided infringement of the Asserted Method Claims, Repairify has to show that Elitek directs and controls its customers by conditioning the use of the Elitek system upon performance of each step in the Asserted Method Claims and establishing the manner or timing of that performance.  *Akamai*, 797 F.3d at 1023.

Here, the Asserted Method Claims recite a method that requires that a vehicle scan tool be able to ***scan and program*** a vehicle remotely.  *See* Ex. A at Claim 9, Ex. C at Claim 1. Repairify's expert does not allege that Elitek conditions the use of its system to require both

scanning and programming a vehicle remotely.  Ex. H at ¶¶ 237-241, 297-303.  To the contrary, a customer may request scanning, programming, some other scan tool function, or some non-scan tool related request such as technical support.  *See* Saltiel Decl., Ex. O at 6-7.  In order words, the customer can benefit from the Elitek system without infringing it because the customer is free to use the system to scan, but not program, or program, but not scan, or neither. Therefore, Elitek does not infringe the Asserted Method Claims because it does not require its customer to both scan and program remotely as required by the Asserted Method Claims.  *ESW Holdings, Inc. v. Roku, Inc*., No. 6-19-CV-00044-ADA, 2021 WL 1069047, at *4 (W.D. Tex. Mar. 18, 2021) (summary judgment of no divided infringement where users were not required to perform a step of method patent to obtain benefit); *see also Western Express Bancshares LLC v. Green Dot Corp.*, 2019 WL 4857330, at *4-5 (S.D.N.Y. Oct. 02, 2019) (dismissing direct infringement allegations for method claim for not alleging that the defendant required third parties to practice the elements in the method claim).  And because there is no direct infringement of the Asserted Method Claims, there can be no indirect infringement of them either.  *Limelight*, 572 U.S. at 921.

## IV.   CONCLUSION

For the foregoing reasons, Elitek respectfully requests that the Court enter summary judgment that Elitek does not infringe any claim of the Asserted Patents.

Dated:  March 15, 2024                    Respectfully submitted,

                                          By: _/s/ *Barry F. Irwin*_____

                                          Barry F. Irwin, P.C. (admitted *pro hac*)
                                          Joseph Saltiel (admitted *pro hac*)
                                          Andrew D. Gordon-Seifert (admitted *pro hac*)
                                          Alexander Bennett (admitted *pro hac*)
                                          Emad S. Mahou (admitted *pro hac*)

                                          **IRWIN IP LLP**
                                          150 N Wacker Dr, Ste 700
                                          Chicago, IL 60606
                                          (312) 667-6080
                                          birwin@irwinip.com
                                          jsaltiel@irwinip.com
                                          agordon-seifert@irwinip.com
                                          abennett@irwinip.com
                                          emahou@irwinip.com

                                          Barry K. Shelton
                                          Texas State Bar No. 24055029
                                          **WINSTON & STRAWN LLP**
                                          2121 N. Pearl Street, Suite 900
                                          Dallas, TX 75201
                                          bshelton@winston.com
                                          (214) 453-6407 (Telephone)

                                          *Attorneys for Defendant Keystone Automotive*
                                          *Industries, Inc. d/b/a Elitek Vehicle Services*

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on all counsel of record via email.

/s/ *Barry F. Irwin*
Barry F. Irwin
