**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| REPAIRIFY, INC., | |
| Plaintiff | |
| v. | 6:21-cv-00819 |
| KEYSTONE AUTOMOTIVE INDUSTRIES, INC. d/b/a ELITEK VEHICLE SERVICES, and DOES 1 through 20, inclusive, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF'S OPPOSED MOTION FOR RELIEF FROM ORDERS UNDER FEDERAL
RULES OF CIVIL PROCEDURE 54(b), 59(e), AND 60(b)**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    BACKGROUND FACTS ...................................................................................... 2

    A.    Repairify's Response to Defendant's Motion to Dismiss and Motion for Summary Judgment ......................................................................................... 2

    B.    The Executed Bill of Sale ............................................................................ 4

III.    LEGAL STANDARD ........................................................................................... 6

IV.    ARGUMENT ......................................................................................................... 7

    A.    The Bill of Sale Transferred All the Asserted Patents to Repairify ........................ 7

    B.    Relief Under Rules 54(b) and 59(e) is Proper as the Newly Discovered Executed Bill of Sale Evidences a Manifest Error of Fact ..................................... 9

    C.    Relief Under Rule 60(b)(1) is Proper as Failing to Identify and Submit the Executed Bill of Sale to the Court was the Result of Mistake and Excusable Neglect ......................................................................................................... 10

        i.    Mistake ........................................................................................... 10

        ii.    Excusable Neglect ........................................................................... 11

        iii.    The Fifth Circuit's Equitable Framework Favors Relief ........................... 13

    D.    Relief Under Rule 60(b)(6) Is Proper as It Would Be Manifestly Unjust to Uphold the Court's Orders in Light of the Executed Bill of Sale ........................... 14

V.    CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*2525 Capital Grp., LLC v. Dallas Home for Jewish Aged, Inc.*,
  Case No. 3:08-cv-1673, 2010 U.S. Dist. LEXIS 59216 (N.D. Tex. June 11, 2020)..................8

*Apodaca-Fisk v. Allen,*
  Case No. 19-cv-00259, 2021 U.S. Dist. LEXIS 28696 (W.D. Tex. Feb. 16, 2021) ..................9

*As v. Turbo Drill Indus.*,
  Case No. 6:21-cv-00260, 2023 U.S. Dist. LEXIS 78007 (W.D. Tex. Apr. 6, 2023) ..................9

*Austin v. Kroger Tex., L.P.*,
  864 F.3d 326 (5th Cir. 2017)................................................................................................6, 9

*Batts v. Tow-Motor Forklift Co.*,
  66 F.3d 743 (5th Cir. 1995)....................................................................................................14

*Boss Exotics, LLC v. Crosta & Partners, LLC*,
  Case No. 3:20-cv-1835, 2023 U.S. Dist. LEXIS 179719 (N.D. Tex. Oct. 5, 2023) ..................8

*Buck v. Davis*,
  580 U.S. 100 (2017) ..............................................................................................................14

*Coleman Hammons Constr. Co. v.* OSHRC,
  942 F.3d 279 (5th Cir. 2019)............................................................................................10, 11

*D.R.T.G. Builders, L.L.C. v. OSHRC*,
  26 F.4th 306 (5th Cir. 2022)....................................................................................................11

*Diaz v. Stephens*,
  731 F.3d 370 (5th Cir. 2013)....................................................................................................6

*Edward H. Bohlin Co. v. The Banning Co.*,
  6 F.3d 350 (5th Cir. 1993).....................................................................................6, 10, 13, 14

*Faciane v. Sun Life Assur. Co.,*
  931 F.3d 412 (5th Cir. 2019)....................................................................................................6

*Good Luck Nursing Home, Inc. v. Harris*,
  636 F.2d 572 (D.C. Cir. 1980) ................................................................................................14

*Hesling v. CSX Transp., Inc.*,
  396 F.3d 632 (5th Cir. 2005)....................................................................................................7

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
  Case No. 16-2740, 2024 U.S. Dist. LEXIS 5809 (E.D. La. Jan. 10, 2024)..............................10

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
    910 F.2d 167 (5th Cir. 1990)..................................................................................6, 9, 14

*Nat'l City Golf Fin. v. Scott*,
    899 F.3d 412 (5th Cir. 2018)...............................................................................................10

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993) ............................................................................................................11

*Pryor v. U.S. Postal Servs.*,
    769 F.2d 281 (5th Cir. 1985)...............................................................................................10

*Schiller v. Physicians Res. Grp., Inc.*,
    342 F.3d 563 (5th Cir. 2003).................................................................................................9

*Sevadjian v. Tex. DMV*,
    Case No. 21-40348-MXM-11, 2023 Bankr. LEXIS 2825 (Bankr. N.D. Tex. Nov. 28, 2023)... 8

*Seven Elves, Inc. v. Eskenazi*,
    635 F.2d 396 (5th Cir. 1981).................................................................................................6

*Tow v. Henley*,
    480 B.R. 708 (Bankr. S.D. Tex. 2012)...................................................................................7

*Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*,
    920 F.3d 243 (5th Cir. 2019).................................................................................................8

## Rules

Fed. R. of Civ. P. 54(b)...........................................................................................passim

Fed. R. of Civ. P. 59(e)...........................................................................................passim

Fed. R. of Civ. P. 60(b)...........................................................................................passim

## I.     INTRODUCTION

Plaintiff Repairify, Inc. ("Repairify") accused Defendant Keystone Automative Industry, Inc. ("Defendant") of infringing three patents. In 2022, Defendant moved to dismiss two of the patents for lack of standing, arguing that the documents produced by Repairify did not establish that Repairify owned the patents. Dkt. 55. On May 23, 2024, the Court granted Defendant's motion to dismiss as to U.S. Patent No. 9,684,500 ("the '500 Patent"). Dkt. 264. The Court did so based on its conclusion that the two documents relied on by Repairify's prior counsel to show ownership of the '500 patent (an Asset Purchase Agreement ("APA") and a supplemental Patent Assignment Agreement) lacked affirmative language assigning ownership of the patent to Repairify. Dkt. 263, 12:8–21:3. Two weeks later, the Court granted summary judgment that U.S. Patent No. 10,528,334 ("the '334 Patent") was unenforceable because the Court's May 23 ruling meant there was no common ownership between the '500 and '334 Patents. Dkt. 275, 13–15.

Repairify's new counsel has identified a different document – an executed Bill of Sale dated July 28, 2015 – that unequivocally assigned all rights to the applications that issued as the '500 and '334 Patents to Repairify. Ex. 4. The absence of this critical document significantly altered this case, leading to an unjust outcome dismissing two entire patents from this lawsuit based on an alleged lack of ownership, when in fact the executed Bill of Sale proves that Repairify owns both patents.

In light of this newly uncovered evidence, Repairify moves for relief under Federal Rules of Civil Procedure 54(b), 59(e), and 60(b), and respectfully requests that the Court reverse its prior rulings dismissing Count II (relating to the '500 patent) and Count III (relating to the '334 Patent). The failure to previously identify the executed Bill of Sale in response to Defendant's motions was an unintentional mistake that occurred despite diligent efforts by prior counsel to

manage the case and resulted in a manifest error of fact. Accordingly, the circumstances fall squarely within the grounds for relief under Rules 54(b), 59(e), and 60(b)(1). Alternatively, relief is justified under Rule 60(b)(6) because the omission of the executed Bill of Sale constitutes an extraordinary circumstance, and its absence resulted in a manifestly unjust outcome.

Relief is particularly important given the potential ramifications that the Court's prior rulings could have beyond this case. The patents-in-suit protect Repairify's highly valuable business and are likely to be the subject of future litigation against other entities. At the same time, granting relief will neither complicate the upcoming trial nor unfairly prejudice Defendant. Because the Court separately granted summary judgment that the '500 Patent is not infringed, the requested relief would only revive Repairify's claim for infringement of three claims in the '334 Patent in this case. Dkt. 275. Therefore, Repairify does not anticipate this adding any additional time to the trial. Finally, bringing the '334 Patent back into this case will not unfairly prejudice Defendant as all discovery, claim construction, expert, and pretrial work has been completed for that patent.

## II.   BACKGROUND FACTS

### A.   Repairify's Response to Defendant's Motion to Dismiss and Motion for Summary Judgment

On August 9, 2021, Repairify initiated this action against Defendant, alleging infringement of U.S Patent No. 8,688,313 ("the '313 Patent"), the '500 Patent, and the '334 Patent (collectively the "Asserted Patents."). Dkt. 1. Repairify acquired the rights to the Asserted Patents during a Chapter 11 bankruptcy proceeding involving the sale of all assets belonging to AES Technologies, LLC ("AES") that occurred in July of 2015.

On July 7, 2022, Defendant requested discovery of documents related to the title, ownership, and assignment of the Asserted Patents. (Wellman Decl. ¶ 4). Repairify's prior

counsel diligently sought these documents from Repairify's bankruptcy counsel used during the acquisition of the Asserted Patents ("Bankruptcy Counsel"). (*Id.* at ¶ 5). Prior counsel requested that Bankruptcy Counsel send documents regarding Repairify's acquisition of assets, including the patents from AES and the prior owners, and the chain of title. (*Id.*). Bankruptcy Counsel responded by sending documents that included the executed APA, the Seller Disclosure Schedule, and the executed Patent Assignment Agreement. (Decl. ¶ 6, Exs. 1–3).

Shortly thereafter, on September 20, 2022, Repairify served amended responses to Defendant's discovery requests, agreeing to search for and produce documents "concerning Repairify's acquisition of the Asserted Patents." (Decl. ¶ 7). Prior counsel again contacted Bankruptcy Counsel to request assurance that it had a complete set of documents or whether any additional documents would be sent. (*Id.*). Bankruptcy Counsel indicated they believed they had sent all responsive documents in their possession. (*Id.*). Based on this, prior counsel believed it had a complete file of all executed documents from the bankruptcy proceeding relating to ownership of the Asserted Patents. (*Id.* at ¶ 8).

Consequently, when Defendant moved to dismiss Counts II and III, alleging that Repairify lacked ownership of the '500 and '334 Patents, prior counsel believed the executed APA (Ex. 1), the Seller Disclosure Schedule (Ex. 2), and the executed Patent Assignment Agreement (Ex. 3) were the controlling documents evidencing the transfer of all assets including the Asserted Patents. (Decl. ¶ 10). This belief was supported by the assignment records filed with the United States Patent & Trademark Office ("USPTO") for the Asserted Patents, which included only the executed Patent Assignment Agreement (Ex. 3). (Decl. ¶ 9). To prior counsel, this appeared consistent with how intellectual property rights are customarily transferred. (*Id.*).

On May 24, 2024, the Court dismissed Count II, finding that these documents alone only assigned the rights to the '313 Patent as they lacked affirmative language assigning ownership of the '500 Patent. Dkt. 264. The following week, Repairify moved for reconsideration of the Court's ruling. Dkt. 267.  Defendant also moved for summary judgment that the '334 Patent was unenforceable due to a terminal disclaimer filed during prosecution of the '334 Patent that required common ownership of the '500 and '334 Patents. Dkt. 270.

On June 7, 2024, the Court denied the Motion for Reconsideration and granted the Motion for Summary Judgment. Dkt. 275.

On June 12, 2024, the parties reached an agreement in principle to settle the dispute (Dkt. 278) and spent the next six weeks trying to finalize a formal written agreement. However, by July 26, 2024, the parties had reached an impasse on several key terms, leading Defendant to file a Motion to Enforce Settlement. Dkt. 282. On September 5, 2024, the Court denied Defendant's motion and set the case for trial. Dkt. 298.

### B.      The Executed Bill of Sale

After the Court granted the motion to dismiss the '500 Patent, Repairify re-engaged Bankruptcy Counsel to determine whether an argument had been overlooked or if further action with the bankruptcy court could be taken to cure the title defect. (Decl. ¶ 12). On June 6, 2024, Bankruptcy Counsel sent to prior counsel a document they had never seen before and did not know existed: an executed Bill of Sale dated July 28, 2015. (*Id.*; Ex. 4.)[1] This Bill of Sale unequivocally transferred all assets from AES to Repairify, including the patent application that resulted in the '500 Patent and to which the '334 Patent claims priority. Ex. 4.

---

[1] While the document was received the day before the June 7 hearing on the Motion for Reconsideration, arguing counsel did not have an opportunity to substantively review the document or appreciate its impact until after the hearing. (*Id.* at ¶¶ 11–13).

Specifically, the Bill of Sale states:

> Effective as of the Closing Date, Seller **hereby sells, transfers, assigns, conveys and delivers** to Buyer all of Seller's **right, title and interest** in and to **all of the Purchased Assets** . . . free and clear of all Liens.

Ex. 4 at ¶ 2. The APA defines "Purchased Assets" as "Transferred Assets other than Contributed Assets." Ex. 1 at 16. "Transferred Assets" in turn is defined to include "all of the Seller's right, title and interest" to "all Intellectual Property Rights owned, used or held for use in the Business *including those listed on Section 3.9(a)(i) of the Disclosure Schedule*." *Id.* at 16–18 (emphasis added). The APA further defines "Intellectual Property Rights" to include all patent rights "arising by operation of law, contract, license or otherwise" such as "***applications, divisionals,*** [and] ***continuations***." *Id.* at 14 (emphasis added). Section 3.9(a)(i) of the Disclosure Schedule lists the following:

**U.S. Patents and Patent Applications**

| Title | Country | Status | Registration/Application Number | Filing/Issue Date |
|---|---|---|---|---|
| REMOTE VEHICLE PROGRAMMING SYSTEM AND METHOD | U.S. | Issued | 8,688,313 | 4-1-2014 |
| REMOTE VEHICLE PROGRAMMING SYSTEM AND METHOD | U.S. | Pending | 14/219,183 | 3-19-2014 |
| REMOTE VEHICLE PROGRAMMING SYSTEM AND METHOD | U.S. | Pending | 14/219,187 | 3-19-2014 |

Ex. 2 at 30.[2]

---

[2] "Contributed Assets" is defined to include Intellectual Property Rights owned, used or held for use in the Business "other than Patent Rights." Ex. 1 at 9. "Patent Rights," in turn, is defined to

As seen above, Section 3.9(a)(i) specifically includes the '313 Patent and U.S. Patent App. No. 14/219,187, the application from which the '500 Patent issued and the '334 Patent claims priority to. *Id.* Therefore, it is undeniable that when the parties executed the Bill of Sale on July 28, 2015, all patent rights associated with the Asserted Patents—including the '500 and '334 Patents—were assigned to Repairify.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) allows a party to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

Additionally, Rule 59(e) allows a party to seek reconsideration of a judgment and serves the "narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence." *Faciane v. Sun Life Assur. Co.*, 931 F.3d 412, 423 (5th Cir. 2019). The district court exercises "considerable discretion" when ruling on motions under Rule 59(e), with relief being appropriate when the movant demonstrates either a manifest error of fact or newly discovered evidence. *Edward H. Bohlin Co. v. The Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

Finally, Rule 60(b) permits a court to "relieve a party or his legal representative from a final judgment, order or proceeding" under a limited set of circumstances. *See Seven Elves, Inc.*

---

include all patent rights including "issued patents, applications, divisionals, continuations, and continuations in part…" *Id.* at 14. Thus, the patent rights at issue are not "Contributed Assets" and, therefore, are "Purchased Assets" transferred via the executed Bill of Sale.

*v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). Under Rule 60(b)(1), a party may seek relief based on "mistake, inadvertence, surprise, or excusable neglect." In the alternative, Rule 60(b)(6) provides a catch-all provision for "any other reason that justifies relief" in which the movant is required to show extraordinary circumstances justifying the reopening of an issue. *Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013). The burden of establishing the requirements of Rule 60(b) is on the movant, and the decision to grant relief lies in the sound discretion of the district court and serves to "balance the principle of the finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005).

## IV.    ARGUMENT

The executed Bill of Sale indisputably transferred ownership of the application that issued as the '500 Patent to Repairify. Relief from the Court's prior Orders is appropriate under Rules 54(b) and 59(e) because they were predicated on an incomplete factual record and were a manifest error of fact in light of the newly discovered executed Bill of Sale. Moreover, relief under Rule 60(b) is warranted here because the failure to obtain and submit to the Court the executed Bill of Sale was a reasonable mistake made in good-faith, or the result of excusable neglect. Furthermore, upholding a ruling that Repairify does not own the Asserted Patents, considering clear evidence to the contrary, would be manifestly unjust.

### A.    The Bill of Sale Transferred All the Asserted Patents to Repairify

As discussed above, the Bill of Sale, executed on July 28, 2015, assigned all rights to the Asserted Patents to Repairify. A bill of sale is a legal instrument that evidences the transfer of title and proof of ownership. *See Tow v. Henley*, 480 B.R. 708, 787 n. 93 (Bankr. S.D. Tex. 2012). As such, it serves as a valid contract between parties and is definitive proof of the

assignment of intellectual property rights, including patents. *See Boss Exotics, LLC v. Crosta & Partners, LLC*, Case No. 3:20-cv-1835, 2023 U.S. Dist. LEXIS 179719, at *7 (N.D. Tex. Oct. 5, 2023) ("It is undisputed that the Bill of Sale is a valid contract."); *Sevadjian v. Tex. DMV*, Case No. 21-40348-MXM-11, 2023 Bankr. LEXIS 2825, at *45 (Bankr. N.D. Tex. Nov. 28, 2023); *see also Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 920 F.3d 243 (5th Cir. 2019) (finding a bill of sale to validly assign intellectual property rights to a buyer); *2525 Capital Grp., LLC v. Dallas Home for Jewish Aged, Inc.*, Case No. 3:08-cv-1673, 2010 U.S. Dist. LEXIS 59216 (N.D. Tex. June 11, 2020).

Unlike the APA relied on in response to the Motion to Dismiss, the executed Bill of Sale includes affirmative language of present intent to transfer all Purchased Assets to Repairify. Ex 4 at ¶ 2 ("Seller hereby sells, transfers, assigns, conveys and delivers . . . right, title and interest in and to all of the Purchased Assets"). The APA defines these "Purchased Assets" to include "all Intellectual Property Rights . . . including those listed on Section 3.9(a)(i) of the Disclosure Schedule" and includes "application, divisionals, [and] continuations." Ex. 1 at 14–18. The Disclosure Schedule specifically enumerates the '313 Patent and U.S. Patent App. No. 14/219,187, which issued as the '500 patent and was the application that the '334 Patent claims priority to. Ex. 2 at 30.

Consequently, there can be no dispute that, upon the execution of the Bill of Sale on July 28, 2015, all patent rights associated with the Asserted Patents were assigned to Repairify. Therefore, dismissing Count II (regarding the '500 Patent) for lacking ownership and subsequently granting summary judgment on unenforceability grounds for Count III (regarding the '334 Patent) for no common ownership was not the correct and just result.

**B.     Relief Under Rules 54(b) and 59(e) is Proper as the Newly Discovered Executed Bill of Sale Evidences a Manifest Error of Fact**

Rule 59(e) permits a court to alter or amend a judgment due to (1) the availability of new evidence not previously available, and (2) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Motions under Rule 59(e) are held to a less stringent standard than those under Rule 60(b). For instance, unlike Rule 60(b), Rule 59(e) does not require a movant seeking relief on the basis of new evidence to demonstrate that the failure to submit the evidence earlier was due to mistake, inadvertence, or excusable neglect. *See Lavespere*, 910 F.2d at 173–74. This flexibility provides courts with significant discretion to rectify errors in the interests of justice. *Id.*

Additionally, Rule 54(b) empowers the court to reverse an interlocutory order "for any reason it deems sufficient" and reflects the "inherent power of the rendering district court to afford such relief . . . as justice requires." *Austin*, 864 F.3d at 336-37. Although the standard under Rule 54(b) is less stringent and more flexible than Rule 59(e), considerations similar to those imposed under Rule 59(e) inform the court's analysis. *As v. Turbo Drill Indus.*, Case No. 6:21-cv-00260, 2023 U.S. Dist. LEXIS 78007, at *7–8 (W.D. Tex. Apr. 6, 2023); *Apodaca-Fisk v. Allen*, Case No. 19-cv-00259, 2021 U.S. Dist. LEXIS 28696, at *6 (W.D. Tex. Feb. 16, 2021).

In this case, relief is warranted because the executed Bill of Sale constitutes critical evidence that was not previously submitted to the Court because prior counsel was not aware it existed, and its absence materially affected the outcome of this litigation. The executed Bill of Sale conclusively establishes Repairify's ownership of the Asserted Patents, directly impacting the Court's prior rulings. These rulings were predicated on an incomplete factual record, and in light of the executed Bill of Sale, they are no longer factually supported.

Thus, the newly available evidence demonstrates a clear error of fact and a manifest injustice, justifying relief under both Rule 54(b) and 59(e). Accordingly, the Court should exercise its authority to correct the record and prevent an unjust outcome.

### C.    Relief Under Rule 60(b)(1) is Proper as Failing to Identify and Submit the Executed Bill of Sale to the Court was the Result of Mistake and Excusable Neglect

Rule 60(b)(1) permits a party to seek relief based on "mistake, inadvertence, surprise, or excusable neglect." The party seeking relief bears the burden of demonstrating the presence of unusual or unique circumstances that justify relief. *See Pryor v. U.S. Postal Servs.*, 769 F.2d 281, 286 (5th Cir. 1985).

#### i.    Mistake

Concerning mistakes made by counsel, the Fifth Circuit has stated that "Rule 60(b)(1) contains leeway for parties who make good-faith mistakes." *See Coleman Hammons Constr. Co. v. OSHRC*, 942 F.3d 279, 283 (5th Cir. 2019). The Circuit distinguishes these from "mistakes" arising from conscious, deliberate, and calculated decisions. *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 418 (5th Cir. 2018) ("Rule 60(b) 'was not intended to relieve [a party] of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise.") (citation omitted). While mistakes resulting from counsel's "gross negligence," failure to follow local rules, or misapprehension of the law are insufficient under Rule 60(b)(1), the present facts are distinguishable. *See Edward H. Bohlin*, 6 F.3d at 357; *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, Case No. 16-2740, 2024 U.S. Dist. LEXIS 5809, at *9 (E.D. La. Jan. 10, 2024).

Here, the failure to obtain, and ultimately rely on before this Court, the executed Bill of Sale was a good-faith mistake under the circumstances. There is no evidence that this was the result of gross negligence or a calculated and deliberate decision. Counsel diligently sought to

gather all documents relevant to the assignment of the Asserted Patents from Bankruptcy Counsel, and they reasonably relied on the reassurances given that they were in possession of the complete executed file. (Decl. ¶¶ 5–8 ). This reliance, coupled with the focus on the formal Patent Assignment Agreement – a customary practice in patent transfers – and the recordation at the USPTO, demonstrates that the omission of the executed Bill of Sale was not due to carelessness or ignorance of the law, but rather a good-faith mistake in believing they possessed all executed documents assigning ownership of the Asserted Patents. (*Id.* at ¶ 9).

Therefore, the circumstances surrounding this oversight present the type of unusual and unique situation that justifies relief under Rule 60(b)(1), as Repairify's prior counsel acted in good-faith and made a reasonable mistake that materially affected the outcome of this case.

### ii. Excusable Neglect

Whether a party is entitled to relief for "excusable neglect" is an equitable determination within the Court's discretion. *D.R.T.G. Builders, L.L.C. v. OSHRC*, 26 F.4th 306, 311–12 (5th Cir. 2022). Factors considered include: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Moreover, relief under Rule 60(b)(1) is not precluded when the movant is at fault. *See Coleman Hammons*, 942 F.3d at 283 ("The excusable neglect inquiry is . . . [a] more lenient and comprehensive standard.").

First, there is no danger of unfair prejudice to the Defendant. The evidence at issue, the executed Bill of Sale, merely establishes Repairify's legal ownership over the patents and does not introduce any new claims or theories not already addressed in this case. Prior to the Court's Order, the parties proceeded with this case under the assumption that all three patents would go

to trial. As such, discovery, claim construction, expert reports, and all pretrial submissions have been completed as to the '334 Patent. Moreover, the Court separately granted summary judgment that the '500 Patent is not infringed. Dkt. 275. Thus, while correcting the erroneous finding that Repairify does not own the '500 Patent is important for both the '500 and '334 Patents, granting the requested relief would only result in the '334 Patent coming back into dispute in this case. Only three claims are at issue regarding the '334 Patent (one independent and two short dependent claims). The '334 Patent also shares a specification with the '313 Patent that remains in the case. As such, adding the '334 Patent back into the case would not add any time to the trial. Therefore, recognizing the executed Bill of Sale and Repairify's ownership would not materially alter this case in a way that is unfairly prejudicial to Defendant.

Second, the length of the delay was reasonable given the circumstances and will have a minimal impact on the judicial proceedings. Repairify brings this motion at the first meaningful opportunity. The parties believed they had reached a settlement shortly after the executed Bill of Sale was provided by Bankruptcy Counsel, and it was not until September 5, 2024 that the Court agreed that no settlement had been reached. Dkt. 298.[3] Furthermore, the impact of judicial proceedings will not be unfairly prejudicial to Defendant, as the parties have fully briefed and prepared positions for all Asserted Patents in preparation for trial.

Third, the reason for the delay was not within the reasonable control of Repairify's prior counsel, as they made diligent, good-faith efforts to obtain all relevant documents relating to patent ownership and relied on the assurances of Bankruptcy Counsel that all relevant materials had been provided. (Decl. ¶¶ 5–8). These unique circumstances were the reason for the delay.

---

[3] Repairify produced the executed Bill of Sale to Defendant on August 23, 2024, promptly after it became evident that the parties were at an impasse regarding settlement.

Finally, Repairify acted in good faith throughout these circumstances. There is no evidence to suggest that the delay in discovering, appreciating, or presenting the executed Bill of Sale was the result of any bad faith conduct, intentional delay, strategic decision, gross negligence, or dilatory tactics. On the contrary, Repairify promptly seeks relief now that the executed Bill of Sale has been discovered and settlement disputes have been resolved, demonstrating a commitment to ensuring the Court and Defendant have the full and accurate record regarding ownership of the Asserted Patents.

Taken together, these factors weigh heavily in favor of finding excusable neglect, justifying relief under Rule 60(b)(1).

### iii.      The Fifth Circuit's Equitable Framework Favors Relief

The Fifth Circuit instructs courts to engage in a balancing of competing interests in deciding a Rule 60(b)(1) motion. *See Edward H. Bohlin*, 6 F.3d at 356–57 (listing seven non-exhaustive factors to consider). Notably, while final judgment should not be easily disturbed, Rule 60 should be "liberally construed" to achieve substantial justice. *Id.* The most instructive factor here is the principle that, in cases of dismissal without a decision on the merits, the interest in resolving the case on its merits outweighs the finality of the judgment if the movant's claim has merit. *Id.*

This framework supports Repairify's entitlement to relief under Rule 60(b)(1). The Court's orders here were not on the merits of the case but were premised on a lack of ownership, and thus standing, due to an incomplete record. With the newly discovered executed Bill of Sale now establishing Repairify's ownership and subsequent standing, the interest in deciding this case on the merits far outweighs the finality of the Court's prior Orders. The rule is to be liberally construed to achieve substantial justice, and in this instance, justice demands the

case be considered with the full and accurate record now available. Thus, relief under Rule 60(b)(1) is appropriate.

### D. Relief Under Rule 60(b)(6) Is Proper as It Would Be Manifestly Unjust to Uphold the Court's Orders in Light of the Executed Bill of Sale

Alternatively, Repairify respectfully requests that the Court grant relief from its prior Orders under Rule 60(b)(6), a catch-all provision that permits vacatur for "any other reason that justifies relief." Rule 60(b)(6) serves as a "grand reservoir of equitable power" to correct prior orders that would result in an unjust outcome. *See Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995). This provision is intended to address extraordinary circumstances, including those where "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process" are at stake. *See Buck v. Davis*, 580 U.S. 100, 103 (2017). Accordingly, Rule 60(b)(6) relief is warranted when it is necessary to prevent an outcome that is "manifestly unjust." *See Edward H. Bohlin*, 6 F.3d at 357.

Here, the extraordinary circumstances arise from the omission of a key document – the executed Bill of Sale – that unequivocally establishes Repairify's ownership of all the Asserted Patents. This document is not merely supplementary; it is the linchpin of Repairify's ownership. Without it, the Court's decision was made on an incomplete and inaccurate factual basis, leading to an unjust outcome. The Fifth Circuit recognizes that when a party introduces previously undisclosed evidence under Rule 60(b)(6) they need not demonstrate excusable neglect; however, relief is appropriate when the newly presented evidence establishes a fact "so central to the litigation" that it renders the original judgment manifestly unjust. *Lavespere*, 910 F.2d at 173 (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)). Here, the executed Bill of Sale is that critical evidence and dismissing two patents from a patent infringement case based on an incomplete record regarding ownership is unjust.

Had the Court been presented with the executed Bill of Sale at the time of the original ruling, it could not have found that Repairify was not the owner of the '500 Patent. The Court's Order was founded on an incomplete record, depriving Repairify of its exclusionary rights as the lawful patent owner. Such a result, in light of undeniable evidence to the contrary, would be manifestly unjust to Repairify. Moreover, failure to grant this relief could risk undermining public confidence in the judicial process. When a court's judgment is based on an incomplete record, especially when pivotal evidence such as the executed Bill of Sale exists, it erodes principles of fairness and justice that are the foundations of our legal system.

Finally, the unjust outcome could be magnified to the extent this Court's rulings are used in other litigation, including the co-pending case filed by Defendant in the United States District Court for the Northern District of Illinois. *See Keystone Automative Industries, Inc. v. Repairify*, Case No. 1:23-cv-02689 (N.D. Ill. 2023). There, Defendant has alleged that Repairify is involved in "sham litigation" by asserting patents that it does not own. Complaint at ¶¶ 84, 94, 132, 142, 151-53, 161, 171, *Keystone Automative Industries, Inc. v. Repairify*, Case No. 1:23-cv-02689 (N.D. Ill. Apr. 28, 2023). Use of this Court's prior orders, that were based on an incomplete factual record, could be highly detrimental to Repairify and unjust.

For these reasons, Repairify respectfully requests this Court exercise its equitable powers under Rule 60(b)(6) to grant relief and subsequently deny Defendant's Motion to Dismiss Count II and Motion for Summary Judgment regarding the '334 patent (Count III) considering the executed Bill of Sale, thereby rectifying the manifest injustice and ensuring the case proceeds on a complete and accurate factual record.

## V.      CONCLUSION

The July 28, 2015 executed Bill of Sale unequivocally transferred all rights to the

Asserted Patents—including the '500 and '334 Patents—to Repairify. The failure of prior

counsel to acquire and present the executed Bill of Sale to this Court was a good-faith mistake

that constitutes excusable neglect. This omission materially impacted the Court's ruling on

ownership and resulted in a manifestly unjust outcome. Considering this, the Court's Orders

granting Defendant's motion to dismiss Count II and granting Defendant's motion for summary

judgment on Count III is unfounded based on the newly discovered evidence. Therefore, Plaintiff

Repairify respectfully requests that the Court grant relief under Rules 54(b), 59(e), 60(b)(1), and

60(b)(6).

Date: September 19, 2024

_s/ J. Derek Vandenburgh_
Deron Dacus (State Bar No. 0090553)
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

J. Derek Vandenburgh (_pro hac vice_)
Joseph W. Winkels (_pro hac vice_)
William F. Bullard (_pro hac vice_)
CARLSON, CASPERS, VANDENBURGH &
LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Phone: (612) 436-9600
Email: dvandenburgh@carlsoncaspers.com
Email: jwinkels@carlsoncaspers.com
Email: wbullard@carlsoncaspers.com

_Counsel for Plaintiff, Repairify, Inc._

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on September 19, 2024 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*s/ J. Derek Vandenburgh*
J. Derek Vandenburgh

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on September 18, 2024 counsel for Plaintiff Repairify, Inc. and Counsel for Defendant Keystone Automotive Industries, Inc., d/b/a Elitek Vehicle Services, met and conferred and Defendant opposes this motion.

*s/ J. Derek Vandenburgh*
J. Derek Vandenburgh