IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

<table>
<tr><td>REPAIRIFY, INC., and</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td style="text-align:right">Plaintiff,</td><td>)</td><td>Case No. 6:21-cv-00819-ADA-DTG</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>KEYSTONE AUTOMOTIVE</td><td>)</td><td>**JURY TRIAL DEMANDED**</td></tr>
<tr><td>INDUSTRIES, INC. d/b/a ELITEK</td><td>)</td><td></td></tr>
<tr><td>VEHICLE SERVICES, and DOES 1</td><td>)</td><td></td></tr>
<tr><td>through 20, inclusive,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td style="text-align:right">Defendants.</td><td>)</td><td></td></tr>
</table>

**DEFENDANT ELITEK'S OPPOSITION TO PLAINTIFF REPAIRIFY INC.'S OPPOSED
MOTION FOR RELIEF FROM ORDERS UNDER FEDERAL RULES OF CIVIL
PROCEDURE 54(b), 59(e), AND 60(b) (DKT. 308)**

## I.       INTRODUCTION

Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services ("Elitek") opposes Plaintiff Repairify, Inc.'s ("Repairify") motion for relief from orders.  Dkt. No. 308.  This motion is Repairify's third attempt to litigate ownership and enforceability of the '500 and '334 Patents.  Repairify's motion improperly seeks another "reassessment of the Court's work" and should be denied.  *See Tomax AS v. Turbo Drill Inus.  Inc.*, 2023 WL 3171744, at *3 (W.D. Tex. Apr. 6, 2023).

Repairify's motion is premised on the argument that the Bill of Sale constitutes newly discovered evidence, leading to a manifest error of fact in the Court's previous ruling dismissing the '334 and '500 Patents for lack of ownership and the Court's previous ruling denying Repairify's prior motion to reconsider the issue.  However, Repairify falls to meet its burden to amend the Court's order under its scattershot request under Federal Rules of Civil Procedure Rules 54(b), 59(e), 60(b)(1), and 60(b)(6).  Each of these Rules contain similar requirements, which Repairify fails to meet for a combination of the following reasons:

*First*, the Bill of Sale is not newly discovered evidence.  It was attached (albeit unexecuted) to the briefing of this issue over two years ago.[1]  Dkt. No. 56-3 at 56.  Repairify strategically chose not to argue that the Bill of Sale was meant to transfer any patent rights, instead arguing that the patents were assigned through either the Patent Assignment or other sections of the APA (original motion) or through the Bankruptcy Court Order (motion to reconsider).

*Second*, Repairify does not establish that the executed Bill of Sale was previously unavailable or that Repairify was unable to locate it until now through reasonable diligence.

---

[1] The unexecuted nature of the Bill of Sale was not a focus of the parties' briefing or the arguments.  Rather, the parties' briefing and arguments presumed the unexecuted Bill of Sale was evidence of an operative agreement having those terms.

*Third*, Repairify never identifies exactly what alleged mistake was made or by whom. Regardless, for a "mistake attributable solely to the negligence or carelessness of that party's attorney, then it would be an abuse of discretion for the court to reopen the case and to consider the evidence." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). If one or more of Repairify's litigation or bankruptcy counsel made negligent mistakes or proceeded without reasonable diligence (even without bad faith), Repairify has other options available to it to make itself whole. None of those options involve having this Court yet again reconsider the same issue or prejudicing Elitek's trial preparation at this late stage.

*Fourth,* Repairify unjustifiably delayed raising this issue with either Elitek or the Court. Repairify took over two years before investigating whether an executed Bill of Sale existed. Repairify further admits that at least three different members of Repairify's litigation counsel received the alleged "linchpin" document to their case ***prior*** to the hearing on Repairify's motion for reconsideration on this exact issue. Not only did Repairify fail to raise it at the hearing, but they failed to raise it immediately after the hearing as the parties continued to prepare for trial, waiting only until months later, after new counsel was retained, to make this new argument.

*Fifth*, justice does not compel a different result. Repairify makes no showing that justice requires a jury to consider claims of the '334 Patent to have its day in Court.[2] Trial is going forward with a Repairify patent from the same patent family, which covers essentially the same invention. Even Repairify's damages expert opined that no additional damages should be awarded if Elitek is found to infringe the '334 Patent as well as the '313 Patent. Repairify has not explained some essential difference in scope in the asserted claims of the '313 and '334 Patents that would be material and unjustly prejudice Repairify if the jury does not also consider the '334 Patent. On

---

[2] Summary judgment of no infringement has also been granted as to the asserted claims of the '500 Patent, so this issue will not change the fact that the jury will not evaluate infringement or validity of the '500 Patent.

the other hand, adding the '334 Patent back at this stage would materially prejudice Elitek as Mr. Loudon's supplemental expert report (which the court allowed Elitek to supplement because Repairify changed its infringement positions) only addressed Repairify's modified positions regarding the '313 Patent; Elitek's trial preparations have been focused solely on the '313 Patent since the Court's ruling; and Elitek even agreed to voluntarily dismiss its invalidity and inequitable conduct claims in light of the fact that infringement of the '500 and '334 Patents was no longer at issue.  Elitek would be forced to scramble at the last minute to resurrect these defenses and adjust its trial preparations accordingly.  Moreover, Elitek would be entitled to meaningful discovery regarding this allegedly executed Bill of Sale, when it was signed, and whether it was intended to assign any patent rights.

*Finally*, the Bill of Sale does not provide Repairify with ownership of the '500 Patent. Repairify selectively quotes from the Bill of Sale, removing key language that clarifies that the Bill of Sale does not apply to assets assigned via "other bills of sale or other instruments of sale, transfer, assignment, and conveyance."  Dkt. No. 308-4 at ¶2.  As both Repairify and Elitek twice argued before the Court, AES Technologies and Repairify agreed to assign patent rights via the Patent Assignment (Dkt. No. 308-3), which the Court construed to not convey  the '500 Patent. Despite the availability of the Bill of Sale to both parties and the Court, no one argued it was the controlling document on this issue, nor was the fact that only an unexecuted copy was presented to the Court the reason the Court dismissed the '500 Patent, and consequently the '334 Patent.

## II.     LEGAL STANDARD

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."  *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  Otherwise,

motions for reconsideration simply become vehicles "for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.*

While Federal Rule of Civil Procedure 54(b) permits a court to reconsider a ruling "as justice requires," courts typically apply the Rule 59(e) standard for a motion for reconsideration as that would satisfy the "justice requires" standard. *U.S. v. 89.9270303 Bitcoins*, 2021 WL 5203337, at *1 (W.D. Tex. Nov. 8, 2021).

Under Federal Rule of Civil Procedure 59(e), courts may reconsider prior rulings based upon "(a) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Evidence that **could have been discovered** previously is not considered to be newly discovered evidence. *Wsou Investments LLC v. Microsoft Corp.,* No. W-20-CV-00454-ADA, 2022 WL 2078216, at *8 (W.D. Tex. June 9, 2022) (evidence is not newly discovered if previously discoverable); *see also Engelhard Indus. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963), cert. denied, 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964) (on a motion to reconsider a party is "obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not have discovered and produced such evidence at the hearing."). The Fifth Circuit has often "refused to reverse a district court's rejection of a Rule 59(e) motion when 'the underlying facts were well within the [movant's] knowledge prior to the district court's entry of judgment.'" *O'Neal v. Cargill, Inc.*, No. CV 15-7183, 2017 WL 515084, at *3 (E.D. La. Feb. 8, 2017); *In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (quoting *Templet*, 367 F.3d at 479); *see id.* at 372 (Evidence is not "newly discovered evidence compelling Rule 59(e) relief" when defendant knows

of its existence and fails to bring it to the court's attention before the court issues the order of which defendant seeks reconsideration.).

Under Repairify's alternative theory of relief, Federal Rule of Civil Procedure 60(b)(1), a court may grant relief for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). However, the movant must "make a sufficient showing of unusual or unique circumstances" that justify the extraordinary relief offered under Rule 60(b)(1). *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir. 1985) (citations omitted); *see also Associated Marine Equip. LLC v. Jones*, 301 F. App'x 346, 349 (5th Cir. 2008). The standard to prove excusable neglect is high as "merely pleading neglect is not enough to warrant relief under Rule 60(b)(1)." *In re Wilkinson*, 457 B.R. 530, 541 (Bankr. W.D. Tex. 2011). Rule 60(b)(1) is not wholly open-ended and does not cover negligence or carelessness of a party's attorney. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) ("in the case of a motion for reconsideration brought under Rule 60(b)(1), …, if the failure of the party to submit the evidentiary materials in question is attributable solely to the negligence or carelessness of that party's attorney, then it would be an abuse of discretion for the court to reopen the case and to consider the evidence."); *see also United States v. Torres,* 372 F.3d 1159, 1163 (10th Cir. 2004) (fault in the delay remains the most important single factor in determining whether neglect is excusable): *Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.,* 270 F.3d 1, 5 (1st Cir. 2001) (the excuse given for the late filing must have the greatest import); *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 463 (8th Cir. 2000) (the focus must be upon the nature of the neglect, and 'garden variety attorney inattention' is not excusable neglect); *In re Taxotere (Docetaxel) Products Liab. Litig.*, No. MDL 16-2740, 2024 WL 1603571, at *4 (E.D. La. Apr. 12, 2024) (counsels own inadvertent errors do not provide a basis for granting a Rule 60(b)(1)).

As for Repairify's last-ditch effort to obtain relief, Federal Rule of Civil Procedure 60(b)(6), which allows a court to grant relief for "any other reason that justifies relief". Fed. R. Civ. P. 60(b)(6). The Fifth Circuit "has consistently held that relief under [Rule] 60(b)(6) is mutually exclusive from relief under sections (1)-(5)." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005). "This means that 'the reason for relief set forth' in the other subsections of Rule 60(b) 'cannot be the basis for relief under Rule 60(b)(6).'" *Curtis v. Brunsting*, 860 F.App'x 332, 335 (5th Cir. 2021) (quoting *Hess v. Cockrell*, 281 F.3d 212, 215 (5th Cir. 2002) (alterations omitted)). Notably, Rule 60(b)(2) is specifically directed to motions regarding allegedly "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(6). Motions brought under Rule 60(b)(6) "will be granted only if extraordinary circumstances are present." *Hess*, 281 F.3d at 216. Furthermore, "rule 60(b)(6) should not be used to undo the damage done by a poor strategic decision." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013).

## III.     THE BILL OF SALE IS NOT NEWLY DISCOVERED EVIDENCE.

Repairify seeks relief under the premise that the Bill of Sale is newly discovered evidence under Rules 54(b) and 59(e) (Mot. at 9-10) and its failure to submit it previously was a mistake or excusable neglect under Rule 60(b) (Mot. 10-13). Regardless of the framework applied, the Bill of Sale (albeit unexecuted) was before this Court. Elitek itself submitted it as an exhibit to its original motion to dismiss. Dkt. No. 56-3 at 56.

If Repairify's view of the APA was that the Bill of Sale was the vehicle intended to properly transfer patent rights, Repairify could have made this argument in opposition to the original motion or in the motion to reconsider. Repairify makes no explanation of why it did not make this argument based on the unexecuted Bill of Sale in its possession, known to the parties, and submitted to the Court. Repairify's motion might have more merit if they had argued the Bill of

Sale transferred the assets, Elitek had argued that the Court should reject that argument because no executed version of the Bill of Sale was presented to the Court, and had the Court accepted Elitek's argument.  Repairify could have argued that the Bill of Sale was executed but that they did not currently have the executed copy in its possession.  Repairify could have submitted a declaration from the people who allegedly signed the Bill of Sale.  None of that occurred.

There is no dispute that Repairify instead made the strategic decision to base its opposition to the original motion to dismiss on the Patent Assignment and other provisions of the APA and again chose to base its motion to reconsider on the Bankruptcy Court Order.  While new counsel has come up with yet another theory to oppose Elitek's motion to dismiss, that does not justify relief under Rule 54(b), 59(e), 60(b)(1), or 60(b)(6).

## IV.  THE BILL OF SALE WAS NOT PREVIOUSLY UNDISCOVERABLE OR UNABLE TO BE DISCOVERED THROUGH REASONABLE DILIGENCE

Even if the Bill of Sale was newly discovered evidence, under Rules 54(b) and 59(e), Repairify must prove the document could not have previously been discovered by Repairify.  *Wsou Investments LLC*, 2022 WL 2078216 at *8; *Engelhard Indus.*, 324 F.2d at 352.  Similarly, under Rule 60(b) allegations of newly discovered evidence are considered under Rule 60(b)(2) which requires showing that the evidence could not have been timely discovered with "reasonable diligence."  Fed. R. Civ. P. 60(b)(6).  While Repairify's Motion is brought under Rules 60(b)(1) and 60(b)(6), the different grounds under Rule 60(b) are mutually exclusive and allegations of new evidence are properly considered under Rule 60(b)(2).  *See Hesling*, 396 F.3d at 643; *Curtis*, 860 F.App'x at 335.  The fact that Repairify does not even attempt to meet, let alone address, the proper standard under Rule 60(b)(2) is telling.  Repairify's Motion fails under any of these standards.

The possible existence of the executed version has been known to both the parties and this Court since October 24, 2022.  As the Bill of Sale was allegedly signed by Repairify's Vice

President, Michael Zoch, Dkt. No. 308-4 at 5, the existence of an executed version was undisputably known to Repairify.  Notably, while Elitek has not been able to take any discovery on this issue, it appears the Mr. Zoch is currently employed by Repairify's owner, Kinderhook Investments, as the Managing Director of the ***Repairify*** investment.[3]  No declaration was submitted to suggest that Repairify itself does not have in its possession an executed copy of the Bill of Sale. Moreover, it is apparently admitted that Repairify's own lawyers (bankruptcy counsel) possessed an executed copy of the Bill of Sale.

Repairify suggests it did not previously discover the executed version because it believed it had been provided a complete file of all executed documents from Bankruptcy Counsel.  Dkt. No. 309, ¶8.  However, the declaration submitted by Repairify's counsel evades many of the key questions:[4] including whether upon receiving the unexecuted Bill of Sale in 2022, did Repairify's litigation counsel ask Repairify's bankruptcy counsel or Repairify itself if the Bill of Sale was ever executed?  Did Repairify take any steps to determine the existence or location of an executed Bill of Sale?  Repairify's failure to demonstrate why the executed Bill of Sale was not discoverable

---

[3] See https://www.kinderhook.com/portfolio-company/repairify/

[4] Other relevant questions unanswered by the declaration include: If a mistake was made by bankruptcy counsel, what was the mistake and who made it?  Did Repairify's counsel strategically decide not to look for an executed Bill of Sale as they incorrectly believed the Patent Assignment transferred the '500 Patent?  Did prosecution counsel ever seek an executed version to record at the USPTO instead of recording the inapplicable Patent Assignment?  When did litigation counsel first learn the Bill of Sale had been executed?  When the declarant forwarded this allegedly "linchpin" document to two other members of the litigation team prior to the hearing on the motion to reconsider, did the declarant, the associate, and the partner handling the hearing all fail to appreciate that they had obtained what they now claim is the "linchpin" of their argument?  If the importance of the Bill of Sale was only appreciated immediately after the Court denied the motion for reconsideration, why did the parties continue preparing for trial (until the parties appeared to settle on June 12), without Repairify informing Elitek or this Court about this allegedly key evidence until months later?  Why was the issue raised only after Repairify retained new law firms?

further indicates that the executed Bill of Sale is not newly discovered evidence but merely newly produced evidence, insufficient to justify relief under Rules 54(b), 59(e), or 60(b).

## V.   THE FAILURE TO SUBMIT THE BILL OF SALE WAS NOT DUE TO JUSTIFIABLE MISTAKE OR EXCUSABLE NEGLECT

Repairify argues that the failure to identify and submit the executed Bill of Sale was the result of mistake and excusable neglect under Rule 60(b)(1). Dkt. No. 308. As with Repairify's arguments under Rules 54(b) and 59(e), Repairify puts forth no reason, even based upon "mistake" or "excusable neglect", that explains Repairify's decision not to previously argue that the '500 Patent was assigned via the Bill of Sale. The existence of the Bill of Sale was known, and Repairify knew it signed the Bill of Sale.

Regardless, relief under Rule 60(b)(1) is not appropriate because Repairify's failure to discover the executed Bill of Sale is not the result of a good faith mistake or excusable neglect but rather the result of counsel's lack of diligence in investigating a critical matter further. Repairify cannot meet its burden to justify either mistake or excusable neglect based on a declaration that does not identify what mistake or excusable neglect occurred or why. Even assuming a mistake or neglect by counsel occurred, when the justification of mistake is counsel's own inadvertent mistake, it is not an abuse of discretion by the court to deny a Rule 60(b) motion. *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 356-57 (5th Cir. 1993).

### A.   NO REDRESSABLE MISTAKE WAS MADE

Repairify argues its failure to locate the executed Bill of Sale was a good faith mistake and not the result of gross negligence or a calculated decision. Dkt. No. 308. Repairify asserts its litigation counsel reasonably believed that it was in possession of the complete executed file. Dkt. No. 309, ¶¶ 5-8. However, as discussed *supra*, Repairify was aware of the unexecuted Bill of Sale in October 2022 yet failed to take further action in locating the executed copy until May 2024,

when this Court granted Elitek's Motion to Dismiss.  It was only upon the granting of Elitek's motion did Repairify decide to further investigate whether an executed version of the Bill of Sale existed.  Dkt. No. 309, ¶ 12.  Repairify asserts counsel did not have an opportunity to "study" or "appreciate" the executed Bill of Sale prior to the hearing. Id., ¶ 13.[5]  Repairify's inability to study and appreciate the importance of the document prior to the June 7, 2024 hearing suggests gross negligence rather than a good faith mistake.  Thus, there is no basis for relief.  *See In re Taxotere (Docetaxel) Products Liab.  Litig.*, No. MDL 16-2740, 2024 WL 1603571, at *4 (E.D. La. Apr. 12, 2024) (counsels own inadvertent errors do not provide a basis for granting a Rule 60(b)(1)).

### B.    NO EXCUSABLE NEGLECT OCCURRED

Under the excusable neglect prong of Rule 60(b)(1) a court may consider the following four factors when determining whether conduct arises from excusable neglect: (1) the danger of prejudice to the opposing party; (2) the length of the delay and it potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  *Pioneer Inv. Servs.  Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 385 (1993).  However, the standard to prove excusable neglect is high as "merely pleading neglect is not enough to warrant relief under Rule 60(b)(1)."  *In re Wilkinson*, 457 B.R. 530, 541 (Bankr. W.D. Tex. 2011).  None of these factors weigh in favor of granting relief.  Due to related issues with Rules 54(b), 59(e), and 60(b)(6), undue prejudice to Elitek is discussed in Section VII with respect to manifest justice and unreasonable delay is discussed in Section VI.

---

[5] Notably, no declaration was submitted by the attorney who allegedly failed to study or appreciate the importance of the document.

### i.   THE EXECUTED BILL OF SALE WAS WITHIN REPAIRIFY'S CONTROL

Repairify argues that the delay in discovering the executed Bill of Sale was not within the reasonable control of Repairify's prior counsel, asserting that prior counsel made good faith efforts to obtain all relevant documents relating to patent ownership. Dkt. No. 308. While Repairify's litigation counsel may not have had possession of the executed Bill of Sale, the relevant question is whether the document was within *Repairify's* control. It was. At least one executed copy was admittedly in possession of Repairify's bankruptcy counsel. It is also indisputable that Repairify was aware of the existence of an executed copy as Repairify itself signed it. It was solely within Repairify's prior counsels' discretion to investigate whether it missed any arguments or documents related to what it claims is a "critical piece" of evidence prior to this Court ruling against them. It was within their ability to investigate whether the Bill of Sale was ever executed by its own client. Thus, this factor weighs against relief.

### ii.   REPAIRIFY DID NOT ACT IN GOOD FAITH

Repairify argues it acted in good faith and no evidence suggests bad faith conduct, intentional delay, strategic decisions, gross negligence, or dilatory tactics. Dkt. No. 308. However, this argument also fails. As mentioned, Repairify was made aware of the executed Bill of Sale's existence at some point prior to June 6, 2024, before this Court held the June 7 hearing but waited until September 2024 to direct this Court's attention to the document. Dkt. No. 309, ¶ 12. In addition, Repairify knew of the document's existence but nevertheless continued in what they claim was good faith settlement negotiations. It was only after such negotiations had broken apart that Repairify felt it was now in their strategic interest to introduce the document. Repairify's repeated pattern of behavior, whether the failure investigate or failure to timely produce known evidence, suggests bad faith and intentional delay. This factor weighs against relief.

## VI.   REPAIRIFY UNJUSTLY DELAYED SUBMITTING THE EXECUTED BILL OF SALE

Repairify's relief under Rule 54(b) and Rule 59(e) should be denied due to Repairify's unjust delay in raising the issue.  The Fifth Circuit has often "refused to reverse a district court's rejection of a Rule 59(e) motion when 'the underlying facts were well within the [movant's] knowledge prior to the district court's entry of judgment.'" *O'Neal v. Cargill, Inc.*, No. CV 15-7183, 2017 WL 515084, at *3 (E.D. La. Feb. 8, 2017); *In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (quoting *Templet*, 367 F.3d at 479); *see id.*  at 372 (Evidence is not "newly discovered evidence compelling Rule 59(e) relief" when defendant knows of its existence and fails to bring it to the court's attention before the court issues the order of which defendant seeks reconsideration.).

Similarly, Repairify's unjust delay factors against any excusable neglect under Rule 60(b)(1).  *Adame v. Refugio Cty.,* 2017 U.S. Dist. LEXIS 220420, *5-6 (S.D. Tex. Dec. 11, 2017) (learning of potential grounds for relief in June and waiting till October to file a Rule 60(b) motion is unreasonable and untimely).

Repairify has failed to provide any explanation, let alone sufficient justification, as to why it took approximately two years to investigate and locate the executed version of the Bill of Sale. Furthermore, by discovering the evidence at some undisclosed date[6] before June 6, failing to bring the issue to the attention of the Court (or Elitek) during the hearing on the motion to reconsider on June 7 or at any time in the immediate days thereafter (as Elitek was preparing for trial) Repairify has eliminated its ability to obtain relief.  Repairify continued to wait until after this Court's September 18, 2024 entry of the Omnibus Order Regarding Pretrial Motions (Dkt. No. 304). Instead, it was not until September 19, after Repairify obtained two new firms as litigation counsel

---

[6] The declaration submitted by Repairify's counsel discloses a discussion between litigation and bankruptcy counsel at some unstated time after May 24.  The declaration does not state June 6 was the date that litigation counsel first became aware that the Bill of Sale had been executed.

that Repairify brought to the Court this "linchpin" document.

## VII.    JUSTICE DOES NOT REQUIRE AMENDING THE JUDGMENT

Rule 54(b) and 60(b)(6) allow relief to be granted where justice requires.  Moreover, the prejudice Elitek would suffer is a factor to consider in evaluating excusable neglect under Rule 60(b)(1).  As a preliminary matter, as Repairify argues that the executed Bill of Sale is newly discovered evidence, this Court should analyze it under the newly discovered evidence rules of Rule 59(e) and Rule 60(b)(2), not Rules 59(b), 60(b)(1), or 60(b)(6).  Regardless, justice does not support Repairify's requested relief.

First, the Court's existing order does not create a manifestly unjust outcome as Repairify fails to put forth any explanation on why the remaining asserted method claims of the '334 Patent so materially differ from the remaining asserted method claim of the '313 Patent such that Repairify will be impaired from its ability to obtain justice unless a jury hears infringement claims directed to the exact same accused service under both patents.  Even its damages expert opined that Repairify would not be entitled to any additional damages under the '334 Patent.

Second, overturning the Court's existing order would cause Elitek to suffer undue prejudice.  Elitek has already stipulated to the withdrawal of its inequitable conduct claims and invalidity counterclaims related to the '334 and '500 Patents. Dkt. No. 300. Those claims would have to be revived.  Elitek recently submitted a supplemental expert report from its technical expert directed solely to the '313 Patent.  That report would have to be further supplemented to consider the '334 Patent.  Elitek has been preparing for trial based solely on the '313 Patent.  Forcing Elitek to do a last-minute scramble to also address the '334 Patent would unduly prejudice Elitek.

Third, Repairify is not seeking summary judgment of ownership of the '500 Patent, only denial of Elitek's motion to dismiss.  Thus, Elitek would be entitled to take discovery into several issues related to the executed Bill of Sale.  As but one example, the metadata on the executed Bill

of Sale produced to Elitek indicates the document was created on June 6, 2024.  While Repairify may claim that metadata is inaccurate, Elitek would be entitled to take discover on exactly when the Bill of Sale was executed, including depositions of its signatories.  Repairify's gamesmanship in raising this issue months after it could have should not be countenanced.

Finally, Elitek has spent considerable time and resources devoted to briefing and arguing to this Court whether the APA and the Patent Assignment conveyed title to the '500 and '334 Patents.  Allowing Repairify's new litigation counsel an opportunity to shift their argument and correct what they see as prior counsel's mistakes again unfairly prejudices Elitek's litigation strategy in defending itself.  Since filing the original motion in 2022, Elitek knew the Patent Assignment did not convey title to the '500 Patent, and Elitek prepared its defense, assessed the case, and focused its resources accordingly.  Having Repairify now produce a document that was admittedly in the hands of their lawyers (Repairify's bankruptcy counsel) and known to Repairify itself for years, is unfair and prejudices Elitek.

## VIII.   THE BILL OF SALE DOES NOT PROVIDE REPAIRIFY WITH OWNERSHIP OF THE '500 PATENT.

Even were the Court to consider the Bill of Sale under Rule 54(b), 59(e), 60(b)(1) or 60(b)(6), the Bill of Sale does not vest ownership of the '500 Patent in Repairify.

Repairify argues that the Bill of Sale transfers Purchased Assets, which include Transferred Assets, which further includes Intellectual Property Rights and quotes a portion of paragraph 2 of the Bill of Sale.  However, the portion of the Bill of Sale that Repairify redacts with ellipses reveals that the Bill of Sale only applies to such assets that are not covered by ***other*** instruments of transfer and assignment identified in the APA:

> 2. Effective as of the Closing Date, Seller hereby sells, transfers, assigns, conveys and delivers to Buyer all of Seller's right, title and interest in and to all of the Purchased Assets (other than those Purchased Assets that are effectively sold, transferred, assigned, conveyed and delivered by Seller to Buyer as of the Closing

Date pursuant to other bills of sale or other instruments of sale, transfer, assignment and conveyance executed by Seller and Buyer), free and clear of all Liens.

(Dkt. No. 308-4, ¶2).

The APA defines different Ancillary Agreements, including both a Bill of Sale and a separate Patent Assignment Agreement (Dkt. No. 308-1 at 2). As both parties and this Court have twice now interpreted the APA, it is the Patent Assignment Agreement, not the Bill of Sale, that governs the transfer of patent rights to Repairify. This is apparently the view of even Repairify's prosecution counsel that submitted the Patent Assignment, not the Bill of Sale, to record the patent transfers. Only upon losing twice does Repairify now desire to argue that the Bill of Sale was actually the document intended to transfer patent rights. The fallacy in Repairify's argument is clear when one merely considers the '313 Patent. If the Bill of Sale conveyed to Repairify all patent rights, then the Patent Assignment Agreement, specifically negotiated and agreed to by AES Technologies and Repairify becomes completely superfluous and redundant. Construing contracts to have superfluous provisions is improper. *See Boca Raton Cmty. Redevelopment Agency v. Crocker Downtown Dev. Assocs.*, 333 So. 3d 1137, 1139 (Fla. 4th Dist. App. 2022) ("contract will not be interpreted in such a way to render a provision meaningless.") (citation omitted.). Here, Repairify would have this Court find not only that all of the provisions in the APA regarding the Patent Assignment Agreement were superfluous but so is the entirety of the Patent Assignment Agreement itself.

## IX.   CONCLUSION

For the foregoing reasons, Elitek respectfully requests that this Court deny Repairify's motion for relief from orders under Federal Rules of Civil Procedure 54(b), 59(e), and 60(b) as it merely attempts to rehash Repairify's previously rejected arguments.

Dated:  October 3, 2024                    Respectfully submitted,


                                           By: /s/ *Barry F. Irwin*
                                           Barry F. Irwin, P.C. (admitted *pro hac*)
                                           Joseph A. Saltiel (admitted *pro hac*)
                                           Jason J. Keener (admitted *pro hac*)
                                           Iftekhar A. Zaim (admitted *pro hac*)
                                           Alexander Bennett (admitted *pro hac*)
                                           Emad S. Mahou (admitted *pro hac*)
                                           **IRWIN IP LLP**
                                           150 N. Wacker Dr., Suite 700
                                           Chicago, IL 60606
                                           (312) 667-6080 (Telephone)
                                           birwin@irwinip.com
                                           jsaltiel@irwinip.com
                                           jkeener@irwinip.com
                                           izaim@irwinip.com
                                           abennett@irwinip.com
                                           emahou@irwinip.com

                                           Barry K. Shelton
                                           Texas State Bar No. 24055029
                                           **SHELTON COBURN LLP**
                                           311 RR 620 S, Suite 205
                                           Austin, TX 78734
                                           bshelton@sheltoncoburn.com
                                           (512) 263-2165 (Telephone)

                                           Mark D. Siegmund
                                           Texas State Bar No. 24117055
                                           **CHERRY JOHNSON**
                                           **SIEGMUND JAMES PLLC**
                                           400 Austin Avenue, 9th Floor
                                           Waco, TX 76701
                                           msiegmund@cjsjlaw.com
                                           (254) 732-2242 (Telephone)

                                           *Attorneys for Defendant Keystone Automotive*
                                           *Industries, Inc. d/b/a Elitek Vehicle Service*s

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system.

/s/ *Gloria Rios*
Gloria Rios