**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| REPAIRIFY, INC., <br><br>  Plaintiff <br><br> v. <br><br> KEYSTONE AUTOMATIVE INDUSTRIES, INC. d/b/a ELITEK VEHICLE SERVICES, and DOES 1 through 20, inclusive, <br><br>  Defendants. | 6:21-cv-00819 <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM ORDERS
UNDER FEDERAL RULES OF CIVIL PROCEDURE 54(b), 59(e), AND 60(b)**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. THE BILL OF SALE UNQUESTIONABLY PROVIDES REPAIRIFY WITH OWNERSHIP OF THE '500 PATENT .............................................................................. 2

III. DEFENDANT MISCHARACTERIZES THE LEGAL STANDARDS UNDERLYING THE BASES FOR REPAIRIFY'S MOTION ........................................... 3

IV. FAILURE TO SUBMIT THE BILL OF SALE WAS DUE TO A JUSTIFIABLE MISTAKE OR EXCUSABLE NEGLECT ......................................................................... 5

V.  REPAIRIFY'S SUBMISSION OF THE EXECUTED BILL OF SALE DID NOT CONSTITUTE UNJUST DELAY .................................................................................... 7

VI. JUSTICE REQUIRES AMENDING THE PRIOR ORDERS ............................................. 9

VII. CONCLUSION ................................................................................................................ 10

CERTIFICATE OF SERVICE ................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Austin v. Kroger Tex., L.P.*,
  864 F.3d 326 (5th Cir. 2017) ................................................................................................... 4

*Coleman Hammons Constr. Co. v. OSHRC*,
  942 F.3d 279 (5th Cir. 2019) ................................................................................................... 6

*Edward H. Bohlin Co. v. Banning Co.*,
  6 F.3d 350 (5th Cir. 1993) .............................................................................................. 6, 7, 9

*Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*,
  533 F. Supp. 3d 367 (N.D. Tex. 2020) .................................................................................... 4

*In re Taxotere Prods. Liab. Litig.*,
  No. 16-2740, 2024 U.S. Dist. LEXIS 67079 (E.D. La. Apr. 11, 2024) ................................... 6

*Keystone Automative Industries, Inc. v. Repairify*,
  Case No. 1:23-cv-02689 (N.D. Ill. 2023) .............................................................................. 10

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
  910 F.2d 167 (5th Cir. 1990) ........................................................................................... passim

*Wsou Investments LLC v. Microsoft Corp.*,
  No. W-20-CV-00454-ADA, 2022 U.S. Dist. LEXIS 103057 (W.D. Tex. June 9, 2022) ........... 4

**Rules**

Fed. R. of Civ. P. 54(b) ............................................................................................................ passim

Fed. R. of Civ. P. 59(e) ............................................................................................................ passim

Fed. R. of Civ. P. 60(b) ............................................................................................................ passim

I.      **INTRODUCTION**

Elitek's opposition fails to address the central issue at hand: the manifest injustice caused by the Court's Orders and the broad discretion to reconsider them. None of Elitek's contentions provide a sound legal or equitable basis to deny the relief sought.

First, Elitek argues that the executed Bill of Sale failed to transfer ownership of the '500 Patent, claiming that this would render the Patent Assignment Agreement "superfluous and redundant." This mischaracterization of the agreements ignores Elitek's prior successful argument that the Patent Assignment Agreement *only* transferred patent rights—and specifically *only* the '313 Patent—not patent applications. The Bill of Sale was drafted precisely to ensure no assets were left untransferred, making it the only legal instrument transferring the patent application that led to the '500 Patent. Elitek's reading defies common sense and the purpose of the Bill of Sale.

Second, Elitek mistakenly contends that Repairify is foreclosed from relief under Rules 54(b) and 59(e) by claiming that the Bill of Sale is neither newly discovered nor previously undiscoverable. In doing so, Elitek improperly conflates the flexible standards of these rules with the strict requirements of Rule 60(b)(2), which is not asserted in Repairify's motion. Elitek further ignores Fifth Circuit precedent, which explicitly allows relief for untimely submitted evidence without requiring a showing of "reasonable diligence." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173–74 (5th Cir. 1990).

Finally, contrary to Elitek's contentions, the failure to submit the executed Bill of Sale was a justifiable mistake or excusable neglect, Repairify did not unjustly delay in submitting the Bill of Sale, and justice absolutely requires amending the judgment as the Bill of Sale

1

definitively establishes Repairify's ownership of the Asserted Patents. In light of this newly uncovered evidence, Repairify's request for relief from the prior orders should be granted.

## II. THE BILL OF SALE UNQUESTIONABLY PROVIDES REPAIRIFY WITH OWNERSHIP OF THE '500 PATENT

Elitek argues that the executed Bill of Sale could not convey ownership of the '500 Patent because, in its view, this would render the Patent Assignment Agreement "superfluous and redundant." Dkt. 314 at 16. This argument not only distorts the plain language of the agreements, but also conveniently overlooks Elitek's own prior position. Elitek previously succeeded in arguing that the Patent Assignment Agreement *only* transferred the '313 Patent – "not any other patents or applications." Dkt. 55 at 7. Thus, the Bill of Sale, designed to ensure that no assets were left untransferred, is the only legal instrument that effectively transferred the pending patent application that eventually issued as the '500 Patent.

Elitek's reliance on the "parenthetical exclusion" in the Bill of Sale falls apart under scrutiny. Dkt. 314 at 15. The purpose of that parenthetical language is to prevent redundancy by clarifying that any assets already transferred by another document are not transferred again by the Bill of Sale. Crucially, this ensures that all remaining assets—those not covered by any other instrument—are still transferred, thus preventing gaps in asset ownership. In the context of a bankruptcy sale, where the objective is to ensure the complete transfer of all assets, this makes perfect sense. The Bill of Sale, with its use of the broadly-defined term "Purchased Assets," serves to capture anything that may have been omitted from other agreements, thereby ensuring that no assets were left untransferred. Elitek's argument to the contrary defies common sense, since it is based on the premise that the parties—and the bankruptcy court—intended that patent applications would remain with a defunct company while all other assets were transferred to Repairify. The Bill of Sale was the mechanism used to prevent this nonsensical outcome.

Elitek cannot have it both ways. Having successfully argued that the Patent Assignment Agreement did not cover patent applications, it cannot now claim that those same applications fall within the exclusionary language of the Bill of Sale. Its strained interpretation of the agreements fails both legally and logically.

### III. DEFENDANT MISCHARACTERIZES THE LEGAL STANDARDS UNDERLYING THE BASES FOR REPAIRIFY'S MOTION

Elitek attempts to pigeonhole Repairify's request for relief to the narrow "newly discovered" and more rigid "reasonable diligence" standard under Rule 60(b)(2). Dkt. 314 at 7. But Repairify's motion is not based on Rule 60(b)(2). Instead, it is based on the mistake and/or excusable neglect caused by prior counsel's reliance on its correspondence with Bankruptcy Counsel and signed documents it received in connection with that correspondence, the USPTO assignments, and standard patent transfer practices. The law is clear that newly-submitted evidence, even if it could have been discovered with reasonable diligence, may still justify relief under Rules 60(b)(1), 60(b)(6), and 59(e). *Lavespere*, 910 F.2d at 173–74.

The Fifth Circuit in *Lavespere* established that when seeking reconsideration under Rule 60 based on previously available but untimely submitted evidence, a movant has two options: under Rule 60(b)(1), it must show mistake or excusable neglect, or under Rule 60(b)(6), it must show that the newly presented evidence establishes a fact "so central to the litigation that it renders the initial judgement manifestly unjust." *Id.* Elitek's opposition is entirely silent on this latter point as the Bill of Sale is undisputably a document so central to this litigation that its absence from the initial judgment resulted in a manifest injustice—the ultimate dismissal of two patents from the case.

Moreover, Elitek also mischaracterizes Rule 59(e) by again ignoring *Lavespere*'s guidance. Under Rule 59(e), the Court has "considerable discretion" to reconsider orders based

3

on untimely evidence without requiring proof of mistake, excusable neglect, or manifest injustice, allowing it to balance the finality of litigation with the need to render "just decisions on the basis of *all* facts." *Id.* (emphasis added).

Elitek's reliance on *Wsou Investments LLC v. Microsoft Corp.* to impose a rigid "reasonable diligence" test under Rule 54(b) is equally flawed. Dkt. 314 at 8. First, Rule 54(b) allows the Court to revise an order "for any reason it deems sufficient, even in the absence of new evidence…" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). While the standards of Rules 59 and 60 inform the Court's analysis, they serve as mere "guideposts," with the ultimate inquiry being whether justice requires reconsideration. *Id.*; *Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 380 (N.D. Tex. 2020). Second, *Lavespere* makes clear that for available but untimely submitted evidence, the appropriate standard is Rules 59(e), 60(b)(1), and 60(b)(6), not Rule 60(b)(2). *Lavespere*, 910 F.2d at 173–74. Third, the facts of *Wsou* are readily distinguishable. In that case, the movant failed to conduct *any* meaningful discovery, could not demonstrate manifest injustice, and the evidence related to venue – an issue peripheral to the merits. No. W-20-CV-00454-ADA, 2022 U.S. Dist. LEXIS 103057 (W.D. Tex. June 9, 2022). The Court considered the guideposts under Rule 59(e) and 60(b) and exercised its discretion to determine that, under those circumstances, relief would not be appropriate. *Id.* Moreover, the case did not implicate the *Lavespere* standard for available but untimely submitted evidence nor involved the omission of a document so central to the litigation it would be manifestly unjust to not grant relief. *Id.* Here, the Court's conclusion that Repairify did not own the '500 Patent, which then led to the dismissal of the '334 Patent, is a manifestly unjust outcome that not only strikes at the heart of the merits of this case, but also casts a cloud over Repairify's ownership in future enforcement actions.

Further, even if Elitek's reading of the law was correct (which it is not), the *executed* Bill of Sale constitutes newly discovered evidence. The unexecuted Bill of Sale previously before both the parties and the Court does not diminish the importance of the executed version. The recently uncovered *executed* Bill of Sale is a distinct document with entirely different legal significance – it corrects the incomplete factual record that underpinned the prior orders excluding the patents from this case.

Similarly, Elitek's suggestion that Repairify should have uncovered the executed Bill of Sale sooner lacks context. Dkt. 314 at 8–9. The APA is a complex and voluminous document, and prior counsel reasonably relied on the representations of Bankruptcy Counsel that it had been provided the requested documents relating to conveyance of ownership, the USPTO records and prior counsel's understanding of common practice for conveyance of ownership rights. It was only after the Court's adverse orders that further investigation led to the discovery of the executed Bill of Sale. Given these circumstances, the prior counsel's actions were reasonable, and any failure to locate the executed Bill of Sale earlier was, at most, excusable neglect.

Under the flexible standards of Rules 54(b) and 59(e), and consistent with the *Lavespere* guidance for Rule 60(b)(1) and 60(b)(6), the recently discovered executed Bill of Sale provides sufficient grounds to grant relief.

### IV. FAILURE TO SUBMIT THE BILL OF SALE WAS DUE TO A JUSTIFIABLE MISTAKE OR EXCUSABLE NEGLECT

Elitek's argument that Repairify failed to demonstrate a justifiable mistake or excusable neglect is similarly unavailing. First, Elitek claims that Repairify should have originally argued that the '500 Patent was transferred via an unexecuted Bill of Sale. Dkt. 314 at 19. But Elitek itself successfully argued that the APA was merely an agreement to assign future rights, not an instrument of transfer. Dkt. 63 at 5–8. By that same logic, an unexecuted Bill of Sale represents

5

nothing more than an intent to transfer. Any argument based on the unexecuted document would have been futile; an unexecuted document is just that—unexecuted and not a legally binding document.

Next, Elitek's accusation of "gross negligence" lacks both factual basis and legal support. Dkt. 314 at 9–10. The cases Elitek relies on involve ignorance of local rules and orders. *See In re Taxotere Prods. Liab. Litig.*, No. 16-2740, 2024 U.S. Dist. LEXIS 67079 (E.D. La. Apr. 11, 2024) (denying relief involving a missed deadline and subsequent Court Order violation); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350 (5th Cir. 1993) (denying relief where the movant failed to file a timely response due to misconstruing the Court's Order).

In contrast, Repairify's prior counsel's reliance on the Patent Assignment Agreement and the APA as adequately transferring ownership, while mistaken, was reasonable based on the correspondence and documents received from Bankruptcy Counsel, the USPTO records, and accepted practices. Indeed, Elitek wholly ignores that Rule 60(b)(1) provides leeway for parties that make good-faith mistakes. *Coleman Hammons Constr. Co. v. OSHRC*, 942 F.3d 279, 283 (5th Cir. 2019). Moreover, foreclosure of relief based on "gross negligence" applies at most to Rule 60(b)(1).  *See Edward H. Bohlin*, 6 F.3d at 357 ("Gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief.") Repairify is unaware of (and Elitek certainly has not cited to) any case that imposes similarly stringent limitations on the more flexible standards of Rules 54(b), 59(e), or 60(b)(6). *But see Lavespere*, 910 F.2d at 173–74 ("Rule 59(e), though subject to much more stringent time limitations than a comparable motion under Rule 60(b), is not controlled by the same exacting substantive requirements. Unlike Rule 60(b), Rule 59(e) does not set forth any specific grounds for relief. Nor can we discern any basis for engrafting the strict limitations of the former onto the latter.") Rules 54(b), 59(e), and

60(b)(6) allow the Court to provide relief even without demonstrating a lack of fault, mistake, or excusable neglect in the pursuit of substantial justice. *Id.*

Elitek's arguments regarding excusable neglect similarly miss the mark. As detailed below, Elitek's claims of prejudice are exaggerated, Repairify's delay in producing the executed Bill of Sale and raising this motion was not undue, and the reason for the delay was Repairify's justifiable mistake. Furthermore, Elitek fails to paint a colorable argument that Repairify has acted in bad faith whatsoever. Collectively, these factors favor a finding of excusable neglect.

Finally, Elitek fails to address the Fifth Circuit's equitable framework that indisputably favors relief. The framework demands that reconsideration be "liberally construed" to achieve substantial justice, with particular emphasis on favoring a case being decided on the merits. *Edward H. Bohlin*, 6 F.3d at 356–57. The dismissal of the '500 Patent, and the resulting exclusion of the '334 Patent, was not based on the merits, but on an incomplete factual record. In light of the executed Bill of Sale, justice demands the case be reconsidered with the full record now available.[1]

## V. REPAIRIFY'S SUBMISSION OF THE EXECUTED BILL OF SALE DID NOT CONSTITUTE UNJUST DELAY

Elitek's assertion that Repairify unjustly delayed in raising the issue of the executed Bill of Sale overlooks key factors, including those discussed above regarding Repairify's reasonable reliance on the mistaken belief that it had all relevant documents, the USPTO records, and traditional assignment practice.

---

[1] To be clear, by this motion Repairify is not seeking reconsideration of the Court's subsequent ruling on summary judgment regarding noninfringement of the '500 Patent. Dkt. 270; 304. Instead, if the requested relief is granted, only the '334 Patent will come back into the case.

7

Next, Elitek relies on case law finding relief under Rule 59(e) and 60(b) to be improper when evidence was known or "well within" the movant's knowledge before entry of judgment. Dkt. 314 at 13. As a preliminary matter, there has yet to be an entry of judgment in this case.

Moreover, Elitek attempts to argue that the executed Bill of Sale was "well within" Repairify's knowledge, insinuating that prior counsel was aware of it prior to June 6, 2024, stating "The declaration does not state June 6 was the date that litigation counsel first became aware that the Bill of Sale had been executed." *Id*. This is directly contradicted by the Declaration which explicitly states that June 6 "was the first time [prior counsel] became aware of its existence." Dkt. 309 at ¶ 12.

Elitek further claims that Repairify provided no explanation for why it took nearly two years to locate the executed Bill of Sale. Dkt. 314 at 13. This argument ignores the fact that the originally filed Motion to Dismiss was pending for nearly two years. During this period, Repairify reasonably believed it was in possession of all necessary documents. When prior counsel was made aware of the executed Bill of Sale on June 6, 2024, they had no meaningful opportunity to review or appreciate its impact before the June 7 hearing. Shortly thereafter, the case was stayed pending what was thought to be a settlement. Dkt. 278. After it became clear that the parties had reached an impasse, Repairify diligently produced the executed Bill of Sale on August 23, 2024. The Court then ruled on September 5, 2024, that no settlement had been reached, and Repairify promptly thereafter filed the present motion on September 19, 2024. Dkt. 298; 308.

Thus, any delay in uncovering or presenting the executed Bill of Sale was neither unjust nor attributable to bad faith. The timeline reflects a reasonable reliance on existing documents, a

good faith mistake, and diligent investigation once the executed Bill of Sale was discovered. Repairify's motion is both timely and justified.

## VI. JUSTICE REQUIRES AMENDING THE PRIOR ORDERS

Elitek's arguments regarding the lack of injustice fall short. First, Elitek's claim that Repairify has not shown a material difference between the '313 and '334 Patents misrepresents the facts. Dkt. 314 at 14. As the Court is well aware, each claim of a patent stands on its own. Therefore, both patents should be before the jury as resolving the case on its merits outweighs the finality of any judgment. *Edward H. Bohlin Co.*, 6 F. 3d at 356–57. This is particularly true in this case where there has been no trial, much less post-trial briefing and entry of judgment.

Second, Elitek's claim of undue prejudice is exaggerated. Elitek argues that reviving the '334 Patent would result in a "last-minute scramble." Dkt. 314 at 14. But the '334 Patent was not dismissed from the case until June 7, 2024 – a mere 10 days before the prior June 17, 2024 trial date. Dkt. 275. The revised trial date is currently more than three months away. Furthermore, the parties have conducted extensive discovery on all Asserted Patents, and the revival of inequitable conduct and invalidity claims will not impose any undue burden on Elitek. Additionally, supplementing its expert report to address the '334 Patent is a minimal adjustment. The supplemental expert report already describes itself as addressing the plural "Asserted Patents," and addresses claim construction issues that are common to both the '313 and '334 Patents.

Third, Elitek raises an allegation concerning the authenticity of the executed Bill of Sale, pointing to metadata and insinuating the executed document was possibly not signed until June 6, 2024. Dkt. 314 at 14–15. This is quite a lofty allegation. Notably, a comparison of the signatures on the Bill of Sale, Patent Assignment, and APA unquestionably supports these documents were executed on the same day by the same signatories. Dkt. 308-1 at 50; 308-3 at 4; 308-4 at 4–5. The alleged metadata inconsistency is typical in litigation document collection

efforts, and very likely reflects that the document was resaved or renamed during the transfer process of the scanned document from Bankruptcy Counsel's files to prior counsel's files prior to production.[2]

Finally, Elitek's remaining allegations of prejudice do not outweigh the need for justice. The Bill of Sale proves Repairify's lawful ownership of the Asserted Patents, and had it been presented earlier, the Court would not have ruled otherwise. The prior orders, based on an incomplete record, unjustly deprived Repairify of its exclusionary rights. Denying relief would not only perpetuate this injustice but also potentially hinder Repairify's future ability to protect its intellectual property in ongoing and future litigation, including a parallel case in the Northern District of Illinois. *See Keystone Automotive Industries, Inc. v. Repairify*, Case No. 1:23-cv-02689 (N.D. Ill. 2023). Repairify has adequately demonstrated a significant injustice caused by the omission of the executed Bill of Sale, and this alone justifies relief.

## VII.   CONCLUSION

For the foregoing reasons, Repairify respectfully requests relief from the Court's Orders granting Elitek's motion to dismiss Count II and granting Elitek's motion for summary judgment on Count III. In light of the executed Bill of Sale, these orders are no longer premised on a complete factual record, and to not consider this critical document that evidences Repairify's ownership of the Asserted Patents would be manifestly unjust.

---

[2] While a waste of time, if Elitek truly believes it needs to verify the authenticity of this executed document, Repairify would not object to depositions of the signatories regarding the timing of the signing of the Bill of Sale.

| | |
|---|---|
| Date: October 10, 2024 | *s/ J. Derek Vandenburgh* |
| | Deron Dacus (State Bar No. 0090553) |
| | THE DACUS FIRM, P.C. |
| | 821 ESE Loop 323, Suite 430 |
| | Tyler, TX 75701 |
| | Phone: (903) 705-1117 |
| | Fax: (903) 581-2543 |
| | Email: ddacus@dacusfirm.com |
| | |
| | J. Derek Vandenburgh (*pro hac vice*) |
| | Joseph W. Winkels (*pro hac vice*) |
| | William F. Bullard (*pro hac vice*) |
| | CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A. |
| | 225 South Sixth Street, Suite 4200 |
| | Minneapolis, MN 55402 |
| | Phone: (612) 436-9600 |
| | Email: dvandenburgh@carlsoncaspers.com |
| | Email: jwinkels@carlsoncaspers.com |
| | Email: wbullard@carlsoncaspers.com |
| | |
| | *Counsel for Plaintiff, Repairify, Inc.* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on October 10, 2024 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*s/ J. Derek Vandenburgh*
J. Derek Vandenburgh
