**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| REPAIRIFY, INC., and<br><br>Plaintiff,<br><br>v.<br><br>KEYSTONE AUTOMOTIVE INDUSTRIES, INC. d/b/a ELITEK VEHICLE SERVICES, and DOES 1 through 20, inclusive,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:21-cv-00819-ADA-DTG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT ELITEK'S MOTION FOR CLARIFICATION, OR IN THE ALTERNATIVE, RECONSIDERATION OF THE ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND ........................................................................................ 3

III. ARGUMENT ........................................................................................ 4

A. Clarification Of The Court's Order Will Avoid Confusion, Promote Judicial Efficiency, and Allow the Parties to Succinctly Prepare For Trial. ........................ 5

1. The Court's Finding Regarding Step 1 Is Uncertain. ................................... 5

2. It Is Not Clear What Step 2 Fact Issues The Jury Must Decide. ..................... 6

IV. CONCLUSION ........................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900 (Fed. Cir. 2020)..............................10

*Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916 (W.D. Tex. 2015)................6

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016)..........................9

*AI Visualize, Inc. v. Nuance Communications, Inc.*, 97 F.4th 1371 (Fed. Cir. 2024)..................10

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)......................................................6

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326 (5th Cir. 2017)..........................................................5

*Beteiro, LLC v. Draftkings Inc.*, 104 F.4th 1350 (Fed. Cir. 2024) ...............................................6

*Broadband iTV, Inc. v. Amazon.com, Inc.*, No. 6:20-CV-00921-ADA, 2022 WL 4703425 (W.D. Tex. Sept. 30, 2022) ..........................................................................................6, 10

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341 (Fed. Cir. 2019) .....................10

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) ..........................5, 10, 11

*Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550 (N.D. Tex. 2009) ....................5

*Double Diamond Delaware, Inc. v. Homeland Ins. Co. of New York*, 2021 WL 12103006 (N.D. Tex. Jun. 15, 2021)..........................................................................................5

*Hawk Technology Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349 (Fed. Cir. 2023) .....................9

*iCharts LLC v. Tableau Software, LLC*, 2024 WL 5093074 (N.D. Cal. Dec. 12, 2024)................8

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015).................8

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) ..........................8

*Lodsys, LLC v. Brother Int'l Corp.*, 2013 WL 6442185 (E.D. Tex. Mar. 12, 2013)......................4

*MASS Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 2697293 (E.D. Tex. May 30, 2008) .4

*Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280 (Fed. Cir. 2024) ....................................5, 10

*Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353 (Fed. Cir. 2020).........................5, 10

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138 (Fed. Cir. 2016)..................................9

*Two-Way Media, Ltd. v. Comcast Cable Commc'ns., LLC*, 874 F.3d 1329 (Fed. Cir. 2017). 10, 13

*Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709 (Fed. Cir. 2014) ............................................9,11

*Wi-Lan, Inc. v. Acer, Inc.*, 2010 WL 5559546 (E.D. Tex. Dec. 30, 2010) ...................................5

*Yu v. Apple, Inc.*, 1 F.4th 1040 (Fed. Cir. 2021)..........................................................................10

**Statutes**

35 U.S.C. § 101.............................................................................................................. 1, 2, 8, 10

35 U.S.C. §§ 102, 103 ..............................................................................................................2, 8

**Rules**

Fed. R. Civ. P. 54(b) ..............................................................................................................1, 4

# I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 54(b), Defendant Keystone Automotive Industries, Inc., d/b/a Elitek Vehicle Services ("Elitek") respectfully requests that this Court clarify and/or reconsider its Order denying Elitek's Motion for Judgment on the Pleadings ("Motion"). ECF No. 304. In its Motion, Elitek argued that the claims of United States Patent Nos. 8,688,313 ("the '313 Patent"), 9,684,500 ("the '500 Patent"), and 10,528,334 ("the '334 Patent") (collectively the "the Asserted Patents") are invalid for lack of patent eligible subject matter under 35 U.S.C. § 101.[1] ECF No. 123. As the Court likely recalls, the claims of the Asserted Patents generally relate to the process of scanning and programming a vehicle. *See, e.g.*, Declaration of Joseph Saltiel ("Saltiel Decl."), Ex. A ("'313 Patent") at claim 1, 14:31-67. But, like what several prior art references already taught, rather than plugging the scan tool into the vehicle directly, "communication devices" are connected, one to the vehicle and the other to the scan tool, and these communication devices communicate the scan tool commands and vehicle responses over a network such as the Internet. *See* Saltiel Decl., Ex. B ("Gruhler") (predating the Asserted Patents by over ten years); Ex. C ("Langlechner") (predating the Asserted Patents by ten years); Ex. D ("Pruzan") (also predating the Asserted Patents by ten years); Ex. E ("Weiss") (predating the Asserted Patents by seven years); Ex. F ("Johanson") (predating the Asserted Patents by over a year). While the prosecution history of the Asserted Patents suggests that something about the communication between the communication devices distinguished the invention over the prior art,

---

[1] The '313 Patent is the parent to the '500 Patent, which is a continuation of the '313 Patent, and the '334 Patent, which is a continuation of the '500 Patent, and they each share the same specification. Given the Court's ruling granting summary judgment of no infringement of the asserted system claims, including all asserted claims of the '500 Patent, ECF No. 304, Elitek is requesting the relief sought herein only as the remaining asserted method claims, claim 13 of the '313 Patent and claims 1, 5, and 6 of the '334 Patent.

the Asserted Patents' specification identifies nothing unusual about this communication. '313 Patent at 5:23-27 ("the bi-directional communication link is carried over an electronic communications network, such as the Internet, and allows web-based communication between the vehicle communication device and the remote communication device"). As such, the Asserted Patents claims are directed at the abstract idea of remotely scanning and programming a vehicle.

To determine patent eligibility under § 101, courts conduct a two-step analysis. In Step 1, the court determines if the claimed invention is directed to an abstract idea. If it is, the court then moves to Step 2 to determine if the claimed invention includes an inventive concept sufficient to transform the abstract idea into patent eligible subject matter.

While the Court stated that it will ask the jury to resolve Step 2, suggesting it may agree with Elitek on Step 1, it did not rule on Step 1 expressly, and it did not state what it believed to be the abstract idea to which the claims are directed (which impacts the Step 2 analysis). Therefore, Elitek respectfully seeks clarification on the Court's order regarding Step 1 to avoid confusion and promote judicial efficiency.

Additionally, Elitek respectfully requests that this Court reconsider and/or clarify its Order regarding Step 2 because the intrinsic record demonstrates that no question of fact remains for the jury to resolve for Step 2. While indicating that Step 2 presented a fact issue for the jury to resolve, the Court did not indicate what fact dispute relating to Step 2 the jury will resolve. Indeed, Plaintiff Repairify, Inc.'s ("Repairify") opposition to Elitek's motion to dismiss raised only legal issues regarding Step 2, not fact disputes. Thus, Elitek requests clarification or reconsideration of the Court's ruling regarding Step 2.

## II. BACKGROUND

On August 18, 2023, Elitek filed its motion for judgment on the pleadings that the Asserted Patents are invalid for a lack of patent eligible subject matter under 35 U.S.C. § 101 because the asserted claims are directed at an abstract idea, that is, the abstract idea of remotely scanning and programming a vehicle. ECF No. 123 at 9-15. While the claims recite steps such as requesting, receiving, converting, and transmitting data, those steps are abstract ideas as well. *Id.* at 11-13. Elitek then argued that the Asserted Patents do not recite any inventive concept that would transform this abstract idea into patent-eligible subject matter because the Asserted Patents use conventional components performing routine tasks and do not solve any technological problem or disclose any improvement to the recited components or to scanning and programming vehicles. *Id.* at 15-18. First, Elitek noted that, as a matter of law, the abstract idea of remote scanning and programming cannot be used as the inventive concept. *Id.* at 16. Second, Elitek argued that the components used, *i.e.*, communication devices, scan tools, and computer networks, were the same well-known components used in the prior art. *Id.* at 17. Third, Elitek argued that the claimed steps were nothing more than conventional steps performed in a standard sequence using conventional components. *Id.* at 17-18.

In response, Repairify argued that the Asserted Patents are novel and that the ordered combination of steps in the Asserted Patents are sufficient to show an inventive concept. ECF No. 145 at 8-10. In reply, Elitek explained that assuming novelty under 35 U.S.C. §§ 102, 103, that is insufficient to show an inventive concept under Step 2 as a matter of law. ECF No. 154 at 6-8. Elitek further explained that claims, such as those here, simply reciting a standard sequence of steps using conventional components, is not sufficient to show an inventive concept. *Id.*

On May 23, 2024, the Court held a pretrial conference and heard arguments on Elitek's Motion. ECF No. 264. During arguments, Elitek argued that the Asserted Patents are directed towards an abstract idea. *Id.* at 51:20-53:10. The Court suggested that it may agree with Elitek on Step 1, and requested that Elitek focus on Step 2:

| | |
|---|---|
| **Court:** | Let's say I agree with you. Why – what do we do then if I agree with you on the first part? |
| **Mr. Irwin:** | On that first part? Then we would go to step 2. |
| **The Court:** | Okay |
| **Mr. Irwin:** | Okay. Moving on to Step 2, accepting that the claims are directed to an abstract idea, we look at Step 2 to see whether or not the claims add something significantly more . . . |

*Id.* at 53:11-20. The Court then heard arguments on Step 2. *Id.* at 53:17-57:25. During argument on Step 2, the Court asked "[i]sn't the second – the issue here on *Alice* Step 2 a fact question for the jury" to which Elitek responded "No, Your Honor. I think Your Honor can make that decision based upon the intrinsic record." *Id.* at 54:3-7. After completion of argument, the Court stated, "[t]he Court is going to deny the motion. And I will ask the jury to resolve the – Question No. 2 – *Alice* Question No. 2 issue at trial." *Id.* at 58:4-6. The Court did not further comment on Step 1 or 2 at the hearing or in its order. *Id.*; *see also* ECF No. 304.

## III. ARGUMENT

Parties may seek clarification of the meaning of a Court's order. *Lodsys, LLC v. Brother Int'l Corp.*, 2013 WL 6442185, at *1 (E.D. Tex. Mar. 12, 2013) (granting clarification of dispute regarding whether a party could submit an expert declaration); *MASS Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 2697293, at *1 (E.D. Tex. May 30, 2008) (granting motion to clarify the court's previous claim construction order). Courts "resolve [] a motion for clarification under the same standard as a motion for reconsideration." *Wi-Lan, Inc. v. Acer, Inc.*, 2010 WL 5559546, at

*2 n. 1 (E.D. Tex. Dec. 30, 2010); *see also Double Diamond Delaware, Inc. v. Homeland Ins. Co. of New York*, 2021 WL 12103006, at *1 (N.D. Tex. Jun. 15, 2021). Under Federal Rule of Civil Procedure 54(b), a party may seek reconsideration of interlocutory orders and "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citation omitted); *see also Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (the decision to grant a Rule 54(b) motion rests within the discretion of the court).

### A. Clarification Of The Court's Order Will Avoid Confusion, Promote Judicial Efficiency, and Allow the Parties to Succinctly Prepare For Trial.

#### 1. The Court's Finding Regarding Step 1 Is Uncertain.

While it is clear that the Court did not rule against Elitek on Step 1, it is unclear whether the Court agreed with Elitek on Step 1 or if it is still considering the issue. ECF No. 263 at 53:11-13. Elitek, if not both parties, will benefit from knowing the Court's ruling on Step 1 as it will affect their strategy and how related issues are presented at trial.

Moreover, if the Court found in Elitek's favor on Step 1, or should it do so, the Court's rationale on Step 1 impacts the jury's Step 2 analysis because the jury is not allowed to consider the abstract idea of Step 1 as the inventive concept of Step 2.[2] *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1294 (Fed. Cir. 2024) (an inventive concept for Step 2 cannot be part of the abstract idea determined at Step 1); *see also Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020) (same); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774

[2] Elitek is aware that in earlier cases the Court has presented Step 2 to the jury without expressly ruling on Step 1 in advance of the jury determination. However, based upon the jury instructions used in those cases, it does not appear that this issue was addressed in those cases as the juries did not receive any such prophylactic instruction. *See, e.g., Videoshare, LLC v. Google LLC and Youtube, LLC,* Case No. 6:19-cv-663-ADA (ECF No. 215).

(Fed. Cir. 2019) (same). For the parties to properly explain the issue to the jury, they need to know the rationale behind the Court's Step 1 ruling. While the parties could assume that the Court agreed with Elitek's articulation of the abstract idea, the parties cannot know for certain and proceeding under that assumption risks the possibility of requiring a new trial. In fact, for this reason, Step 1 is decided before proceeding to Step 2. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) ("First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. ***If so***, we then ask "[w]hat else is there in the claims before us?") (citations omitted) (emphasis added); *see also Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 924 (W.D. Tex. 2015) ("The Court must first decide whether the [patent claims] are directed to an abstract idea—a patent-ineligible subject matter—***before proceeding*** to step two of the *Mayo/Alice* analysis.") (emphasis added).

Therefore, Elitek respectfully requests clarification of the Court's Step 1finding.

**2. It Is Not Clear What Step 2 Fact Issues The Jury Must Decide.**

While the Court found that Step 2 will be presented to the jury, it is unclear what factual finding(s) the jury will be requested to make. Step 2 is a question of law that *may* involve underlying factual questions. *Beteiro, LLC v. Draftkings Inc.*, 104 F.4th 1350, 1357 (Fed. Cir. 2024). In fact, courts routinely resolve Step 2 as a matter of law without making any factual determinations. *See Broadband iTV, Inc. v. Amazon.com, Inc.*, No. 6:20-CV-00921-ADA, 2022 WL 4703425, at *14 (W.D. Tex. Sept. 30, 2022) (granting summary judgment of unpatentability and resolving Step 2 without needing to make a factual determination); *see also Beteiro*, 104 F.4th at 1358 (rejecting attempts to raise factual issue regarding Step 2 and deciding Step 2 solely on the intrinsic record). If there are fact issues that need to be resolved, Elitek should know what these fact issues are so it can prepare for trial. Not knowing the specific factual disputes for Step 2 will hamper Elitek's ability to prepare for trial.

In Elitek's Motion, Elitek demonstrated that the claims do not add anything significantly more than the abstract idea being performed with conventional steps in a conventional manner. As noted in footnote 1, since Elitek's Motion was filed, the Court has granted summary judgment on the system claims leaving just method claims, two independent and four total claims. Using independent claim 1 of the '334 Patent as an example, it is clear that the claim covers just the abstract idea of remotely programming a vehicle performed in a conventional manner, as that claim recites:

> 1. A method for remotely programming a sub-system of a subject vehicle, comprising:
>
> **establishing**, by a **first communication device** located proximate to a vehicle scan tool and comprising a first communication device processor, a bi-directional communication link with a **second communication device** over a communication network, the second communication device located proximate to a subject vehicle and remote from the first communication device;
>
> **requesting, by the first communication device**, over the bi-directional communication link and via the second communication device, an outgoing pin signal from a vehicle sub-system for the subject vehicle;
>
> **receiving, by the first communication device**, over the bi-directional communication link, a network-compatible vehicle packet corresponding to the outgoing pin signal;
>
> **converting, by the first communication device**, the vehicle packet to the outgoing pin signal; and
>
> **communicating, by the first communication device**, the outgoing pin signal to the vehicle scan tool;
>
> **wherein the first communication device and the second communication device provide** communication between the vehicle scan tool and the vehicle sub-system to enable the vehicle scan tool to scan and program the vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle.

Saltiel Decl., Ex. G ("'334 Patent") at 14:62-15:22 (emphasis added). While there is an aspirational claim limitation set forth, *i.e.*, "to scan and program the vehicle sub-system of the subject vehicle as if the vehicle scan tool were located proximate to the subject vehicle," that type of limitation does not impact the Section 101 analysis because how the claimed method achieves

this objective is not described or claimed.[3,4] *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) (when a claim "'contains no restriction on how the result is accomplished . . . [and t]he mechanism . . . is not described, although this is stated to be essential innovation' then the claim is not patent-eligible.") (citation omitted); *see also Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370–71 (Fed. Cir. 2015) ("[R]equiring the use of a 'software' 'brain' 'tasked with tailoring information and providing it to the user' provides no additional limitation beyond applying an abstract idea" and, thus, does not confer patent eligibility); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("offering media content in exchange for viewing an advertisement . . . is insufficient to supply an 'inventive concept'" because the [associated] steps are only "'specified at a high level of generality'") (citation omitted); *iCharts LLC v. Tableau Software, LLC*, 2024 WL 5093074, at *6 (N.D. Cal. Dec. 12, 2024) (citations omitted) (modules configured to perform functions are not specific mechanisms but instead "are whatever 'modules' achieve the stated results – whether the mechanisms are conventional or fantastical – and cannot render the claim eligible for patenting" under Step 2).

Further adding to the confusion of what Step 2 factual issues must be presented to the jury, in its opposition to Elitek's Motion, Repairify raised several arguments, but none of those arguments raise factual issues for the jury to decide. For example, Repairify argued that the claims

[3] Claim 13 of the '313 Patent has the additional limitations of "continuous bi-directional communication" and "actively and continuously communicate," and claim 5 of the '334 Patent has the limitation that communication is "active and continuous." The Court has construed these limitations only in terms of their function. *See* ECF No. 271. Thus, these limitations do not impact the Section 101 analysis either because they do not describe how the claimed objective is achieved.

[4] Claim 6 of the '334 Patent recites that the communication is "full duplex." Like the other limitations, this limitation does not impact the Section 101 analysis because it does not describe how full duplex communication is provided.

are novel and, thus, the Asserted Patents survive Step 2. ECF No. 145 at 10. But, again, novelty under 35 U.S.C. §§ 102, 103, however, is not a proper inquiry under Step 2, let alone a proper determination for the jury to decide regarding Step 2. *Yu v. Apple, Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) ("even if claim 1 recites novel subject matter, that fact is insufficient by itself to confer eligibility"); *Two-Way Media, Ltd. v. Comcast Cable Commc'ns., LLC*, 874 F.3d 1329, 1339-40 (Fed. Cir. 2017) (disregarding materials relevant to novelty and obviousness analysis when considering § 101 eligibility because "[e]ligibility and novelty are separate inquires"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a claim for a *new* abstract is still an abstract idea"); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016) ("[e]ven assuming that [the invention was novel as of the priority date of the patent], it does not avoid the problem of abstractness"); *Ultramercial, LLC*, 772 F.3d at 721 ("Groundbreaking, innovative, or even brilliant discovery does not by itself satisfy the § 101 inquiry") (internal quotation omitted).

Repairify also argued that Elitek failed to address the ordered combination of elements and steps in the Asserted Patents. ECF No. 145 at 8-9. As Elitek explained in reply, that argument was factually inaccurate as Elitek did address the ordered combination of elements when it argued that the claims of the Asserted Patents recite well-understood, routine, and conventional steps of requesting, converting, transmitting, and re-converting data using known network technology. ECF No. 123 at 17-18; ECF No. 154 at 8. In any event, the ordered combination of elements is not a disputed fact here because it is well-settled that claims directed to requesting, converting, transmitting, and re-converting data are abstract. *Hawk Technology Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) (claims reciting providing a communication link over a network and then requesting data, converting data from one format to another, and transmitting

the requested data were directed to an abstract idea); *see also Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (citing collection of Federal Circuit cases finding that requesting, converting, transmitting, and re-converting data are abstract ideas). And because these steps of the Asserted Patents are part of the abstract idea, they cannot be used in the Step 2 analysis. *See Mobile Acuity*, 110 F.4th 1280 at 1294; *Simio*, 983 F.3d at 1364; *ChargePoint*, 920 F.3d at 774; *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019).

Tellingly, Repairify failed to argue that the ordered combination of the steps of requesting, converting, transmitting, and re-converting data in the claims provided an inventive concept. ECF No. 145 at 8-9. In fact, Repairify cannot make this argument because when the combination of steps are merely the logical and expected steps expected to be performed, as they are here, such steps are insufficient to create a fact issue regarding Step 2 for the jury to resolve. *See Broadband iTV*, 2022 WL 4703425 at *14 (granting Rule 12 motion where claims were nothing more than "inherent and logically required to accomplish the abstract idea").

Repairify also failed to argue that these steps are not performed by generic components because they cannot. As conceded in the Asserted Patents, these steps are performed by known scan tools, or diagnostic computers; generic communication devices; and a communication network, which are not just part of the admitted prior art, but conventional. ECF No. 123 at 15-18. Using known components in their expected use does not create a fact issue regarding an inventive concept under Step 2 for the jury to decide. *See AI Visualize, Inc. v. Nuance Communications, Inc.*, 97 F.4th 1371, 1381 (Fed. Cir. 2024) (merely reciting an abstract idea performed on a set of generic computer components is not an inventive concept); *Chamberlain*, 935 F.3d at 1349 (nothing inventive about the ordered combination of elements because it was

well-understood, routine, and conventional); *ChargePoint*, 920 F.3d at 774 (same); *Two-Way Media*, 874 F.3d at 1339 (same).

As such, Elitek respectfully requests clarification of the Court's Step 2 ruling. Clarifying what fact issues the jury will decide will promote judicial efficiency, avoid confusion as to the issues the jury will decide, and will allow the parties to succinctly prepare for trial.[5]

Alternatively, Elitek respectfully requests that the Court reconsider its order denying Elitek's Motion because there are no underlying factual determinations for the jury to decide regarding Step 2. The Asserted Patents are directed toward the abstract idea of remotely scanning and programming a vehicle, and the Asserted Patents do not recite any inventive concept that would transform that abstract idea into patent-eligible subject matter. Therefore, the Asserted Patents are invalid for claiming patent ineligible subject matter under 35 U.S.C. § 101.

## IV. CONCLUSION

For the foregoing reasons, Elitek respectfully requests that this Court clarify its order regarding Elitek's Motion to specify what its finding was with respect to Step 1 and what factual determinations the jury will be asked to decide regarding Step 2. In the alternative, Elitek respectfully requests that the Court grant Elitek's motion on the pleadings finding the Asserted Patents invalid for claiming ineligible subject matter.

[5] If the Court agrees with Elitek that there are no fact issues for the jury to decide on Step 2, and to the extent the Court is still considering Step 2, Elitek requests clarification on Step 1 as the Court's rationale might impact the legal arguments the parties will make regarding Step 2.

Dated: February 4, 2025

Respectfully submitted,

By: */s/ Barry F. Irwin*

Barry F. Irwin, P.C. (admitted *pro hac*)
Joseph A. Saltiel (admitted *pro hac*)
Jason J. Keener (admitted *pro hac*)
Iftekhar A. Zaim (admitted *pro hac*)
Andrew D. Gordon-Seifert (admitted *pro hac*)
Alexander Bennett (admitted *pro hac*)
Emad S. Mahou (admitted *pro hac*)
**IRWIN IP LLP**
150 N. Wacker Dr., Suite 700
Chicago, IL 60606
(312) 667-6080 (Telephone)
birwin@irwinip.com
jsaltiel@irwinip.com
jkeener@irwinip.com
izaim@irwinip.com
agordon-seifert@irwinip.com
abennett@irwinip.com
emahou@irwinip.com

Barry K. Shelton
Texas State Bar No. 24055029
**SHELTON COBURN LLP**
311 RR 620 S, Suite 205
Austin, TX 78734
bshelton@sheltoncoburn.com
(512) 263-2165 (Telephone)

Mark D. Siegmund
Texas State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PLLC**
400 Austin Avenue, 9th Floor
Waco, TX 76701
msiegmund@cjsjlaw.com
(254) 732-2242 (Telephone)

*Attorneys for Defendant Keystone Automotive Industries, Inc. d/b/a Elitek Vehicle Services*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system.

/s/ *Barry F. Irwin*
Barry F. Irwin

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on January 31, 2025, counsel for Plaintiff Repairify, Inc. and Counsel for Defendant Keystone Automotive Industries, Inc., d/b/a Elitek Vehicle Services, met and conferred, and Plaintiff opposes this motion.

/s/ *Barry F. Irwin*
Barry F. Irwin